## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVE PAPPAS, *et al.*,<br><br>Individually and on behalf of all others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN POLICE<br>DEPARTMENT OF THE DISTRICT<br>OF COLUMBIA, *et al.*,<br><br>Defendants. | Civil Action No. 19-2800 (RC) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs' First Amended Complaint alleges that Defendants Metropolitan Police

Department ("MPD"), the District of Columbia ("DC"), and Peter Newsham ("Newsham"), in

his official capacity as Chief of Police of the MPD, terminated the employment of Plaintiffs and

other MPD employees on account of their disabilities rather than accommodating them by

restructuring job duties, providing extended leave, or reassigning them to available positions that

they could have performed.  Plaintiffs have alleged claims under the Americans with Disabilities

Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").  This Court should

reject Defendants' Motion to Dismiss.

## I.  INTRODUCTION

The law has been clear for decades that employees with disabilities are entitled to

accommodations.  For employees who develop disabilities that interfere, either permanently or

temporarily, with their ability to do their job, those accommodations include leave time,

restructuring of the position, light duty, and reassignment to a vacant position.  *See, e.g.*, EEOC

Enforcement Guidance, Reasonable Accommodation and Undue Hardship Under the ADA, 2002

WL 31994335, at *5–15 (Oct. 17, 2002); U.S. Equal Employment Opportunity Commission

("EEOC"), A Technical Assistance Manual on the Employment Provisions (Title I) of the ADA,

at I-5, III-5-6, III-21-25 (1992), *available at* https://files.eric.ed.gov/fulltext/ED352763.pdf;

Small Employers and Reasonable Accommodation, Questions 5–11 (March 1, 1999), *available*

*at* https://www.eeoc.gov/facts/accommodation.html.

The reassignment and other reasonable accommodation requirements apply to police

departments and forbid automatic retirement for police officers and firefighters who develop

disabilities.  *See, e.g.*, *Davoll v. Webb*, 194 F.3d 1116, 1131–32 (10th Cir. 1999) (reassignment

of disabled police officers, whose positions could not be modified to accommodate their

disabilities, may be an appropriate accommodation and was rightly considered by the jury);

*Pinkerton v. City of Tampa, Fla.*, 981 F. Supp. 1455, 1458 (M.D. Fla. 1997); *Acevedo v. City of*

*Philadelphia*, 680 F. Supp. 2d 716, 735–38 (E.D. Pa. 2010); *King v. Town of Wallkill*, 302 F.

Supp. 2d 279, 290 (S.D.N.Y. 2004); *United States v. City and Cnty. of Denver and Denver, Colo.*

*Police Dep't*,  No. 96–K–370 (D. Colo. Feb. 6, 2001), https://www.ada.gov/denver.htm

(requiring modification of employment policy to allow police officers with disabilities to be

reassigned to civilian jobs in the city or county); *Consent Decree: United States v. the City of*

*New York (FDNY)*, No. 13–CV–2416, https://www.ada.gov/NYC-fdny-cd-complaint/ny-fdny-

cd.htm (May 10, 2013; last accessed Feb. 24, 2020) (challenging failure to provide reasonable

accommodations and forced retirement of FDNY employee with pulmonary injuries).  Yet the

District of Columbia has continued to enforce its system of mandatory retirement ("Forced

Retirement Policy") for police officers without considering reasonable accommodations.

Defendants move to dismiss the Plaintiffs' First Amended Complaint ("Am. Compl.") pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion").  With the exception of Plaintiffs' claims against the MPD, the Court should deny the Motion.  The Amended Complaint pleads sufficient facts to show Defendants forcibly retired Plaintiffs on account of their disabilities, with no possibility of reasonable accommodation by reassignment, job structuring, or extended leave, in violation of Title I of the ADA, 42 U.S.C. §§ 12101, *et seq.*, and Section 504, 29 U.S.C. § 794.  *See, e.g.*, Am. Compl. ¶¶ 2, 4, 27–29, 33–36, 41–44, 49–54.  Additionally, the Amended Complaint pleads sufficient facts to show Defendants imposed improper medical inquiries and examinations on Plaintiff Pappas and others similarly situated.  *Id.* ¶¶ 5, 24, 56.  Because MPD is a sub-agency of the D.C. government, *Harris v. Bowser*, 404 F. Supp. 3d 190, 196 (D.D.C. 2019), Plaintiffs do not contest dismissal of MPD.

## II.  <u>STANDARD OF REVIEW</u>

Defendants move to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  *See* Motion at 7–8.  On a motion to dismiss, "the court must treat the complaint's factual allegations as true … and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Citizens for Responsibility & Ethics in Wash. v. Pruitt*, 319 F. Supp. 3d 252, 256 (D.D.C. 2018) (internal citation omitted).  "The pleading rules are not meant to impose a great burden upon a plaintiff … and [the plaintiff] must thus be given every favorable inference that may be drawn from the allegations of fact."  *Id.* (quotations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44–45 (D.D.C. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also* Fed. R. Civ. P. 8(a).  The complaint "must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

As demonstrated below, Plaintiffs have pled sufficient facts for the Court to find Plaintiffs have standing and have stated claims for which relief can be granted. Accordingly, the Court should deny Defendants' Motion.

### III.  <u>ARGUMENT</u>

**A.    Under the Vicarious Exhaustion Doctrine, Plaintiffs Lindsay, Mathies, and Malik Were Not Required to File Their Own Administrative Complaints Because Plaintiff Pappas's Charge Alleged Violations of a Uniform MPD Policy Applicable to the Other Plaintiffs.**

Defendants accurately note that Plaintiff Pappas is the only Plaintiff who filed a discrimination charge with the EEOC. Motion at 9. Ordinarily, employees must exhaust their administrative remedies before filing ADA claims in federal court. 42 U.S.C. § 12117. Administrative exhaustion "afford[s] the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011).

But, under the vicarious exhaustion doctrine, plaintiffs who have not exhausted their claims can "piggyback" on the claims of a plaintiff who has filed a charge where "the two claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges." *Foster v. Gueory*, 655 F.2d 1319, 1322 (D.C. Cir. 1981) (applying the vicarious exhaustion doctrine where similarly situated litigants alleged the same discriminatory treatment, making two EEOC charges redundant). This is such a case. All of Plaintiffs' claims stem from MPD's Forced Retirement Policy, and Plaintiff Pappas's charge sufficiently provided the EEOC with "an opportunity for administrative consolidation and resolution." *See Byrd v.*

*Dist. of Columbia*, 807 F. Supp. 2d 37, 63 (D.D.C. 2011).  Every claim arises from the same discriminatory policy developed and implemented by MPD in violation of the ADA.

Separate EEOC filings for substantially similar claims are inefficient and serve no purpose.  *Foster*, 655 F.2d at 1322; *see also Davis v. Dist. of Columbia*, 246 F. Supp. 3d 367, 390 (D.D.C. 2017) (holding that the vicarious exhaustion doctrine applied because "[t]he relevant EEOC charges and the claims before this court arose from the same allegedly discriminatory practices").

Vicarious exhaustion should be rejected only when "complaints differ such that there is a real possibility that one claim may be settled administratively while the other may be resolved only in the courts…." *Byrd*, 807 F. Supp. 2d. at 63.  By contrast, even when the "specific circumstances giving rise to the grievances of each of the plaintiffs [] are distinguishable," vicarious exhaustion is appropriate when "each [] plans to prove [their] allegations by demonstrating the same thing: a pervasive 'pattern and practice' of [] discrimination."  *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985).

The Forced Retirement Policy claims exhausted in Plaintiff Pappas's administrative complaint are indistinguishable from those raised by the other Plaintiffs in this class action lawsuit.  Plaintiffs Lindsay, Mathies, and Malik, like Plaintiff Pappas, are former MPD police officers who were involuntarily retired based on disability after being on sick leave or limited-duty status for 172 cumulative days, pursuant to MPD policy.  *See, e.g.*, Am. Compl. ¶¶ 54–55. Every Plaintiff alleges the same harm on behalf of themselves and similarly situated police officers—that MPD's Forced Retirement Policy unlawfully discriminates on the basis of disability.  Each Plaintiff seeks relief enjoining Defendants from carrying out the Forced Retirement Policy and requiring Defendants to provide extended leave, job restructuring, or reassignment to vacant positions when needed to accommodate employees with disabilities.

Plaintiff Pappas's charge alerted the EEOC to MPD's unlawful Forced Retirement Policy as well its standardized application to him and other officers.  Plaintiff Pappas's EEOC charge stated that he was involuntarily retired according to MPD's Forced Retirement Policy.  Dkt. 19-3 at 3.  Contrary to Defendants' assertion that Plaintiffs' claims would not have given the EEOC an opportunity for administrative consolidation and resolution, on August 10, 2016, the EEOC found reasonable cause to believe that the MPD's Forced Retirement Policy violated the ADA as applied to Plaintiff Pappas and "a class of similarly situated individuals":

> I find there is reasonable cause to believe that, at least from April 25, 2006 (the effective date of the General Order 100.11) to the present, Respondent has violated the ADA by failing to accommodate, and by forcibly retiring Charging Party as well as a class of similarly situated individuals, in violation of the ADA.

Am. Compl. ¶ 57; Ex. A, EEOC Reasonable Cause Determination, at 2.[1]  MPD's application of the Forced Retirement Policy to Plaintiff Pappas was more than adequate to alert the EEOC and MPD of the class claims, including claims by the other three putative class representatives—Plaintiffs Lindsay, Mathies, and Malik.

In a futile attempt to place the focus on the individual Plaintiffs rather than MPD's uniform discriminatory policy, Defendants highlight minute differences between each Plaintiff's individualized involuntary retirement process, implying that the EEOC would not have been on notice that MPD used a discriminatory policy that would apply to each of the Plaintiffs' factual circumstances.  Defendants point to differences in whether Plaintiffs' medical conditions or injuries occurred on duty or off duty, the length of their estimated recovery periods, and whether they affirmatively applied for another position, but none of these factors prevents application of the vicarious exhaustion rule in this case.  Plaintiffs Pappas, Lindsay, Mathies, and Malik were

---

[1] This Court may take judicial notice of EEOC documents without converting a motion to dismiss into a motion for summary judgment.  *See, e.g.*, *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 264, 272 (D.D.C. 2011).

each subjected to MPD's discriminatory Forced Retirement Policy and all endured disability discrimination due to the policy.  Each Plaintiff was diagnosed with a medical condition that required time off from work, as well as limited-duty assignments.  Am. Compl. ¶¶ 21–23, 27, 30–33, 37–41, 45–49.  Under the Forced Retirement Policy, an officer's specific medical condition or expected recovery time is irrelevant; at the end of the 172-day limit for sick leave and/or limited duty status, they are medically retired.  *See id.* ¶ 54 (retirement is mandatory "regardless of whether the medical prognosis is that a member will be able to perform in a full duty status after reaching maximum medical improvement").  MPD applied its blanket policy to each Plaintiff by medically retiring them at the end of the prescribed period.  *Id.* ¶¶ 27–29, 34–36, 41–44, 49–53.

Defendants misread the Amended Complaint in arguing that Plaintiff Malik's claim is dissimilar from Plaintiff Pappas's.  Defendants argue that Plaintiff Malik's post-surgery limited-duty status was "shortened by receiving a defibrillator to treat a preexisting heart condition, after which he 'never returned to work.'"  Motion at 11.  But the Amended Complaint thoroughly describes Plaintiff Malik's timeline regarding his disability, medical procedures, sick leave, and limited-duty status, which is similar to Plaintiff Pappas's experience.  Am. Compl. ¶¶ 45–53.  After Plaintiff Malik injured his back in June 2016, he underwent surgery in November and was recovering on sick leave until February or March of 2017.  *Id.* ¶¶ 45–46. During this time, Plaintiff Malik's preexisting heart condition, of which MPD was aware, was aggravated, and he was informed he would need a defibrillator.  *Id.* ¶ 47.  When Plaintiff Malik returned to work in February or March of 2017, he was assigned to limited duty.  *Id.* ¶ 46.  He remained in limited-duty or sick leave status until, after his heart surgery, he was medically retired in June of 2018 due to the Forced Retirement Policy.  *Id.* ¶ 49.  Plaintiff Malik's claim thus challenges precisely the same Forced Retirement Policy that Plaintiff Pappas challenges.

**B.**     **Plaintiffs Lindsay, Mathies, and Malik Brought Timely Section 504 Claims Because the Applicable Statute of Limitations Was Tolled While the EEOC Considered Plaintiff Pappas's Administrative Complaint.**

Relatedly, Defendants argue that the Section 504 claims by Plaintiffs Lindsay, Mathies, and Malik are untimely, because a one-year statute of limitations applies to Section 504 claims, and these Plaintiffs filed suit more than one year after they were "terminated" from MPD "without receiving accommodations."  Motion at 14.  Defendants concede that Plaintiff Pappas's EEOC complaint tolled the statute of limitations for his Section 504 claim but ignore that tolling applied equally to the other Plaintiffs' Section 504 claims.

Because "the Rehabilitation Act does not specify its own limitations period, courts generally borrow one from an analogous state cause of action."  *Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016).  Assuming, *arguendo*, the one-year statute of limitations in the District of Columbia Human Rights Act ("DCHRA") applies to Plaintiffs' claims, Motion at 14–16, then "so does the Act's tolling provisions,"[2] *Hatter v. WMATA*, 105 F. Supp. 3d 7, 10–11 (D.D.C. 2015); *see also Alexander*, 826 F.3d at 551 ("[W]hen a federal court borrows a limitations period from state law, that law's tolling provisions come along as part of the package," because "the chronological length of the limitation period is interrelated with provisions regarding tolling").  The tolling provision under Section 504 is triggered by the timely filing of a charge of discrimination with the EEOC—even if that charge alleges an ADA violation exclusively and does not mention Section 504—if the exhausted ADA claim is "closely akin" to the Section 504 claim and not "separate, distinct, and

---

[2] "[T]he question of what statute of limitations applies to Rehabilitation Act claims" remains "unsettled in this Circuit."  *Congress v. D.C.*, 277 F. Supp. 3d 82, 87 (D.D.C. 2017).  In *Minter v. District of Columbia*, 62 F. Supp. 3d 149, 164 (D.D.C. 2014), *aff'd*, 809 F.3d 66 (D.C. Cir. 2015), for example, the court applied a three-year statute of limitations for Section 504 claims. If this Court concludes that a three-year, rather than a one-year, statute of limitations applies, then Defendants' argument also fails at least with respect to Plaintiff Malik, who filed a claim within three years after he was forced into disability retirement.

independent." *Alexander*, 826 F.3d at 551.  That is the case here—indeed, Plaintiffs' ADA and Section 504 claims are identical.  *Compare* Am. Compl. ¶¶ 73–86, *with id.* ¶¶ 87–100.[3]

Defendants do not dispute that a timely-filed administrative complaint alleging ADA violations tolls the one-year statute of limitations that applies to Section 504 claims, so long as the two claims are similar.  *See Alexander*, 826 F.3d at 551.  Because all Plaintiffs challenge the Forced Retirement Policy, Plaintiff Pappas's EEOC complaint also applies to the other Plaintiffs' ADA and Section 504 claims pursuant to the vicarious exhaustion doctrine.  The tolling period for Plaintiff Pappas's Section 504 claims ended, and the one-year statute of limitations began to run, on June 22, 2019—the day after Plaintiff Pappas received his right-to-sue notice.  Ex. B, EEOC Right to Sue Notice.  This suit was filed well before the one-year statute of limitations for the Section 504 claims had run for any Plaintiff.

## C.   Plaintiffs Need Not Expressly Request an Accommodation to Prevail on Their Failure-to-Accommodate Claims.

Defendants next argue that Plaintiffs' failure-to-accommodate claims fail because Plaintiffs "do not allege that they made affirmative requests for accommodations."  Motion at 18. That argument fails for at least three reasons.  First, any requirement to request accommodations is excused where, as here, Plaintiffs plausibly allege that such a request would have been futile. Second, Plaintiffs plausibly allege that they did inform Defendants of both their significant

---

[3] To the extent Defendants argue that the DCHRA's tolling provision should not apply to Plaintiffs' Section 504 claims because exhaustion is not mandatory under Section 504, *see* Motion at 13; *Cong. v. D.C.*, 277 F. Supp. 3d at 88–89, the D.C. Circuit already has rejected that argument.  *See Alexander*, 826 F.3d at 552 (holding that the DCHRA's tolling provision "applies generally to any time period while an administrative complaint is pending," even if exhaustion of the tolled claim is not required, because even the DCHRA does not mandate exhaustion in all circumstances); *see McIntyre v. WMATA*, 2019 WL 2120324, at *6 (D.D.C. May 15, 2019) (rejecting contrary conclusion in *Cong. v. D.C.* as incorrect and contained in "dicta"); *see also McFadden v. Washington Metro. Area Transit Auth.*, 204 F. Supp. 3d 134, 143 (D.D.C. 2016) (applying the DCHRA's tolling provision to Section 504 claims); *Hatter*, 105 F. Supp. 3d at 11 (same).

disabilities and their desire for accommodations.  However, should this Court require more,

Plaintiffs should be granted leave to amend their complaint to further allege the requests they

made and Defendants' responses thereto.  Third, MPD did not even develop procedures for

requesting an accommodation based on disability until 2017—after Plaintiffs Pappas, Lindsay,

and Mathies had been forced into retirement, *see* Ex. C, Special Order 17-05, Compliance with

Title I of the Americans with Disabilities Act (June 30, 2017), and MPD explicitly discouraged

Mr. Malik from making an accommodation request.

       1.     **Any Reasonable Accommodation Request Would Have Been Futile.**

      Plaintiffs need not request a reasonable accommodation if such a request would be an

empty gesture, destined to fail.  Under the futility doctrine, courts routinely excuse the need to

request an accommodation where such a request has no chance of success.  *See Davoll*, 194 F.3d

at 1132 (plaintiff need not request accommodation if the employer "has a set policy against" the

accommodation); *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 344 (6th Cir. 2002) (plaintiff

need not request accommodation if doing so amounts to a "useless act"); *Bultemeyer v. Fort

Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (plaintiff need not request

accommodation because plaintiff "may have thought it was futile to ask, after [his employer] told

him he would not receive any more special treatment"); *see also Loulseged v. Akzo Nobel Inc*.,

178 F.3d 731, 738-40 (5th Cir. 1999) ("A clear declaration by an employer that no reasonable

accommodation will be forthcoming" may "terminat[e] the interactive process and remov[e] any

duty the employee had to speak up," because "further discussion" would be "futile"); *Dvorak v.

Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 485 (7th Cir. 2002) (excusing plaintiff's failure to

engage in the interactive process if "further conversations" about accommodations would be "futile").[4]

Here, the futility doctrine applies because Plaintiffs allege that MPD maintained a "policy or practice of forcing employees with disabilities" into retirement, "with no possibility of reasonable accommodation." Am. Compl. ¶ 4. Indeed, Plaintiffs' allegations here are virtually identical to those in *Davoll v. Webb*. There, city police officers sustained injuries and, as a result, could not shoot a gun or make forcible arrests. After an initial period on light duty, the city forced these officers into disability retirement because they could not perform the duties of police officers and city policy "forbids disabled police officers from transferring into other vacant positions in the city government." 194 F.3d at 1125. On appeal, the court rejected the city's argument that the failure-to-accommodate claims were barred for failure to request reassignment. The plaintiffs were not required to make such a request, the court explained, because they "were well aware of [the city's] policy of refusing to reassign disabled police officers," and any request would have been futile. *Id.* at 1131–32. Indeed, the court held that an employer "cannot preempt the interactive process with its policy and actions and then escape liability by claiming [plaintiffs] did not properly initiate the process." *Id.* at 1133.

Defendants' Forced Retirement Policy is even more draconian than the no-reassignment policy in *Davoll*. Here, MPD "maintained a blanket policy or practice" requiring "involuntary retirement" for all MPD officers who become disabled and "cannot resume full-duty status."

---

[4] *See also, e.g.*, *Beveridge v. Northwest Airlines, Inc.*, 259 F. Supp. 2d 838, 854 (D. Minn. 2003) ("In passing the ADA, Congress specifically intended that the futile gesture doctrine . . . should apply to employment actions."); *May v. Roadway Express, Inc.*, 221 F. Supp. 2d 623, 628 (D. Md. 2002) (applying futility doctrine to ADA context); *Leskovisek v. Illinois Dep't of Transportation*, 305 F. Supp. 3d 925, 932 (C.D. Ill. 2018) (noting that "[c]ourts have extended the futility doctrine to ADA cases," and denying motion to dismiss because the plaintiffs alleged "that it would have been futile to apply for a vacant position where, due to their disabilities and the lack of a reasonable accommodation, they could not complete the threshold testing and interview requirements").

Am. Compl. ¶ 54.  This blanket policy brooks no exceptions, such that any requests would have been futile—Plaintiffs had "no possibility of reassignment, job restructuring, [] extended leave," or any other potential accommodation.  *Id.*  Not surprisingly, Defendants "refused" to provide Plaintiffs with reasonable accommodations and instead "involuntarily" retired them.  *E.g.*, Am. Compl. ¶¶ 41–42.  In these circumstances, the futility doctrine applies because Defendants "essentially foreclosed the interactive process through [their] policies or explicit actions," and any "failure" by Plaintiffs to request an accommodation "was a logical result of the city's position."  *Davoll*, 194 F.3d at 1133.  The situation is even more egregious with respect to Mr. Malik, who alleges he was informed that after his surgery, "he would no longer be eligible to work for MPD," thus foreclosing any request for accommodation.  Am. Compl. ¶ 47; *see also* EEOC 2002 Guidance, 2002 WL 31994335, at *34 n.108 ("An employer may not assert that it never received a request for reasonable accommodation . . . if it actively discouraged an individual from making such a request.").

## 2.  Defendants Knew of Plaintiffs' Disabilities and Need for Assistance.

Defendants' argument also fails because Plaintiffs allege that Defendants knew of Plaintiffs' disabilities and need for assistance.  Although Defendants argue that Plaintiffs did not allege "affirmative requests," Motion at 18, such affirmative requests are not required if the employer "know[s] that the employee has a disability . . . and that the employee is seeking assistance from the employer."  *Thompson v. Rice*, 305 F. App'x 665, 668 (D.C. Cir. 2008); *see Lee v. D.C.*, 920 F. Supp. 2d 127, 136 (D.D.C. 2013) (plaintiff need not make express request if the employer "knows of the disability and the employee's desire for accommodations.").  And even the desire for accommodations need not be explicit if it can be inferred from context.  *See Mitchell v. Pompeo*, 2019 WL 1440126, at *10 (D.D.C. Mar. 31, 2019) (disabled employee's request for continued employment "is a sufficient request for accommodation"); *Lee*, 920 F.

Supp. 2d at 137 (employer "was on notice" that disabled employee desired accommodation because plaintiff told his superior officer, "Sarg, you know I'm a diabetic.  I need my lunch break."). Indeed, "there may well be cases where the plaintiff's need for an accommodation is so apparent that the defendant must offer one regardless of whether the plaintiff requested it." *Chenari v. George Washington Univ.*, 847 F.3d 740, 748 (D.C. Cir. 2017).

Here, doctors informed Defendants of Plaintiffs' disabilities.  Plaintiffs allege that they provided information from their doctors to MPD regarding their disability.  *See* Am. Compl. ¶¶ 24, 27, 31, 41.  In Plaintiff Malik's case, MPD's own cardiologist provided his diagnosis and informed him he would be forcibly retired.  *Id.* ¶ 47.  That information in itself constitutes a "request" for a reasonable accommodation.  *See, e.g.*, *Ham v. Ayers*, 229 F. Supp. 3d 32, 38 (D.D.C. 2017) (doctor's report constitutes a "request" if it provides employer notice of the disability and need for an accommodation); *Mobley v. Miami Valley Hosp.*, 603 F. App'x 405, 413 (6th Cir. 2015) ("[O]ur case law considers letters from physicians sufficient to notify an employer of the need to accommodate a disability."); *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (jury could conclude plaintiff requested accommodation where doctor's note allowed plaintiff to return to full-time work "at a sub-station closer to her home").  Indeed, under MPD's own recently adopted policy, "[a]ll doctors' notes shall be treated as a request for reasonable accommodation except for the most minor, short-term conditions (e.g., the flu)."  Ex. D, General Order: Compliance with Title I of the Americans with Disabilities Act, at 7 (July 26, 2018).[5]  Defendants' argument that Plaintiffs failed to request an accommodation is brazen in light of its own policy on this subject, and this Court should reject it.

---

[5] The Court may take judicial notice of MPD's policies, which are available on MPD's website. "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). "[J]udicial notice may be taken of public records and government documents available from

Moreover, it is reasonable to infer from the fact that Plaintiffs were placed on light duty or other types of accommodation until their 172 days ran out that MPD was aware of, and acknowledged, their need for accommodations.  The ADA does not require an employee to request a new form of accommodation when an employer decides to terminate the original accommodation.  *See Robinson v. Wash. Metro. Area Transit Auth.*, 2020 U.S. Dist. LEXIS 213214, *10 (D.D.C, Feb. 7, 2020) (noting that terminating an existing accommodation may lead to liability) (citing *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 736 (N.D. Ill. 2014)); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) ("[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues . . . where the employer is aware that the initial accommodation is failing and further accommodation is needed.").

Finally, even if a new request were required, Plaintiffs sufficiently have alleged that they requested accommodations near the end of the 172-day period.  *See Mitchell*, 2019 WL 1440126, at *10 (disabled employee's request for continued employment "is a sufficient request for accommodation"); *Suvada v. Gordon Flesch Co.*, 2013 WL 5166213, at *5 (N.D. Ill. Sept. 13, 2013) (employee's inquiry into whether "there were any easier jobs available" constituted "request" for accommodation).  Plaintiff Pappas put MPD on notice of his desire for an accommodation that would enable him to keep working for the District.  He alleges that he gave a doctor's report to MPD indicating that he would be able to resume full duties roughly one month after his time on light duty expired, but that MPD nonetheless "refused to accommodate him."  Am. Compl. ¶ 27.  He further alleges that he attempted to remain employed by applying

---

reliable sources."  *Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016), *aff'd*, 869 F.3d 976 (D.C. Cir. 2017); *see Humane Soc'y of United States v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 40 n.2 (D.D.C. 2019).

for a civilian position—but that he "did not receive an interview" even though "Defendants had vacant positions available for which Mr. Pappas was qualified." *Id.* ¶¶ 25, 29.  Plaintiff Lindsay alleges that she provided a doctor's note to MPD stating she could return to full duty by February 25, 2016, and that she asked MPD to postpone her disability retirement consideration until that time.  Am. Compl. ¶ 33.  Thus, Plaintiff Lindsay did not merely request continued employment, *see Mitchell*, 2019 WL 1330126, at *10—she requested a specific accommodation to bring about that result.  Plaintiff Mathies alleges that her doctors stated that she would be able to return to full duty within six to twelve months of her third surgery, and that MPD nonetheless "refused to accommodate" her and "involuntarily" retired her at the end of the 172-day allotment—even though she was injured in the line of duty.  Am. Compl. ¶¶ 41, 42, 54.  Finally, Plaintiff Malik alleges he was "involuntarily retired" after MPD "refused to accommodate" him—even though he had "fully recovered" and could have performed the duties required of an MPD officer.  *Id.* ¶¶ 48–50.[6]

### D.    Plaintiffs Are "Qualified Individuals" under the ADA and Section 504.

Defendants next argue that Plaintiffs are not "qualified individuals" under the ADA or Section 504.  A "qualified individual" is one who "could perform the essential functions of the position *either with reasonable accommodation or without it.*"  *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018) (quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added).  Defendants ask this Court to put the cart before the horse and find as a matter of law that Plaintiffs were not entitled to reasonable accommodations because they could not perform the essential functions of their current jobs *without* such accommodations.  Such a circular argument would make the ADA's accommodation requirement a dead letter.

---

[6] It comes as no surprise that Plaintiffs notified MPD of their desire for reasonable accommodation through informal channels.  As previously noted, MPD did not develop procedures for requesting a reasonable accommodation based on disability until 2017.

Plaintiffs were denied the reasonable accommodations that would have allowed them to perform the essential functions of their jobs—namely, additional leave or light-duty time, job restructuring, or reassignment.  Once given those accommodations, they each allege that they would have been able to perform the essential functions of either their previous job, their restructured or light-duty job, or the job to which they were reassigned.  *See, e.g.*, Am. Compl. ¶ 81 ("Plaintiffs and the members of the Accommodations Class are or were able, with or without reasonable accommodation, to perform the essential functions of their positions with job restructuring or extended leave, or could have performed the essential functions of a position obtained through reassignment.").[7]

Federal enforcement agencies and courts have rejected Defendants' argument time and time again, finding that if an employee is unable to perform the "essential functions" of her current job, even with a reasonable accommodation, then the employer must consider reassignment as an alternative accommodation.  *See* EEOC Enforcement Guidance, 2002 WL 31994335, at *15 (reassignment to a vacant position generally "must be provided to an employee who, because of a disability, can no longer perform the essential functions of his/her current position"); *Senatore v. Lynch*, 225 F. Supp. 3d 24, 38–39 (D.D.C. 2016) (an employee may become eligible for reassignment "if the employee becomes unable to continue performing the

---

[7] Defendants also suggest that Plaintiffs failed to allege they are "qualified individuals" because Plaintiffs do not allege they could shoot a gun or make a forcible arrest at the time MPD forced them to retire.  This Court should reject Defendants' attempt to fashion a *per se* rule on such a fact-dependent issue.  Indeed, courts routinely decline to decide whether firing a gun or making forcible arrests are necessarily "essential functions" of police officers—even on summary judgment, let alone on a motion to dismiss.  *See Cripe v. City of San Jose*, 261 F.3d 877, 889–90 (9th Cir. 2001) (factual dispute existed as to whether making forcible arrests was an "essential function" for all officers in the City of San Jose's police department); *Acevedo*, 680 F. Supp. 2d at 737 (factual dispute existed as to whether "the ability to use a handgun, arrest suspects, and physically restrain individuals are essential functions of the police officer position within the Philadelphia Police Department"); *Dorris v. City of Kentwood*, 1994 WL 762219, at *4 (W.D. Mich. Oct. 4, 1994) (factual dispute exists as to whether the ability to make forcible arrests were "essential functions" of all police officers in City of Kentwood); *King*, 302 F. Supp. 2d at 290 (factual dispute exists as to "the essential functions of the position of a police officer").

essential functions of the current position due to a disability"); *Harris v. Chao*, 257 F. Supp. 3d 67, 76 (D.D.C. 2017) ("when an accommodation cannot be made in the employee's current position," an employer "must consider the feasibility of reassigning the disabled employee to a vacant position"); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1301 (D.C. Cir. 1998) ("An employee seeking reassignment to a vacant position is . . . within the definition if, with or without reasonable accommodation, she can perform the essential functions of the employment position to which she seeks reassignment."); *Mack v. Georgetown Univ.*, 2017 WL 4325596, at *14 (D.D.C. Aug. 4, 2017) (rejecting argument that employee was not otherwise qualified because she could not perform the essential functions of her current job), *report and recommendation adopted*, 2017 WL 4325617 (D.D.C. Sept. 27, 2017), *aff'd*, 2018 WL 3156846 (D.C. Cir. May 24, 2018).

The case law cited by Defendants, Motion at 19–22, stands only for the uncontroversial proposition—not relevant here—that employees who are unable to work *at all* cannot perform the "essential functions" of their position.  *See, e.g.*, *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1161 (10th Cir. 2014) (plaintiff "couldn't work at any point or in any manner," and "an employee who isn't capable of working for [six months] isn't an employee capable of performing a job's essential functions"); *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994) (plaintiff's attendance "was so erratic as to make her unqualified for *any* position," because "an essential function of any government job is an ability to appear for work"); *Minter v. Dist. of Columbia*, 809 F.3d 66, 70 (D.C. Cir. 2015) (plaintiff "had not performed a single day of work in more than three months" and the only other evidence regarding her ability to perform job functions was a doctor's note stating that plaintiff was "totally disabled" and would remain so "indefinitely"); *see also Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)

(plaintiff was "wholly unable to work"). This case law is irrelevant, including because Plaintiffs

allege they were qualified for other positions within the D.C. government.[8]

Here, Plaintiffs allege they were qualified to perform the essential functions of their jobs

or of other vacant government positions with reasonable accommodations. *See, e.g.*, Am.

Compl. ¶¶ 25, 81 (Plaintiff Pappas "applied for a civilian position within MPD and DC" but "did

not receive an interview" even though "he was qualified for the position"); *id.* ¶¶ 35–36

(although "Defendants had vacant positions available for which Ms. Lindsay was qualified,"

MPD "did not . . . make a reasonable effort to reassign Ms. Lindsay" to those positions); *id.* ¶¶

43–44 (similar allegations for Plaintiff Mathies); *id.* ¶¶ 52–53 (similar allegations for Plaintiff

Malik).  For this reason, Plaintiffs sufficiently allege that they were "qualified individuals."

### E.      Plaintiffs Adequately Have Alleged that the Accommodations They Seek Are Reasonable.

Defendants' next argument—that the accommodations Plaintiffs seek are not reasonable,

Motion at 22—also fails.  First, because Plaintiffs allege that Defendants failed to engage in the

interactive process required by the ADA, 29 C.F.R. § 1630.2(*o*)(3); EEOC Interpretative

Guidelines, 29 C.F.R. Part 1630, App. § 1630.9, Defendants should be denied dismissal

regardless of any factual arguments they may have about the reasonableness of Plaintiffs'

---

[8] Moreover, resolution of what constitutes the "essential functions" of a job is generally inappropriate on a motion to dismiss. *See Kirkland v. McAllenan*, 2019 WL 7067046, at *8 (D.D.C. Dec. 23, 2019) ("Generally, the question of what constitutes an essential function of a job is a factual issue to be determined by a jury.") (quoting *Hancock v. Wash. Hosp. Ctr.*, 13 F. Supp. 3d 1, 5 (D.D.C. 2014)).  Essential functions, like reasonable accommodations, "are genuine issues of material fact because the words 'essential' and 'reasonable' by their very nature involve the sifting and weighing of evidence." *Smith v. Dist. of Columbia*, 271 F. Supp. 2d 165, 172 (D.D.C. 2003), *aff'd* 430 F.2d 450 (D.C. Cir. 2005), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  Because a determination of the "essential functions" is a fact-intensive inquiry, courts routinely refuse to decide questions about essential functions on motions to dismiss or for summary judgment. *E.g.*, *Taylor v. Rice*, 451 F.3d 898, 906–07 (D.C. Cir. 2006) (essential functions are dispute of fact); *Ward v. Dist. of Columbia*, 211 F. Supp. 3d 58, 64 (D.D.C. 2016) (same).

proposed accommodations.  The interactive process is mandatory and its very purpose is to

identify reasonable accommodations, and Defendants may not prevail on a motion to dismiss or

for summary judgment simply by arguing after-the-fact that Plaintiffs' proposals are inadequate.

*See, e.g.*, *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 315 (3d Cir. 1999) (rejecting argument

that employers can decline to participate in the interactive process "and then, in post-termination

litigation, try to knock down every specific accommodation" proposed by plaintiffs); *Cravens v.

Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000) (failure of

employer to engage in interactive process creates fact question as to whether employer

"attempted to provide reasonable accommodation"); *see generally Whitbeck v. Vital Signs, Inc.*,

116 F.3d 588, 592 (D.C. Cir. 1997) (in the interactive process, "both parties bear responsibility

for determining what accommodation is necessary").  Plaintiffs allege that Defendants did not

engage in such a process here, and Defendants' belated criticisms of the accommodations that

Plaintiffs propose affords no basis for granting the Motion.

Even if Defendants had engaged in the interactive process, "the reasonableness of

[Plaintiffs'] requests" for accommodation constitutes a "question[] of fact that [is] inappropriate

for resolution on a motion to dismiss."  *Buie v. Berrien*, 85 F. Supp. 3d 161, 172–73 (D.D.C.

2015); *see Hodges v. Dist. of Columbia,* 959 F. Supp. 2d 148, 155 (D.D.C. 2013) (rejecting

motion to dismiss where "the parties dispute[d] the reasonableness of the accommodation

offered").  This Court should decline Defendants' invitation to rule on the "fact intensive"

reasonableness question at the outset of this litigation.  *See Howard v. Gutierrez*, 2005 WL

3274394, at \*2 (D.D.C. Sept. 30, 2005).

Defendants' arguments also fail on the merits.  With respect to additional leave,

Defendants concede that "[l]eave extensions may be reasonable in certain circumstances," but

nonetheless argue that additional leave here "would not have amounted to a reasonable

accommodation" because "neither the ADA nor Section 504 requires employers to extend employees' leave beyond a certain point." Motion at 22–24.[9] Defendants fail to define when that "certain point" occurs. *See Howard*, 2005 WL 3274395, at *2. And this Court should reject Defendants' suggestion that any extension beyond the 172 days of leave that they arbitrarily created for everyone is *per se* unreasonable. The Plaintiffs who seek extended leave as an accommodation (Plaintiffs Pappas and Lindsey) allege that they requested limited additional leave based on professional medical opinions and for limited periods. *See, e.g.*, Am. Compl. ¶ 34 (MPD involuntarily retired Plaintiff Lindsay only two months before her doctor expected her to return to full duty), *id.* ¶ 27 (MPD retired Plaintiff Pappas approximately five weeks before his expected return to full duty). These circumstances suggest their requests were reasonable. *See Criado v. IBM Corp.*, 145 F.3d 437, 443–44 (1st Cir. 1998) ("leave extensions are reasonable accommodations in some circumstances," especially if the plaintiff "offered evidence tending to show that her leave would be temporary").[10] Such a limited leave request is not unreasonable as a matter of law.[11]

In addition to extended leave, all four Named Plaintiffs sufficiently allege that reassignment was an available reasonable accommodation that Defendants failed to pursue.

---

[9] Courts routinely conclude that additional leave may constitute a reasonable accommodation. *See, e.g.*, *Dark v. Curry Cty.*, 451 F.3d 1078, 1090 (9th Cir. 2006) ("Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer."); *see also Taylor v. Rice*, 451 F.3d 898, 910 (D.C. Cir. 2006) ("An employee's proposed accommodation seeking to use leave time to receive necessary medical care will be reasonable in many circumstances."); 29 C.F.R. § Pt. 1630, App. (reasonable accommodations include "providing additional unpaid leave for necessary treatment").

[10] Plaintiffs were not required to allege an exact date by which they could return to full duty. *See* EEOC Enforcement Guidance, 2002 WL 31994335, at *30 (Oct. 17, 2012) ("Treatment and recuperation do not always permit exact timetables. Thus, an employer cannot claim undue hardship solely because an employee can provide only an approximate date of return.").

[11] The burden of establishing that a request for leave would be an undue hardship is on Defendants as an affirmative defense. *E.g.*, *Floyd v. Lee*, 85 F. Supp. 3d 482, 499 n.22 (D.D.C. 2015).

Although Defendants argue that job reassignment is not "plausible" unless reassignment would enable Plaintiffs to perform the "essential functions" of an MPD officer, Motion at 24–25, as discussed above, that formulation turns the relevant legal inquiry inside-out.  With respect to reassignment, what matters is not whether Plaintiffs can perform the "essential functions" of D.C. police officers, but whether they could perform (with or without a reasonable accommodation) the "essential functions" of a different, vacant position.  *See Senatore*, 225 F. Supp. 3d at 38–39.  The "essential functions" of this different position may not include shooting a gun or making forcible arrests—especially because the ADA obligates MPD to search for available positions both inside MPD and elsewhere in the D.C. government.  *Bergman v. Paulson*, 555 F. Supp. 2d 25, 33 (D.D.C. 2008) (concluding, in a case involving the federal government as the employer, "an employer's reassignment obligation is not limited to vacant positions serviced by the same appointing authority"); EEOC Guidance, 2002 WL 31994335, at *22 ("The ADA contains no language limiting the obligation to reassign only to positions within an office, branch, agency, etc.  Rather, the extent to which an employer must search for a vacant position will be an issue of undue hardship."); *see also Davoll*, 194 F.3d at 1132 (city may have to reassign police officers to the "Career Service"—which houses "almost all other city employees"—as a reasonable accommodation).[12]  Plaintiffs adequately have alleged the existence of vacant positions within MPD or the broader D.C. government for which they were qualified, and that they were never considered for these positions.  *See Am. Compl.* ¶¶ 25, 28, 29, 35, 36, 43, 44, 52, 53.[13]

---

[12] Even MPD has recognized this obligation.  *See Ex. D, General Order: Compliance with Title I of the Americans with Disabilities Act*, at 10 (if no reasonable accommodation exists for the current position, MPD "shall initiate discussions with appropriate agency and district officials to identify a civilian vacant position with the MPD or within the District of Columbia government").

[13] Plaintiffs need not allege specific vacancies within MPD or the D.C. government in the initial pleading, because such information may not be within their control.  *See Taylor*, 184 F.3d at 316

With respect to restructuring Plaintiffs' positions within MPD—another reasonable accommodation that Defendants should have considered—Defendants note that a "[r]easonable accommodation does not require an employer to restructure an existing job to remove some of its essential functions." *Jones v. Univ. of D.C.*, 505 F. Supp. 2d 78, 90 (D.D.C. 2007).  But this argument depends on Defendants' unfounded assumption that any "restructured" position within MPD would "remove" some "essential functions" of Plaintiffs' current positions—a disputed question of fact that is both belied by the existence of light-duty positions and improper to decide on a motion to dismiss.  Defendants' arguments fail with respect to all of Plaintiffs' proposed reasonable accommodations.

### F.  Plaintiff Pappas Adequately Pled an Unlawful Medical Inquiries Claim.

Defendants also argue that Plaintiff Pappas failed to state a claim for improper medical inquiries under the ADA and Section 504.  That argument should be readily rejected.  Although Defendants argue that the Amended Complaint "contains no allegations that the medical inquiries in question were not job-related," Motion at 28, this argument ignores the Amended Complaint's very contents.  Plaintiff Pappas claims that, although his health problem was not incurred while on duty, MPD nonetheless "required" him to provide wide-ranging medical records—"including results of his echocardiograms and detailed letters from his treating physicians," Am. Compl. ¶ 22—that were "improper" because this required information went beyond what could reasonably be construed as "job-related and consistent with business necessity," *id.* ¶¶ 102–03; *see id.* ¶ 61 (requested information "was not limited to that which was

---

("[T]he employee does not have the burden of identifying open positions without the employer's assistance."); *see also Terrazas v. Medlantic Healthcare Grp., Inc.*, 45 F. Supp. 2d 46, 53–54 (D.D.C. 1999) ("a trial is necessary" where the plaintiff alleged his employer did not reassign him to a vacant position, and "the record does not adequately address whether there were vacant positions"); *Aka*, 156 F.3d at 1304 n.27 (D.C. Cir. 1998) (employer must assist plaintiffs in identifying appropriate job vacancies, "since plaintiffs can hardly be expected to hire detectives to look for vacancies").

necessary to aid in approval of requested sick leave or reasonable accommodation" or to determine Plaintiff Pappas's "ability to perform the essential functions" of his position).  Not only did MPD policy require Plaintiff Pappas to provide "lab reports, surgical reports, a diagnosis and prognosis of medical condition and any other information as deemed necessary," *id.* ¶ 56, but MPD also "communicated directly with his treating physicians" to obtain even more information concerning his health, *id.* ¶ 24.  As the EEOC found, *see* Ex. A, EEOC Reasonable Cause Determination at 2, there is no limitation, either in MPD's policy or in its practice as implemented regarding Plaintiff Pappas, to medical information that is job related, or even limited to a particular injury or illness for which the officer is seeking sick leave or accommodation.  *See also* Am. Comp. ¶ 56. These allegations more than suffice to state a claim for improper medical inquiries under the ADA and Section 504.

Defendants rely on *Blackwell v. SecTek, Inc.*, but the plaintiff in that case—unlike Plaintiff Pappas—"failed to plead that the [medical inquires] were not "job-related."  61 F. Supp. 3d 149, 159 (D.D.C. 2014).  And, unlike the plaintiff in *Porfiri v. Eraso*, Plaintiff Pappas adequately has explained why MPD's "inquiries were unnecessarily intrusive," 121 F. Supp. 3d 188, 198 (D.D.C. 2015)—including because MPD contacted his doctors directly and demanded his medical test results, rather than relying on Plaintiff Pappas's physician's judgment and allowing Plaintiff Pappas to ensure that only appropriate, job-related information was conveyed from his doctors to his employer.  Defendants also cite EEOC guidance noting that employers may make medical inquiries "when an employee who has been on leave for a medical condition seeks to return to work."  Motion at 28.  But that Guidance goes on to state that, "in limited circumstances," such officers may be subjected to medical examinations that are "narrowly tailored to address specific job-related concerns."  Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act,

- 23 -

2000 WL 33407181, at *14 (July 27, 2000).  The lack of narrow tailoring and job relation is precisely what Plaintiff Pappas challenges here.

      **G.**    **Defendant Newsham is a Proper Defendant Because Plaintiffs Seek Injunctive Relief in Addition to Damages.**

Defendant Newsham is the individual responsible for implementing any injunctive relief this Court grants.  He may be sued in his official capacity.  *See Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 26 (D.D.C. 2007) ("courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringement of federal rights") (citing *Rhode Island Dept. of Envtl. Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002)).

Plaintiffs' first request for relief on all counts is for this Court to "grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert of participation with them, from engaging in employment practices that discriminate on the basis of disability…."  Am. Compl. at 19.  Defendant Newsham is the primary person to ensure the "implementation of policies to restructure positions when needed to accommodate employees with disabilities, to provide extended leave when needed to accommodate employees with disabilities, and to identify vacant positions and reassign employees with disabilities to vacant positions for which they are qualified…." *Id*.  Plaintiffs do not seek monetary relief from him.  As such, the Court should deny Defendants' motion to dismiss Defendant Newsham from the lawsuit.

## IV.  Conclusion

For the aforementioned reasons, this Court should dismiss MPD as a defendant in this litigation and otherwise deny Defendants' Motion to Dismiss.

Dated: March 6, 2020                    Respectfully submitted,


/s Eve Hill
Eve Hill (Fed. Bar No. 424896)
Andrew D. Levy (Fed. Bar No. 458998)
Emily L. Levenson (*pro hac vice pending*)
**BROWN, GOLDSTEIN & LEVY, LLP**
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
Tel.: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold.com
adl@browngold.com
elevenson@browngold.com



/s Ellen Eardley
Ellen Eardley (DC Bar No. 488741)
Cyrus Mehri (DC Bar No. 420970)
Lauren Nussbaum (DC Bar No. 1032248)
**MEHRI & SKALET, PLLC**
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Tel.: (202) 822-5100
Fax: (202) 822-4997
eeardley@findjustice.com
cmehri@findjustice.com
lnussbaum@findjustice.com

*Counsel for Plaintiffs and Putative Class*