UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVE PAPPAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> Defendants. | Civil Action No. 19-2800 (RC) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

### INTRODUCTION

Defendants the District of Columbia, the Metropolitan Police Department (MPD), and MPD Chief Peter Newsham (collectively, the District) have argued that plaintiffs' lawsuit, alleging claims under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Section 504), should be dismissed on various grounds. In their opposition to the District's motion to dismiss, plaintiffs try to explain away several pleading defects and make up for others by asserting facts not pled in their Amended Complaint (Complaint). Their efforts, however, are to no avail. Plaintiffs Tawana Lindsay, Nichole Mathies and Malachi Malik have all failed to exhaust their remedies as required under the ADA, and the statute of limitations has passed for their Section 504 claims. In any event, no plaintiff has stated a failure-to-accommodate claim, and plaintiff Steve Pappas has failed to state a claim for

improper medical inquiries. The Court should grant the District's motion and dismiss the Complaint.[1]

## ARGUMENT

### I. Plaintiffs Lindsay, Mathies and Malik Failed To Exhaust Under the ADA and Cannot Invoke Vicarious Exhaustion.

Plaintiffs acknowledge that Mr. Pappas is the only one among them who filed a charge with the Equal Employment Opportunity Commission (EEOC), a prerequisite for suing under the ADA. *See* Pls.' Opp'n [21] at 4. Plaintiffs nevertheless contend that they are excused from this failure by the "vicarious exhaustion" doctrine because "[e]very claim arises from the same discriminatory policy developed and implemented by MPD in violation of the ADA." *Id.* at 4-5. But that is simply not the case.

As plaintiffs acknowledge, the vicarious exhaustion doctrine does not apply where "complaints differ such that there is a real possibility that one claim may be settled administratively while the other may be resolved only in the courts." Pls.' Opp'n at 5 (internal quotation marks omitted) (quoting *Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 63 (D.D.C. 2011)). Plaintiffs believe it is enough that they have alleged the same legal wrong (disability discrimination) and seek the same relief (injunctive relief against the District). *See id.* at 5-6. That, however, is incorrect. The vicarious exhaustion doctrine does not apply where different plaintiffs would have to

---

[1] Plaintiffs have clarified that they seek only prospective injunctive relief from Chief Newsham and do not seek monetary relief from him. *See* Pls.' Opp'n [21] at 24. Plaintiffs agree that MPD should be dismissed from the lawsuit. *Id.* at 3.

"prove different sets of facts in order to prevail on their specific … claims," and where the claims do not "ar[i]se from one discriminatory mechanism." *See Byrd*, 807 F. Supp. 2d at 64; *see also Peters v. District of Columbia*, 873 F. Supp. 2d 158, 185 (D.D.C. 2012) (claims must "arise from the same facts, not merely overlapping or similar facts"). That plaintiffs seek similar relief under the same statutes does not make up for material differences in the facts they each allege.

Plaintiffs are likewise mistaken that the EEOC's determination letter making findings for Mr. Pappas and "a class of similarly situated individuals" somehow shows that Mr. Pappas's charge would have allowed for administrative consolidation of their claims. *See* Pls.' Opp'n at 6. The EEOC's finding says nothing about who falls within that class, let alone whether it includes Ms. Lindsay, Ms. Mathies and Mr. Malik. *See* Ex. A to Pls.' Opp'n [21-2]. And the allegations in the Complaint make clear that it does not. Notably, significant differences exist as to whether the various plaintiffs acquired their respective disabling conditions while on duty or off duty, which would trigger different requirements under the policy plaintiffs have alleged. *See* Compl. ¶¶ 21, 37, 54. Plaintiffs also allege different prognoses for their respective returns to employment and different facts as to new positions they did or did not seek, all of which could have changed the EEOC's analysis of how and whether the alleged policy applied to them. *See id.* ¶¶ 25, 27, 33, 34, 41.

Perhaps acknowledging the weakness of Mr. Malik's case, plaintiffs attempt to add numerous facts about Mr. Malik that were not pled in the Complaint. They cannot, however, use their opposition brief to add new allegations. *See Kingman Park*

3

*Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014). Plaintiffs contend, for instance, that after Mr. Malik returned to work from his back injury, he "remained in limited-duty or sick leave status until, after his heart surgery, he was medically retired in June of 2018 due to the Forced Retirement Policy." Pls.' Opp'n at 7. They also argue that Mr. Malik was "involuntarily retired based on disability after being on sick leave or limited-duty status for 172 cumulative days." *Id.* at 5. But the Complaint does not allege Mr. Malik was retired pursuant to any policy or that he was retired after taking 172 days of cumulative leave; it says nothing about how many days he spent on sick leave or in limited-duty status. In fact, the Complaint specifies that "MPD did not involuntarily retire a different police officer who also had a defibrillator." Compl. ¶ 51. If Mr. Malik was retired because of his defibrillator, plaintiffs cannot argue this was pursuant to a uniform policy while also acknowledging that others with defibrillators were not retired.

Most strikingly, however, plaintiffs argue in their opposition that upon being retired, Mr. Malik "had 'fully recovered' and could have performed the duties required of an MPD officer." Pls.' Opp'n at 15. But the Complaint alleges that Mr. Malik had only fully recovered from his back injury—not his heart surgery—upon retirement. *See* Compl. ¶ 49. And nowhere does the Complaint allege that Mr. Malik ever recovered his ability to perform the job of an MPD officer. Plaintiffs cannot add these or any other new allegations by way of their opposition brief. *See Kingman Park*, 27 F. Supp. 3d at 160 n.7.

These are material differences, not "minute" ones as plaintiffs insist. *See* Pls.' Opp'n at 6. And despite what plaintiffs contend, the question is not whether Mr. Pappas's charge put the EEOC on notice of MPD's allegedly discriminatory policy; rather, it is whether his charge would have put the EEOC on notice of the other plaintiffs' respective claims, such that they could have been consolidated and resolved in one fell swoop. *See Byrd*, 807 F. Supp. 2d at 63. Those claims raise fact-specific allegations of discrimination—allegations simply not covered by the facts presented in Mr. Pappas's charge.

## II. Plaintiffs Lindsay, Mathies and Malik Cannot Bring Claims Under the Rehabilitation Act Because the Statute of Limitations Has Passed.

There is no dispute that the one-year statute of limitations applicable to claims under the District of Columbia Human Rights Act (DCHRA) applies to plaintiffs' claims brought under Section 504. *See* Defs.' Mem. in Support of Mot. To Dismiss [19-1] (Defs.' Mem.) at 13; Pls.' Opp'n at 8. There is also no dispute that the Section 504 claims now brought by Ms. Lindsay, Ms. Mathies and Mr. Malik are time-barred if not tolled. *See id.* Plaintiffs, however, mistakenly contend that Mr. Pappas's EEOC charge tolled the statute of limitations for all of their Section 504 claims. *See* Pls.' Opp'n at 9. They are wrong.

Plaintiffs are incorrect to assert that because Mr. Pappas's EEOC charge tolled his own Section 504 claims, they necessarily get the benefit of that tolling, too, merely by virtue of the fact that "all Plaintiffs challenge the Forced Retirement Policy." Pls.' Opp'n at 9. They do not cite any authority for this proposition—nor could they. As discussed above, their allegations stand too far apart from those raised by Mr. Pappas

5

to benefit from vicarious exhaustion, even for their ADA claims. But even if that were not so as to those claims, Ms. Lindsay, Ms. Mathies and Mr. Malik cannot now bring Section 504 claims well past the statute of limitations on the basis of Mr. Pappas's administrative exhaustion when Section 504 does not even require administrative exhaustion for non-federal employees. *See Congress v. District of Columbia*, 324 F. Supp. 3d 164, 169 (D.D.C. 2018); *Adams v. District of Columbia*, 740 F. Supp. 2d 173, 181-82 (D.D.C. 2010). Plaintiffs have pointed to no authority for the extraordinary proposition that an individual who could have filed suit at any time can suddenly sue years past the statute of limitations just because someone else pursued an optional administrative remedy.

Alternatively, however, were the Court to disagree and conclude that Section 504 does require administrative exhaustion, the Court should find that the requirement is jurisdictional, which would render both tolling and vicarious exhaustion inapplicable. *See Williams v. Brennan*, 320 F. Supp. 3d 122, 127 (D.D.C. 2018); *Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 706 (D.C. Cir. 2009) (vicarious exhaustion inapplicable where exhaustion is jurisdictional).[2]

---

[2] The Court is at liberty to "inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction." *See Ragsdale v. Holder*, 668 F. Supp. 2d 7, 17 n.8 (D.D.C. 2009) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).

### III. Plaintiffs Have Not Pled a Failure-To-Accommodate Claim.

#### A. Plaintiffs Had to Request an Accommodation, Including Reassignment, But Do Not Allege They Ever Did.

Plaintiffs do not dispute that they failed to make affirmative requests for accommodations. *See* Pls.' Opp'n at 9-10. Instead, plaintiffs cite three reasons they believe they did not have to, despite D.C. Circuit precedent spelling out that the request for an accommodation is a "fundamental element" of any failure-to-accommodate claim. *See Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999). None of the three reasons plaintiffs cite can overcome this standard.

First, plaintiffs maintain that any such requests would have been futile in light of the "blanket" policy they allege. *See* Pls.' Opp'n at 11. They contend an employee need not request an accommodation "where such a request has no chance of success." *Id.* at 10. But plaintiffs' own allegations and Mr. Pappas's EEOC charge preclude them from arguing they were up against any such policy affording no exceptions. The Complaint alleges that Mr. Malik was subject to involuntary retirement "expressly on the basis of disability," *see* Compl. ¶ 49, upon receiving a defibrillator for a heart condition, and that he was "informed that after the defibrillator was installed, he would no longer be eligible to work for MPD," *id.* ¶ 47. Yet, as noted above, the Complaint also alleges that "MPD did not involuntarily retire a different police officer who also had a defibrillator." *Id.* ¶ 51. Similarly, Mr. Pappas alleges that "after 172 work days in limited-duty status," he "was required to appear before the Police and Firefighters Retirement Relief Board for disability retirement." *Id.* ¶ 26. He, too, claims he was "retired … expressly on the basis of disability." *Id.* ¶ 27. Yet in his

7

charge with the EEOC, Mr. Pappas specifically alleged that other MPD officers "were allowed to stay working in limited-duty for much longer periods of time." Ex. B to Defs.' Mot. to Dismiss [19-3] at 3. Plaintiffs cannot credibly maintain that any accommodation requests would have had "no chance of success" while simultaneously alleging examples of other officers receiving accommodations.

Plaintiffs' reliance on *Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999), is misplaced. Far from being "virtually identical" to this case as plaintiffs maintain, in *Davoll* the evidence presented at trial showed the city of Denver had a specific policy expressly prohibiting police officers from transferring into civilian positions. *Id.* at 1126. Upholding the jury's verdict against the city, the Tenth Circuit concluded that this policy "foreclosed the only reasonable accommodation that could have assisted plaintiffs—reassignment." *Id.* at 1133. Though the court concluded the jury had been properly instructed that a plaintiff need not request an accommodation where doing so would be futile, the court observed that "[o]nly in the rare case where an employer has essentially foreclosed the interactive process through its policies or explicit actions will the futile gesture doctrine apply." *Id.* Despite what plaintiffs argue in their opposition, their Complaint does not allege that MPD "essentially foreclosed" any opportunity for accommodation—a fact made clear by the several examples they acknowledge. *Davoll* is thus inapplicable.

Second, plaintiffs contend that they did not need to make an affirmative request for an accommodation because they have pled their doctors informed the District of their disabilities. Pls.' Opp'n at 13. Plaintiffs argue that an employee need

8

not make an affirmative accommodation request if the employer "know[s] that the employee has a disability … and that the employee is seeking assistance from the employer." *Id.* at 12 (internal quotation marks omitted) (quoting *Thompson v. Rice*, 305 F. App'x 665, 668 (D.C. Cir. 2008)). The second part of that rule is key, however: the employer must know that the employee seeks its assistance in pursuing the kind of accommodation at issue. Several of the cases plaintiffs cite highlight how this is especially so when an employee seeks reassignment. *See Thompson*, 305 F. App'x at 669 (rejecting plaintiff's failure-to-accommodate claim where "a reasonable fact finder could not find from the proffered evidence that" plaintiff employee with chronic fatigue "asked for a reassignment specifically to address that disability"); *Mitchell v. Pompeo*, Civil Action No. 15-1849, 2019 WL 1440126, at *10 (D.D.C. Mar. 31, 2019) (employer was required to consider reassignment where plaintiff in fact "presented sufficient evidence to show that she specifically sought reassignment to another position").

At most, plaintiffs' cases stand for the unremarkable proposition that a request for a specific accommodation may trigger an employer's obligation to provide that kind of accommodation. *See, e.g.*, *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 137 (D.D.C. 2013) (diabetic plaintiff's request for off-schedule lunch breaks raised question of fact as to whether plaintiff was seeking disability-related job modification); *but see id.* at 135 (notice to employer of plaintiff's disability "and need for regular lunch breaks … is an element of a failure-to-accommodate claim"); *Senatore v. Lynch*, 225 F. Supp. 3d 24, 38 (D.D.C. 2016) (employee who asked for

9

reassignment not entitled to accommodation where she did not meet "obligation to demonstrate that there existed some vacant position to which she could have been reassigned") (alteration adopted) (internal quotation marks omitted). But as other courts have acknowledged, it is simply not the case that mere awareness of an employee's disability triggers the employer's obligation to reassign the employee to a vacant position. *See, e.g.*, *White v. Town of Hurley*, Civil Action No. 17-0983, 2019 WL 1411135, at *43 (D.N.M. Mar. 28, 2019) (concluding police department "had no duty to propose reassignment on its own" where former officer never requested it).

Plaintiffs try to argue that the Complaint alleges they in fact "put MPD on notice" of their desires for accommodations by way of communications from their doctors. *See* Pls.' Opp'n at 14-15. But in so arguing, plaintiffs again attempt to add new allegations as to each plaintiff that cannot be fairly read into the Complaint. Although the Complaint does allege that physicians made assessments on behalf of Mr. Pappas, Ms. Lindsay and Ms. Mathies, *see* Compl. ¶¶ 27, 33, 41, nowhere do plaintiffs indicate these were communicated to MPD, let alone in a context that would suggest they were requests for accommodations. Notably, the allegations as to Mr. Malik do not even mention a physician assessment. *See id.* ¶¶ 45-53.[3] The Complaint simply does not raise these allegations. *See Kingman Park*, 27 F. Supp. 3d at 160 n.7.

---

[3]   Plaintiffs' citation to MPD General Order 100.14 has no relevance here—principally because it was issued in July of 2018, long after each plaintiff was retired. *See* Compl. ¶¶ 27 (Pappas retired in March 2015); 34 (Lindsay retired in December 2015); 41 (Mathies retired in October 2015); 50 (Malik retired in June 2018).

Finally, plaintiffs argue that "MPD did not even develop procedures for requesting a reasonable accommodation based on disability until 2017," and that "MPD explicitly discouraged Mr. Malik from making an accommodation request." Pls.' Opp'n at 10. First, plaintiffs offer no support for the assertion about Mr. Malik; nothing in the Complaint suggests as much. And second, while plaintiffs point to a 2017 MPD Special Order laying out certain procedures for requesting a disability accommodation, the existence of that order does not establish that MPD previously had no procedures for requesting an accommodation. That order has no bearing on the relevant legal analysis.

As the District argued in its motion, a failure-to-accommodate claim assumes "that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *See* Defs.' Mem. at 18 (internal quotation marks omitted) (quoting *Flemmings*, 198 F.3d at 861). Plaintiffs do not allege they requested the accommodations they now contend should have been received, and so their claims cannot succeed.

### B. Plaintiffs Have Not Alleged They Were Qualified Individuals.

Plaintiffs misstate the District's argument as to why they are not qualified individuals under the ADA and Section 504. Pls.' Opp'n at 15. The District made clear that a "qualified individual … is an individual who, *with or without reasonable accommodation*, can perform the essential functions of the employment position that such individual holds." Defs.' Mem. at 19 (internal quotation marks omitted) (emphasis added) (quoting *Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir.

2015)). Yet that definition notwithstanding, the District observed that none of the plaintiffs "has specifically alleged that he or she could have performed the job of an MPD officer *with any kind of reasonable accommodation* required under the ADA or Section 504," let alone without one. Defs.' Mem. at 20 (emphasis added).[4]

Perhaps acknowledging this to be true, plaintiffs focus primarily on reassignment and thus argue they only have to allege they were able to perform the essential functions of other positions, not those of an MPD officer, to be considered "qualified individuals." *See* Pls.' Opp'n at 16-17. But the very precedent they cite stands for just the opposite: without alleging that they in fact sought reassignment, they cannot fit within the definition of a "qualified individual" for a position they did not seek. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1301 (D.C. Cir. 1998) ("An employee *seeking reassignment* to a vacant position is thus within the definition [of 'qualified individual'] if, with or without reasonable accommodation, she can perform the essential functions of the employment position *to which she seeks reassignment*.") (emphasis added).[5]

---

[4] Despite plaintiffs' insistence to the contrary, the District did not advocate in its motion for any kind of "*per se* rule" as to the essential functions of a police officer. *See* Pls.' Opp'n at 16 n.7. The District maintains only that in light of the statutory physical fitness requirements for MPD officers, *see* D.C. Code § 5-107a(a), plaintiffs have not plausibly pled that they could have performed the essential functions of a police officer position with the kinds of limitations they allege, even with accommodations. *See* Defs.' Mem. at 25.

[5] Only Mr. Pappas alleges he applied for another job. *See* Compl. ¶ 25. The Complaint, however, offers no indication that Mr. Pappas alerted MPD that he was seeking the position as a reassignment to accommodate a disability.

12

Plaintiffs unsuccessfully try to distinguish the cases cited by the District for the proposition that an employee unable to perform a job for months at a time cannot be a qualified individual; *Hwang*, *Carr*, and *Minter* are all irrelevant, they contend, because the plaintiffs in those cases were "unable to work *at all*." Pls.' Opp'n at 17 (plaintiffs' emphasis). But the courts in *Hwang*, *Carr*, and *Minter* make clear that extended poor attendance is just one example of an employee's inability to perform the essential functions of the job over an extended period. *See Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994) ("With or without reasonable accommodation, then, [the plaintiff] could not perform the 'essential function' of coming to work regularly.");[6] *Minter*, 809 F.3d at 70 (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)) ("[A] plaintiff's 'ability to come to work, or to otherwise perform the essential functions of her job, is examined as of the time of the adverse employment decision at issue.'"); *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1162 (10th Cir. 2014) (Gorsuch, J.) ("[A]n employer is not required to accommodate a disabled worker by … eliminating an essential function of the job."). In any case, it would make little sense if a plaintiff unable to perform a job at all for six months was not a qualified individual, but one merely unable to perform the job's other essential functions for six months was a qualified individual.

---

[6] Despite plaintiffs' characterization, the plaintiff in *Carr* was, in fact, able to perform much of her job over the relevant period, but simply had poor and erratic attendance. *See Carr*, 23 F.3d at 527 (plaintiff absent from work only partially over six years of work).

13

Plaintiffs have not pled that they were "qualified individuals," either by virtue of their ability to perform their current jobs, or by having sought reassignment to a different job they could perform.

### C. The Accommodations Plaintiffs Seek Were Not Reasonable.

Finally, plaintiffs' three arguments that the accommodations they sought were reasonable all fail as well. First, plaintiffs' argument that the District failed to engage in the interactive process, *see* Pls.' Opp'n at 18, again ignores that a failure-to-accommodate claim presupposes both that the plaintiff asked for an accommodation and that the employer denied it. *See* Defs.' Mem. at 17-18 (citing cases); *see also Badwal v. Bd. of Trustees of the Univ. of the District of Columbia*, 139 F. Supp. 3d 295, 313 (D.D.C. 2015) (an employer's obligation to engage in the interactive process is "only triggered where the employee has actually *requested* a reasonable accommodation") (emphasis in the original); *Evans v. Davis Memorial Goodwill Indus.*, 133 F. Supp. 2d 24, 28 (D.D.C. 2000) (obligation to engage in interactive process "generally only triggered by an affirmative request"). Plaintiffs do not—and cannot—address that problem in light of their allegations.

Second, plaintiffs assert that the reasonableness of an employee's accommodation request is a factual question inappropriate for resolution at this stage. *See* Pls.' Opp'n at 19. But this disregards the well-settled rule that this Court need not accept as true a plaintiff's conclusory "assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The cases plaintiffs cite do not suggest otherwise. *See Buie v. Berrien*, 85 F. Supp. 3d 161, 172-73 (D.D.C. 2015)

14

(plaintiff alleging highly detailed set of facts in support of claim that employer rejected request to accommodate respiratory conditions by letting her telework or work in private officer with air purifier);[7] *Hodges v. District of Columbia*, 959 F. Supp. 2d 148, 155 (D.D.C. 2013) (addressing issue of whether employer's accommodation offer fulfilled statutory obligations, not whether employee had requested a reasonable accommodation). The very purpose of the Rule 12(b)(6) pleading standard is to assess whether, even if all allegations are true, the plaintiff could prevail on his or her claim. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). Where, as here, that is not the case, dismissal is warranted, and no resources need be expended on factual discovery.

Third, conceding that only Mr. Pappas and Ms. Lindsay allege they should have received extended leave, plaintiffs dispute that the additional leave they claim entitlement to was unreasonable given the leave they had already taken. Pls.' Opp'n at 20. The District has not argued that extensions of leave from the full duties of one's job can never be a reasonable accommodation. *See* Defs.' Mem. at 22 ("Leave extensions may be reasonable in certain circumstances …."). Rather, the District's argument is that months of additional leave on top of what plaintiffs had already

---

[7]   The defendant in *Buie* filed alternative motions to dismiss and for summary judgment, *see* 85 F. Supp. 3d at 166, which likely explains the Court's assessment that the plaintiff's pleadings raised "questions of fact." Merely alleging that a requested accommodation was reasonable could not automatically raise a question of fact in every case without rendering Rule 12(b)(6) a nullity.

taken was not a reasonable accommodation here. Courts have found additional leave unreasonable when sought on top of similar durations of leave time. *See Hwang*, 753 F.3d at 1162 (leave request on top of six months already taken not reasonable); *Scruggs v. Pulaski Cnty., Ark.*, 817 F.3d 1087, 1093 (8th Cir. 2016) (leave request beyond twelve weeks authorized under Family and Medical leave Act of 1993 not reasonable); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (leave request in excess of scheduled annual leave not reasonable). Mr. Pappas and Ms. Lindsay allege they took 172 days (approximately six months) of leave or limited-duty status. *See* Compl. ¶¶ 26, 34. Additional time beyond that is simply not a reasonable accommodation the District was obligated to provide.

Plaintiffs' characterization notwithstanding, Mr. Pappas and Ms. Lindsay have not alleged that they in fact requested additional leave, let alone with firm expectations that they would in fact be able to return to work. *See* Pls.' Opp'n at 20. The Complaint alleges only that Mr. Pappas's doctor "was hopeful" that he "would normalize" by April 2015, Compl. ¶ 27, and that Ms. Lindsay "was expected to fully recover within six to twelve months" after her surgery, *id.* ¶ 33. Plaintiffs have not pointed to any authorities suggesting that such general projections suffice to justify requests for leave extensions. Indeed, aspirational "prognostications" such as these are disfavored. *See Minter,* 809 F.3d at 70 (rejecting plaintiff's assessment "that she 'hope[d]' to return in another three months"); *Cox v. Nielsen*, Civil Action No. 16-1966, 2019 WL 1359806, at *13 (D.D.C. Mar. 26, 2019) (rejecting physician's

"prognostication" that plaintiff would recover in four weeks). Here, additional leave would not have been a reasonable accommodation.

Plaintiffs likewise offer nothing of substance to suggest that job restructuring would have amounted to a reasonable accommodation. *See* Pls.' Opp'n at 22. Plaintiffs offer no explanation for how they could have performed as police officers given the physical limitations they faced, *see* Compl. ¶ 58, in light of the statutory physical fitness requirements MPD officers must meet. *See* D.C. Code § 5-107.02a(a) (requiring all MPD officers "to pass, at least biennially, a physical examination"). The fact that they worked temporarily in limited-duty roles is of no moment, because the ADA "does not require that employers convert temporary 'light-duty' jobs into permanent ones." *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 697 (7th Cir. 1998); *see also Jones v. Univ. of the District of Columbia*, 505 F. Supp. 2d 78, 90 (D.D.C. 2007) (employer "not obligated to 'transform temporary work assignments into permanent positions'" (quoting *Malabarba*)). Even interpreted generously, plaintiffs' allegations simply do not leave room for the possibility that their jobs could have been restructured without running afoul of that requirement.

### IV. Mr. Pappas's Medical Inquiries Claims Are Insufficient.

In response to the District's argument that Mr. Pappas fails to allege medical inquiries that are not job-related, *see* Defs.' Mem. at 27, plaintiffs point to the definition of their proposed class, *see* Pls.' Opp'n at 22 (citing Comp. ¶ 61), and to generic legal conclusions asserted in their claims for relief, *see id.* (citing Compl. ¶¶ 102-03). But those are not the allegations they have raised about Mr. Pappas,

which are recited in paragraphs 21 through 29 of the Complaint. Only paragraphs 22 and 24 pertain to medical inquiries: Mr. Pappas alleges that after being diagnosed with congestive heart failure, he "reported to the Police and Fire Clinic for 'medical evaluation,'" was required "to provide detailed medical records of his diagnosis and treatment," and was required "[p]eriodically throughout his limited duty assignment … to provide the medical records of his treatment, including results of his echocardiograms and detailed letters from his treating physicians." Compl. ¶¶ 22, 24. He also alleges that MPD "communicated directly with his treating physicians." *Id.* ¶ 24. That is all.

As the District argued in its motion, plaintiffs allege only job-related medical inquiries concerning Mr. Pappas's "diagnosis and treatment" for the condition that led him to be placed on limited duty. *See* Defs.' Mem. at 26-29. At the very least, Mr. Pappas has failed to allege that the inquiries were not job-related—something that he bears the burden of pleading. *See Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 159 (D.D.C. 2014).[8] The fact that he seeks to represent a putative class of individuals claiming they were subject to non-job-related medical inquiries cannot make up for these pleading deficiencies. And again, plaintiffs cannot amend their Complaint through their opposition to include allegations as to Mr. Pappas that were not pled. *See Kingman Park*, 27 F. Supp. 3d at 160 n.7.

---

[8] Contrary to plaintiffs' argument, *Blackwell* cannot be distinguished on the grounds that the plaintiff there failed to plead medical inquiries that were not job-related. *See* Pls.' Opp'n at 23. As the District argued in its motion, that is precisely the case here. *See* Defs.' Mem. at 28.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's motion to dismiss, the Court should grant the District's motion and dismiss the Amended Complaint with prejudice.

Dated: March 20, 2020.   Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Micah Bluming*
MICAH BLUMING [1618961]
MICHAEL A. TILGHMAN II [988441]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-7272 (Phone)
(202) 730-1833 (Fax)
micah.bluming@dc.gov

*Counsel for Defendants*