IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVE PAPPAS, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.* <br><br> Defendants. | Civil Action No. 19-2800 (RC) |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

Plaintiffs Steve Pappas, Tawana Lindsay, Nichole Mathies, and Malachi Malik ("Plaintiffs"), on behalf of themselves and all other similarly situated, move this Court to compel Defendants District of Columbia ("DC" or "the district") and Robert Contee, III (together "Defendants"), to produce documents responsive to Plaintiffs' Requests for Production of Documents 15, 26, and 33-35 pursuant to Fed. R. Civ. P. 37.[1]

**I.      INTRODUCTION**

Plaintiffs served their First Set of Requests for Production of Documents, Exhibit A, on May 20, 2021, shortly after discovery commenced on April 5, 2021. ECF No. 33. Plaintiffs focused their written discovery on critical information, serving 28 requests for production on Defendants. Plaintiffs served a Second Set of Requests for Production of Documents on December 23, 2021. Exhibit B. With respect to both sets of requests, Defendants to date, have refused to produce all responsive documents in their possession.

---

[1] Plaintiffs complied with this Court's Case Management Plan by contacting chambers and informing the Court about the parties' ongoing discovery disputes. ECF No. 33.

Plaintiffs' efforts to resolve these long-standing discovery disputes with Defendants have been exhaustive. Within the past nine months, Plaintiffs' counsel initiated nearly ten meet-and-confer sessions with Defendants' counsel and have highlighted Defendants' continuous discovery deficiencies, and Plaintiffs' objections thereto, in a series of letters and emails. Yet Defendants continue to refuse to produce critical documents and information, relevant to Plaintiffs' duties to prosecute this case and certify a class. It is also apparent, from Defendants' failure to comply with the scheduling orders and the time stamps of their productions and responses, that they intend to drag out the written discovery process as long as they can.

Defendants' delays have already resulted in two extensions to the scheduling order resulting in Plaintiffs' class certification motion deadline being extended by nine months. Not only will Plaintiffs' counsel need time to review overdue written discovery, but Plaintiffs' experts must have sufficient time to review, consider, and incorporate Defendants' tardy productions by May 31, 2022. Exhibit C; ECF No. 44. With their class certification due now in about four months, Plaintiffs have decided they cannot prudently wait longer to bring their inability to obtain critical discovery from Defendants to the attention of the Court.

## II. BACKGROUND

### a. Relevant Factual Background

This case involves Defendants' unlawful conduct in violating Title I of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by failing to engage DC Metropolitan Police Department ("MPD") police officers in the mandated interactive process and forcibly retiring police officers who accumulate 172 days or more in less than full-duty status, due to a disability, over a two-year period, instead of offering those officers a reasonable accommodation. The Class Periods cover 2014 to the present and 2018 to the present, respectively.

The process by which Defendants forcibly retire police officers with disabilities is set forth in General Order 1001.1: "Medical Services" and Executive Order 17-020: "Member Rights and Responsibilities Concerning Disability Retirement and Americans with Disabilities Act Accommodations," Exhibits D and E. That process is straightforward. Once a police officer is injured, becomes ill, or acquires a disability, the police officer must notify and present themselves at the Police and Fire Clinic ("PFC"). Exhibit D at 5-7. The PFC's purpose is to provide occupational medical services to the Defendants' police officers, fire fighters, and a few other categories of public safety personnel. *Id*. at 2. Relatedly, MPD has a designated division, the Medical Services Division ("MSD"), that works closely and liaises with the PFC in coordinating police officers' medical appointments, duty status, and disability retirement. *Id*. at 26.

Once a police officer notifies the PFC of their injury, illness, or disability, the PFC, among other things, determines whether the police officer will work in full-duty status, limited-duty status, or be placed on leave. Exhibit F at 46. Both the PFC and MSD monitor the time a disabled officer has been in limited duty or on leave. *Id*. at 47-48, 51. Approximately halfway through the 172-day allotment for working in less than full-duty status, as mandated by MPD policy, MSD issues police officers "86-day letters" notifying them that if they are unable to resume full-duty status by the 172-day deadline, they will be referred to the Police and Firefighter Retirement Board ("Retirement Board") for disability retirement. *Id*. at 89. Around the 120-day mark, the PFC schedules officers for an Initial Disability Evaluation ("IDE") and Labor Market Survey ("LMS"). *Id*. at 91-93, 96. Once an officer has reached 172 days in less than full-duty status, the MSD Director reviews the PFC's recommendation based on the IDE and refers the officer to the Retirement Board for disability retirement. *Id*. at 108-112.

Plaintiffs maintain that federal disability rights laws require Defendants to engage in an interactive process with police officers with disabilities who are being recommended for disability retirement, and to identify and implement reasonable accommodations that would allow the officers to return to full duty status or that would reassign them to other vacant jobs within the DC Government for which they are qualified. Plaintiffs maintain that such interactive processes did not occur, as a matter of policy or practice, and that reassignment was not available to Plaintiffs and the Class members, as a matter of policy or practice.

### b. Discovery Dispute Timeline

Over a year ago, on April 4, 2021, this Court entered a scheduling order wherein class discovery commenced immediately. ECF No. 33. Plaintiffs served discovery requests on Defendants on May 20, 2021, to ensure sufficient time for counsel and experts to review all data, documents, and information produced by Defendants. Exhibit A. Pursuant to Fed. R. Civ. P. 33, 34, Defendants' responses were due on June 19, 2021, but the parties agreed to an extension to July 3, 2021.

On July 2, 2021, the day before the July 3 deadline, Defendants sent written objections to Plaintiffs' First Set of Requests for Production of Documents but produced no documents. Defense counsel stated that they were "still working with [their] client to gather and review responsive documents…." Exhibit G. On July 14, 2021, Plaintiffs sent Defendants a discovery deficiency letter outlining how Defendants' delays were prejudicing Plaintiffs' ability to advance the litigation in a timely manner. Exhibit H. About a month later, on July 30, 2021, Defendants finally sent their first production of documents. Exhibit I.

Plaintiffs' counsel efficiently reviewed the Defendants' first production, which consisted of just 79 documents, responsive to only a handful of Plaintiffs' First Set of Requests for

Production. On August 2, 2021, the parties met and conferred to discuss the contents of the first production and the timeline for when outstanding documents would be produced. Counsel for Defendants stated the District was working on reasonable searches and collecting responsive documents for the vast majority of the requests and advised a second production would be forthcoming in two weeks. On August 12, 2021, Defendants produced a second set of responsive documents to Plaintiffs' First Set of Requests for Production, which consisted of 43 documents. Exhibit J. Plaintiffs' counsel scheduled a meet and confer with defense counsel, which occurred on August 17, 2021, at which time Defendants confirmed they had not produced all documents.

On August 19, Defendants sent their third production, which included over 10,000 daily duty reports in response to RFP No. 7, which had requested a Microsoft Excel or comma separated value file showing the number of days in less than full-duty status each police officer referred to the Retirement Board had accumulated during the Class Period. Exhibit K. Originally, class discovery was due to close on September 30, 2021, ECF No. 33, however less than six weeks prior to the class discovery deadline, Defendants produced over 10,000 documents, when their initial deadline was June 19, 2021.

During the Rule 30(b)(6) deposition of Olusola Malomo, the PFC Medical Director, taken November 17, 2021, as well as the deposition of Matthew Miranda, which was conducted on February 15, 2022, Plaintiffs learned that the PFC maintains a database, that MSD has access to and regularly uses, that can create reports and datasets using various fields, including fields contained in the daily duty reports. Exhibit F at 152-153, 170; Exhibit L at 39, 130-133. MSD and PFC also scan relevant documentation concerning all officers who are referred to the Retirement Board into Centricity. Exhibit F at 120-121. It thus appears that Defendants had more efficient methods of producing the requested information to Plaintiffs, but instead decided to stall their

discovery responses and use the most unproductive option available so close to the deadline. This is just one example of the wasteful tactics Defendants have employed throughout the course of class discovery.

On August 20, 2021, the parties provided this Court with an update on class discovery challenges and the need for an extension of the class discovery schedule. The parties continued to work through several discovery disputes and updated this Court on September 20, 2021 during a status conference, and the Court extended the class discovery schedule by four months. ECF 41; Exhibit M. The Court also imposed a deadline of October 29, 2021, over Defendants' objection, for their production of documents responsive to Plaintiffs' First Set of Requests for Production of Documents. *Id*. Defendants failed to comply with this Court's order and have failed to produce all documents responsive to Plaintiffs' requests as of the date of this motion.

The class discovery deadline was extended two additional times after the September 20, 2021 order, once on December 13, 2021 (moving the close of class discovery deadline to March 31, 2022), ECF No. 43; Exhibit N, and again on March 24, 2022 (moving the close of class discovery deadline to May 31, 2022). ECF No. 44; Exhibit C. On December 23, 2021, Plaintiffs served a Second Set of Requests for Production of Documents on Defendants. Exhibit B. Between July 2021 and February 2022, the parties met and conferred nearly ten times about Defendants' discovery deficiencies. Plaintiffs conferred in good faith with Defendants in an effort to prevent bringing these issues to the Court. However, Defendants have failed to produce all documents responsive to Plaintiffs' requests.

On March 8, 2022, Defendants informed Plaintiffs that they would not produce any additional responsive documents to RFP Nos. 15, 26, 32, 33, 34, 35(d), 35(g), and 37. Exhibit O.

### c. Plaintiffs' Relevant Requests for Documents

The relevant documents Plaintiffs seek to compel concern the following Requests for Production of Documents:

- **RFP No. 15**: All Documents Concerning MPD police officers who sustained an injury, illness, or disability, were placed on leave and/or Limited Duty Status, and subsequently were referred to Disability Retirement due to that injury, illness, or disability.

    o After receiving some documents responsive to this request, Plaintiffs narrowed the outstanding documents to: (1) the 86-day letters; (2) MPD recommendations to the Retirement Board regarding disability retirement; (3) Letters scheduling an Initial Disability Evaluation; and (4) Relevant forms, such as PD Form 42s, PD form 305s, and PD Forms 77. Exhibit P, p. 23-24.

- **RFP No. 26:** All Communications between MPD and the PFC Concerning MPD police officers who were referred to the Retirement Board for Disability Retirement.

- **RFP No. 33:** Labor Market Survey reports for each MPD officer referred to the Retirement Board during the Class Period.

- **RFP No. 34:** Physical Demand Codes for each MPD officer referred to the Retirement Board during the Class Period.

- **RFP No. 35**: For the individuals Defendants identified as having been reassigned or transferred due to a disability, the following information:

    o (d) the total sum of salary and overtime pay received for each year they served as MPD officers;

    o (g) the salary and overtime pay for each year they served in the new position to which the officer was transferred or reassigned.

Defendants also failed to produce all documents responsive to RFP Nos. 32 and 37, however the Parties are engaged in continuous negotiations regarding these requests. Plaintiffs are currently evaluating Defendants' April 21, 2022 proffered stipulations. However, if the Parties are unable to reach agreement on the proposed stipulations, Plaintiffs may move to compel documents responsive to the following requests:

7

- **RFP No. 32:** A Microsoft Excel or comma separated value (CSV) file, generated from data maintained by MPD or DC, with the following information for each MPD officer referred to the Retirement Board during the Class Period:

    a) Base pay (for each year the individual worked for MPD);

    b) Actual compensation (for each year the officer worked for MPD), broken down by salary, overtime payments, and other compensation (if any) received;

    c) Final disability annuity as determined by the DC Retirement Board; and

    d) The total sum of disability annuity payments paid each year since retirement.

- **RFP No. 37:** All documents Concerning income earned after Disability Retirement by former MPD officers who were referred to the Retirement Board during the Class Period.

### d. Defendants Have Refused to Produce all Responsive Documents.

Regarding RFP Nos. 15 and 26, Defendants raised unpersuasive boilerplate objections to these requests as "overly broad and unduly burdensome," "vague and ambiguous," and "not time-limited." *See* Exhibit Q. Defendants further state that the requests are "overly broad and unduly burdensome" because "[they] seek[] 'all' documents when many documents are likely to have the exact same information," and "it would require the District to search for responsive documents over a significantly longer period of time than is relevant to plaintiffs' claims." *Id*. at 15, 21. Additionally, Defendants state that the documents requested in RFP No. 26, all communications between MPD and the PFC concerning MPD officers referred to the Retirement Board, are not within their custody or control. *Id*. at 21.

In their March 8, 2022 letter, Defendants further outlined their baseless objections to Plaintiffs' RFP No. 15, as well as RFP Nos. 33-34, which include requests for documents also contained in retirement board files. Exhibit O. To produce documents from class members' retirement board files, Defendants state that they would have to "comb the documents associated with officers' referral to the Retirement Board in an attempt to identify particular documents." *Id*. at 3.

8

Defendants, again, in reference to RFP Nos. 33-34, 35, raise objections that these requests are "not relevant to plaintiffs' motion for class certification, unduly burdensome, not proportional to the needs of the case, and cumulative of prior requests." Exhibit R at 8-12. These objections are baseless, and the Court should compel Defendants to produce all documents responsive to Plaintiffs' outstanding requests for production of documents.

> **e. Plaintiffs Have, Through Reasonable Means and Gestures, Attempted to Assist Defendants in Producing the Requested Data and Documents.**

Plaintiffs have been diligent about obtaining the necessary discovery to effectively prosecute this case. In 2021, Plaintiffs' counsel initiated five meet and confer sessions with Defense counsel—on July 23, August 2, August 10, August 17, and October 8. In 2022, Plaintiffs' counsel initiated four meet and confer sessions with Defense counsel—on January 7, February 1, February 3, and February 14. Additionally, Plaintiffs submitted seven discovery deficiency and meet-and-confer follow-up letters to Defendants outlining the issues emphasized in this motion. Exhibit P.

In the course of these efforts, Plaintiffs narrowed several of their requests for documents and accepted Defendants' slow progress in providing rolling productions of documents, the last of which was received on April 6, 2022. Furthermore, on March 3, 2022, Plaintiffs proposed draft fact stipulations to obviate the need for production of documents responsive to RFP Nos. 32, 37.

**III.   ARGUMENT**

> **a. Plaintiffs are Entitled to Discovery Regarding all Information Reasonably Calculated to Lead to the Discovery of Evidence Relevant to the Claims and Defenses Involved in this Action.**

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1210 (D.C. Cir. 2020). Defendants have refused to

9

produce documents responsive to five of Plaintiffs' Requests for Production of Documents and so Plaintiffs move to compel production of the withheld material. Fed. R. Civ. P. 37(a). Although Defendants have produced *some* responsive documents related to RFP No. 15, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id*.

Relevancy encompasses materials "reasonably calculated to lead to the discovery of admissible evidence." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). The Court has bifurcated the case into two phases and as such, there are two phases of discovery—class discovery and merits discovery. Plaintiffs have narrowly structured their discovery requests in order to obtain documents, data, and information, relevant to establishing the class should be certified. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (acknowledging "[a] class action is 'an exception to the usual rules that litigation is conducted by and on behalf of the individual named parties only.'") (citation omitted). To that end, Plaintiffs requested responsive documents to demonstrate they can meet class certification requirements, including numerosity, commonality, typicality, and predominance. *See id*. at 350.

If the requested discovery is found to be relevant, a Court must then consider whether Rule 26's proportionality prong is met. Fed. R. Civ. P. 26(b)(1); *Oxbow Carbon & Minerals LLC v. Union Pac. R.R.*, 322 F.R.D. 1, 6 (D.D.C. 2017). To do so, courts generally consider whether the discovery sought (1) is "unreasonably cumulative or duplicative;" (2) "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" and (3) is "proportional to the needs of the case," considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II.)*, 2021 U.S. Dist. LEXIS 90200, at *42-43 (citations omitted).

### b. Plaintiffs' Discovery Requests are Relevant to Class Certification

The standard of relevancy in the discovery context is a liberal one. *Tequila Centinela, S.A. de C.V. v. Bacardi & Co*, 242 F.R.D. 1, 6 (D.D.C. 2007). All of Plaintiffs' requests reflect a likelihood that useful evidence might be uncovered that is relevant to the subject matter of this case. *United States ex rel. El-Amin v. George Wash. Univ.*, 2001 U.S. Dist. LEXIS 23438, at *4 (D.D.C. July 13, 2001) (emphasizing that responses to discovery requests that are "clearly defined, limited in subject matter, and by its terms, focused on the time period relevant to this case" may be compelled).

Defendants agree that this case is bifurcated and as such the relevant subject matter during this phase of the litigation concerns Plaintiffs' allegations in the Second Amended Complaint regarding:

(i) the Defendants' Forced Retirement Policy or practice that forces officers into disability retirement without an interactive process or provision of reasonable accommodations;

(ii) the Defendants' Reasonable Accommodation Policy or practice that excludes certain accommodations from consideration;

(iii) that all Class members were comparably injured by Defendants' uniform and discriminatory application of their Forced Retirement Policy and application of their Reasonable Accommodation Policy; and

(iv) that common issues … predominate … because proof of Defendants' common systemic policy of civil rights violations will provide the common proof to establish liability against Defendants.

ECF No 28.

It is evident that the documents Plaintiffs requested are relevant. All documents concerning putative class members, primarily the 86-day letters, referrals to the Retirement Board, letters

scheduling IDEs, LMSs, Physical Demand Codes, and communications between MPD and the PFC Clinic, as outlined in RFP Nos. 15, 26, and 33-34, are relevant to the subject matter of this litigation. Plaintiffs have specified the exact documents concerning all putative class members they wish to review and inspect for the purpose of moving for class certification. These documents are central to Plaintiffs' claims that Defendants operate under a uniform policy or practice that forces disability retirement and denies certain accommodations, and that all Class members were comparably injured through Defendants' uniform and discriminatory application of such a policy or practice.

One key element Plaintiffs must satisfy to certify the Class is that "questions of law or fact common to class members predominate over questions affecting only individual members." *Hardy v. D.C.*, 283 F.R.D. 20, 27 (D.D.C. 2012 Aug. 22, 2012). And one aspect of establishing predominance is demonstrating that the calculation of damages is subject to a common methodology. *Hoyte v. D.C.*, 325 F.R.D. 485, 494-95 (D.D.C. 2017). Should the "[Defendants'] own records reflect the monetary amount that each [Class member] lost," the calculation of damages in this case would be primarily "a mechanical task." *Hardy*, 283 F.R.D. at 28. As such, Plaintiffs' reasonable requests for Class members' income data (RFP Nos. 32 and 37), which the parties may stipulate to, as well as income data concerning officers who the District says were transferred or reassigned because of disability (RFP No. 35(d) and (g)) are relevant. The information is necessary to demonstrate a common methodology for calculating class-wide damages and mitigation.

    c. **Plaintiffs' Outstanding Requests are Not Unreasonably Cumulative or Duplicative.**

Where some documents may be responsive to more than one discovery request, if the requests are directed towards distinctive categories of documents, they are not considered

cumulative. *Martin v. Potomac Elec. Power Co.*, 1990 U.S. Dist. LEXIS 11688, at *19 (D.D.C. May 25, 1990). None of Plaintiffs' requests are cumulative or duplicative. For example, in RFP No. 35(d) and (g), Plaintiffs requested documents concerning the total sum of income that officers who the District says were transferred or reassigned due to disability earned each year they served as MPD officers, and the salary and overtime pay for each year in the new position to which the officer was transferred or reassigned. Defendants inaccurately contend that the previously produced documents in response to RFP No. 7, which requested income data concerning officers who were referred to the retirement board, are responsive to this request. Exhibit R at 12. The request is not cumulative because it asks for salary data for a group of officers that Defendants identified as having been transferred or reassigned. Plaintiffs had not previously requested this category of salary data.

RFP Nos. 33-34 specifically request the Labor Market Surveys and Physical Demand Codes for each Class member. While RFP No. 15 requests "[a]ll Documents Concerning MPD police officers who sustained an injury, illness, or disability, were placed on leave and/or limited Duty Status, and subsequently were referred to Disability Retirement due to that injury, illness, or disability," Plaintiffs propounded RFP Nos. 33-34 in an effort to prioritize obtaining particular documents. Defendants had not, and still have not, produced all documents in response to RFP No. 15 when Plaintiffs served their Second Set of Requests for Production of Documents.

### d. All of Plaintiffs' Outstanding Requests can be Obtained from Defendants.

Defendants incorrectly assert that RFP No. 26 requests documents not within their control. Exhibit Q at 21. Plaintiffs' reasonable request for all communications between MPD and PFC, concerning MPD officers who were referred to the Retirement Board, are within the possession, custody, or control of Defendants. Exhibit F at 29-32. First, obviously, MPD was, by definition, a

party to these communications and has access to those communications it received. In addition, PFC is a contractor for MPD, and Plaintiffs can think of no basis in which PFC could withhold from MPD its records of communications it received from MPD. *Id*. at 29-30. Finally, Matthew Miranda, who currently serves as the Director of the Medical Services Division, testified that employees from both PFC and MPD use Centricity to upload, log, store, and review MPD officer data relate to their disabilities, duty status, and retirement. *Id*. at 120, 152-53. Therefore, the Court should compel Defendants to produce all communications between these two entities concerning officers who were referred to the Retirement Board for disability retirement.

### e. The Likely Benefit of the Requested Discovery Largely Outweighs the Burden of Producing It.

Defendants have not elaborated on the specific reasons why searching for and producing these documents is impossible, costly, or unduly burdensome. Aside from Defendants' boilerplate objections, they contend that Plaintiffs' outstanding requests, "even assuming [they] are limited to what Plaintiffs define as the relevant period, [] would still impose an undue burden on the District because it would require the District to search for responsive documents over a significant longer period of time than is relevant to plaintiffs' claims." Exhibits Q, R. This is not true. Plaintiffs have informed Defendants during several meet and confer sessions and in discovery dispute correspondence, that for RFP No. 15, Plaintiffs only seek class members' 86-day letters, referrals to the Retirement Board, correspondence scheduling IDEs, IDEs, and various MPD forms. Exhibit P at 23-24.

Collecting and producing these documents, as well as the communications between MPD and the PFC (RFP No. 26) would not be unduly burdensome for two reasons. First, the documents requested in RFP Nos. 15 and 33-34 are centrally located in the Centricity database. Defendants have access to and use Centricity daily. The database is searchable and can run reports. Defendants

can easily search each Class members' name, locate the documents requested from the Centricity database, and produce them to Plaintiffs. Even if producing those documents was more burdensome than the process just outlined, Plaintiffs have informed Defendants that they are amenable to Defendants producing the entire retirement board file for each Class member. Similarly, Defendants have access to all communications *between* the PFC and MPD, which are likely stored electronically in a searchable format, just like other MPD communications Defendants previously produced

Defendants raise similar objections to RFP No. 35. However, MPD officer data, including data concerning income during MPD officers' tenures, as well as after officers are reassigned or transferred to other departments within MPD or the DC Government, is centrally stored in a computerized database within Defendants' custody and control, Exhibit S at 60, 70-71.[2] As previously discussed, the requested discovery requests are directly relevant to the subject matter of class certification requirements, which Plaintiffs must be sufficiently prepared to demonstrate on September 1, 2022. The benefit of this discovery substantially outweighs the theoretical burden of producing it.

**IV.     THE COURT SHOULD IMPOSE SANCTIONS ON DEFENDANTS**

Plaintiffs respectfully request that this Court compel Defendants to produce documents responsive to Plaintiffs Requests for Production of Documents 15, 26, 33-34, and 35. The documents, data, and information these requests concern are central to Plaintiffs' class claims and relevant for class certification. Plaintiffs have, for the past nine months, conferred in good faith with Defendants on numerous occasions, compromising on the scope of and narrowing their requests in an effort to receive critical documents and information efficiently. Those efforts have

---

[2] Deposition Transcript of Angela Simpson, MPD HR Director.

been exhausted and now Plaintiffs ask the Court not only to compel Defendants' production of these documents, but to also impose sanctions.

This Court has "broad discretion to impose sanctions for discovery violations, and to determine what sanctions to impose" when a party fails to disclose information or comply with a Court order. *Davis v. D.C. Child & Family Servs. Agency*, 304 F.R.D. 51, 60 (D.D.C. 2014); *Tequila Centinela*, 248 F.R.D. at 68 (citations omitted). Rule 37 provides:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A).

Should the Court grant Plaintiffs' motion, Plaintiffs request that Defendants be ordered to pay reasonable expenses and attorneys' fees incurred in the course of making this Motion. Should the Court grant in part and deny in part this motion, Plaintiffs request that the Court "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

## V.   CONCLUSION

For the reasons stated herein, Plaintiffs move this Court to compel Defendants to produce documents responsive to Plaintiffs' Requests for Production of Documents 15, 26, and 33-35.

Dated: April 25, 2022                    Respectfully submitted,

/s/ Desireé Langley
Ellen Eardley (DC Bar No. 488741)
Cyrus Mehri (DC Bar No. 420970)
Desireé Langley (DC Bar No. 1719961)
**MEHRI & SKALET, PLLC**
2000 K Street, NW, Suite 325
Washington, DC 20006
Tel.: (202) 822-5100
Fax: (202) 822-4997
eeardley@findjustice.com

cmehri@findjustice.com
dlangley@findjustice.com

Eve Hill (Fed. Bar No. 424896)
Andrew D. Levy (Fed. Bar No. 458998)
James Strawbridge (Fed. Bar No. 20005)
**BROWN, GOLDSTEIN & LEVY, LLP**
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel.: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold,com
adl@browngold.com
jstrawbridge@browngold.com

*Counsel for Plaintiffs and Putative Class*

## **CERTIFICATION OF GOOD FAITH**

    I, Desireé Langley, hereby certify that I have conferred with the opposing party in good faith to obtain the requested discovery without court intervention. I attest that all statements herein are truthful and all correspondence on behalf of Plaintiffs, attached as Exhibit P, are fair and accurate representations of Plaintiffs' communications with Defendants in efforts to obtain withheld discovery.

/s/_____
Desireé Langley

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2022, I electronically filed the foregoing Plaintiffs' Motion to Compel with the Clerk of the Court using the CM/ECF system. Notification of this filing will be sent to all registered parties via CM/ECF.

/s/_____
Desireé Langley