# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVE PAPPAS, *et al.*, <br><br> Individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE DISTRICT OF COLUMBIA, and ROBERT CONTEE III, in his official capacity, <br><br> Defendants. | Civil Action No. 19-2800 (RC) |

## PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Plaintiffs, by and through their undersigned attorneys and pursuant to Fed. R. Civ. P. 34, propound the following Second Set of Requests for Production of Documents to the District of Columbia and Robert Contee III, in his official capacity as Chief of Police of the Metropolitan Police Department of the District of Columbia (collectively, "Defendants"). Defendants shall respond to these Requests and produce the requested documents and electronically stored information ("ESI") for inspection and copying within the time allotted by the Federal Rules, to Plaintiffs' attorneys at: Brown, Goldstein, & Levy, 120 East Baltimore Street Suite 2500, Baltimore, MD, 21202, and Mehri & Skalet, PLLC, 1250 Connecticut Ave. NW, Washington, DC, 20036.

# DEFINITIONS

1. "Accommodations":  The term "Accommodations" has the same meaning as used in Title I of the Americans with Disabilities Act ("ADA").

2. "Actual compensation":  The term "Actual Compensation" means the amount of money an employee of the District of Columbia received from the District of Columbia in a given year; it accounts for both the salary of that individual but also other payments received but not reflected in the salary, such as overtime pay.

3. "ADA Coordinator":  The term "ADA Coordinator" means an individual primarily responsible for ensuring MPD's compliance with the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and/or the D.C. Human Rights Act, and/or an individual primarily responsible for responding to disability discrimination complaints Concerning MPD officers and/or requests for Accommodations by MPD officers.

4. "Annual Earned Income Report":  The term "Annual Earned Income Report" has the same meaning as when used in the document labeled DC_Pappas 00087893.

5. "Average Base Pay":  The term "Average Base Pay" has the same meaning as used in the District of Columbia Police Officers and Firefighters' Retirement Plan—Summary Plan Description 2017 (DC_Pappas 00004612).

6. "Base Pay":  The term "Base Pay" has the same meaning as used in the District of Columbia Police Officers and Firefighters' Retirement Plan—Summary Plan Description 2017 (DC_Pappas 00004612).

7. "Communication":  The term "Communication" means the transmittal of information by any means.

8. "Concerning":  The term "Concerning" means relating to, referring to, consisting of, describing, discussing, confirming, memorializing, evidencing, commenting on, constituting, reflecting, responding to, mentioning, pertaining to, summarizing, showing, analyzing, authored by, sent to, received from, or otherwise in any way logically or factually connected with the topic of subject described.

9. "Disability Retirement":  The term "Disability Retirement" has the same meaning as used in MPD General Order 100.11.

10. "Document":  The terms "Document" and "Documents" are defined to be synonymous in meaning and equal in scope to the term "items" in Fed. R. Civ. P. 34(a)(1) and include(s), but is not limited to, electronically stored information ("ESI").  The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001.  A draft or non-identical copy is a separate document within the meaning of the term "Document."

11. "Employee File":  The term "Employee File" means all Documents Concerning an MPD employee that are kept in the usual course of business, either by MPD, DC Government,

the Police & Fire Clinic / PFC Associates, LLC, the Retirement Board, or some or all of those entities.  Such Documents include personnel Documents, human resource Documents, Documents concerning that employee's work history and assignments, medical evaluations, Documents Concerning that employee's physical or mental health, performance evaluations, Documents Concerning disciplinary actions, compensation-related documents, Documents Concerning that employee's requests for Accommodation(s), Documents Concerning Reassignment of that employee, Documents Concerning leave time, and Documents Concerning retirement proceedings.

12. "Final Salary":  The term "Final Salary" has the same meaning as used in the District of Columbia Police Officers and Firefighters' Retirement Plan—Summary Plan Description 2017 (DC_Pappas 00004612).

13. "Full Duty Status":  The term "Full Duty Status" has the same meaning as used in MPD General Order 100.11.

14. "Job Analyses": The term "Job Analyses" means descriptions of: the expected work behavior(s), associated tasks, and, if the behavior results in a work product, work products of a job or position; measures of criticality and/or importance of those work behavior(s) and the method of determining these measures; operational definitions of the KSAs used in those work behavior(s) and the relationship between each KSA and each work behavior; and the work situation in which those work behavior(s) are performed.  A description of the method used to analyze the job should also be provided.

15. "Job Evaluation": The term "Job Evaluation" means the systematic process for comparing one job against other jobs within MPD to determine the relative worth or size of jobs or roles within MPD to establish an equitable pay rate or pay grade structure.

16. "Job Restructuring":  The term "Job Restructuring" and variations thereof has the same meaning as used in 42 U.S.C. § 12111(9)(B).

17. "KSA": The term "KSA" means knowledge, skills, and abilities.

18. "Labor Market Survey":  The term "Labor Market Survey" means the surveys requested by the Police and Firefighters' Retirement and Relief Board to identify employment opportunities.  An example is available at DC_Pappas 3138-3144.

19. "Less Than Full Duty Status":  The term "Less Than Full Duty Status" has the same meaning as used in MPD General Order 100.11.

20. "Limited Duty Status"  The term "Limited Duty Status" has the same meaning as used in MPD General Order 100.11.

21. "Maximum Medical Improvement":  The term "Maximum Medical Improvement" has the same meaning as used in MPD General Order 100.11.

22. "MPD":  The term "MPD" means the Metropolitan Police Department of the District of Columbia.  The term "MPD officer" means an MPD police officer.

23. "Parties":  The terms "plaintiff(s)," "defendant(s)," "party," or "parties" refer to named parties in the foregoing litigation and, where applicable, their officers, directors, and employees.  This definition is not intended to impose a discovery obligation on any Person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

24. "Performance Appraisal Forms": The term "Performance Appraisal Forms" means documents setting out: the tasks and standards by which an MPD Police Officer will be evaluated; the tasks, standards, description of performance, and ratings from their supervisor(s); and Police Officers' self-evaluation of their performance.  The term includes any open ended, free text, written, or typed comments made on the forms, regardless of whether the forms are paper or electronic.

25. "Performance of Duty ("POD") Injury/Illness":  The term "Performance of Duty Injury/Illness," or "POD Injury/Illness," has the same meaning as used in MPD General Order 100.11.

26. "Person":  The term "Person" means any natural person or any corporation, business, partnership, association, or other legal or governmental entity.

27. "Physical Demand Codes":  The term "Physical Demand Codes" has the same meaning as when used in LMS reports and/or Retirement Board decisions.

28. "Reassignment to a Vacant Position":  The term "Reassignment to a Vacant Position" (or "Reassigned") and variations thereof has the same meaning as used in 42 U.S.C. § 12111(9)(B).

29. "Request":  The term "Request" means a Request for Production of Documents.

30. "Restructure":  The term "Restructure" has the same meaning as used in Title I of the Americans with Disabilities Act.

31. "Retirement Board":  The term "Retirement Board" means the Police and Firefighters Retirement Relief Board.

32. "You/Your":  The terms "You" and "Your" mean the Parties to whom this Notice is addressed as well as their agents, servants, officers, directors, members, consultants, employees, attorneys, and any other representatives and any partnership, corporation, joint venture or other entity formed by, controlled by, or otherwise affiliated with the Parties to whom this Notice is addressed.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation or to limit the Court's jurisdiction to enter any appropriate order.

33. "And" shall be construed to mean "or" and the term "or" shall be construed to mean "and" when necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

34. "Each" shall be construed to mean "all" and the term "all" shall be construed to mean "each" when necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

35. The use of the singular shall include the plural and the use of the plural shall include the singular when necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. Words in the masculine, feminine, or neuter form shall include each of the other genders.

## GENERAL INSTRUCTIONS

1. Produce all requested Documents that are in Defendants' possession, custody, or control, or otherwise are reasonably available to Defendants.

2. Documents should be produced as they are kept in the usual course of business or, alternatively, should be organized and labeled to correspond to the specific Request pursuant to which they are produced. If Documents are produced as they are kept in the usual course of business, Identify the Person in whose files each Document was located. Electronically stored information shall be produced as paginated PDFs files using a standard load file that includes ESI with the information produced as the file was maintained in the usual course of business. If the file is a PowerPoint or Excel file, the native file shall also be included in the load file with all accompanying metadata. If the Document is only available in hard copy, each Document should be scanned as separate, paginated PDF and the custodian of the Document should be included. Each Document, whether electronic or in hard copy, should be marked with a Bates number.

3. To the extent a Request or Definition is deemed ambiguous, the Response shall set forth the matter deemed ambiguous, and the construction used in responding to the Request.

4. If, after a proper search, it is determined that no responsive Documents exist, the Response shall state that no responsive Documents exist.

5. Each Request should be responded to separately. However, a Document that is responsive to more than one Request may be produced once and then referred to in a later Response.

6. All Documents produced in response to these Requests shall be produced in whole, even if portions of such Documents contain non-responsive information.

7. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, state as to each Document the reason for the redaction, the date of the redaction, and the person performing the redaction.

8. For each Request, the Response must either state that production or inspection will be permitted as requested or state an objection to the Request. The grounds for each

objection shall be stated with specificity, and each objection shall state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a Request that results in responsive materials being withheld must specify the part and permit production/inspection with respect to non-objectionable parts of the Request.

9. Any Document requested that You claim to be privileged (including, but not limited to, Documents subject to the work-product doctrine) shall be identified by stating:

    a. The grounds for refusal to produce the Document;

    b. The type of Document (letter, memorandum, report, notes, etc.);

    c. The general subject matter of the Document;

    d. The date of the Document;

    e. Each author of the Document;

    f. Each addressee or recipient of the Document;

    g. The custodian of the Document;

    h. The present location of the Document, including the title, index number, and/or location, if any, of the file wherein the Document resides; and

    i. The relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be privileged, enables Plaintiffs to assess the applicability of the asserted privilege.

10. If You are withholding a responsive Document for any reason other than an objection that it is beyond the scope of discovery or that a Request is unduly burdensome, state the reason for withholding the Document and provide the same information outlined in Instruction No. 9 regarding privileged Documents.

11. If production of any Document is objected to on the grounds that production is unduly burdensome, state the burden or expense of the proposed discovery.

12. If any Documents requested herein have been lost, discarded, or destroyed, the Documents so lost, discarded, or destroyed shall be identified as completely as possible, including, without limitation, the following information:  date of disposal, manner of disposal, reason for disposal, and person authorizing the disposal.

13. Each Request is continuing in nature, and if Defendants identify or obtain further responsive information, they are required to supplement or amend their answers promptly if necessary, under Federal Rule of Civil Procedure 26, and to promptly produce any additional Documents.

14. Unless otherwise indicated, the relevant time period for each Document Request shall be January 1, 2012 through the Present and continuing, and shall include all Documents created, prepared, dated, sent, received, altered, in effect, or which came into existence during this period, or which refer or relate to this period, regardless of when the Document was created or prepared.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**DOCUMENT REQUEST NO. 29:**

Retirement and/or pension plans for District employees other than police officers and firefighters, including such plans for MPD civilian employees.

**DOCUMENT REQUEST NO. 30:**

DC Government salaries for District employees, including MPD civilian employees.

**DOCUMENT REQUEST NO. 31:**

Documents sufficient to show the minimum qualifications, requirements, and/or skills that all MPD police officers must possess to serve as an MPD police officer.

**DOCUMENT REQUEST NO. 32**

A Microsoft Excel or comma separated value (CSV) file, generated from data maintained by MPD or DC, with the following information for each MPD officer listed in the document titled "Updated Ex. A._Def.'s Third Supp. ROG Response. xlsx" or the document titled "Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx":

a) Base pay (for each year the individual worked for MPD);

b) Actual compensation (for each year the officer worked for MPD), broken down by salary, overtime payments, and other compensation (if any) received;

c) Final disability annuity as determined by the DC Retirement Board; and

d) The total sum of disability annuity payments paid each year since retirement.

**DOCUMENT REQUEST NO. 33:**

Labor Market Survey reports for each MPD officer listed in the document titled "Updated Ex. A._Def.'s Third Supp. ROG Response. Xlsx" or the document titled "Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx.

**DOCUMENT REQUEST NO. 34**

For each MPD officer listed in the document titled "Updated Ex. A._Def.'s Third Supp. ROG Response. xlsx" or the document titled "Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx, that officer's Physical Demand Codes.

**DOCUMENT REQUEST NO. 35:**

For the individuals identified by the District in its response to Interrogatory No. 12 as having been reassigned or transferred due to a disability, a Microsoft Excel or comma separated value (CSV) file, generated from data maintained by MPD or DC, with the following information:

a) Date of birth;
b) Start date as an MPD officer;
c) Bureau, division, branch, unit, district, and/or section, as well as job title/position, at their time of hire as an MPD officer;
d) The total sum of salary and overtime pay received for each year they served as MPD officers;
e) The injury, illness, or disability that was a substantial basis for the determination to reassign or transfer the officer because of a disability;
f) The bureau, division, branch, unit, district, and/or section, as well as job title/position, to which the individual was transferred or reassigned, as well as whether or not the individual was a sworn officer in their new title/position;

g) The salary and overtime pay for each year they served in the new position to which the officer was transferred or reassigned;

h) Why the individual was reassigned or transferred rather than being referred to the Retirement Board for disability retirement;

i) Whether the officer had requested to continue working at MPD or in the DC Government before or after the determination was made that he/she would be reassigned or transferred because of a disability;

j) All Accommodation requests made by that officer, and whether they were granted; and

k) The bureau, division, branch, unit, district, and/or section, as well as job title/position, for each year since the time of their reassignment or transfer, for each year for as long as they were employed by the DC Government.

**DOCUMENT REQUEST NO. 36**

Documents sufficient to show the organizational structure of MPD during the Class Period, such as charts showing the various components of MPD and chains of command.

**DOCUMENT REQUEST NO. 37**

All Documents Concerning income earned after Disability Retirement by former MPD officers listed in "Updated Ex. A._Def.'s Third Supp. ROG Response. xlsx," including Annual Earned Income Reports or other documents concerning annual income submitted by former MPD officers to the D.C. Retirement Board ("DCRB").

**DOCUMENT REQUEST NO. 38**

Documents sufficient to show:

a) The duties and responsibilities of the Police and Firefighters Retirement Relief Board, including the matters (if any) over which it makes final determinations versus recommendations to be approved by another part of the DC Government;

b) The extent to which MPD controls or influences the timing of hearings before the Police and Firefighters Retirement Relief Board and/or the contents of decisions and orders issued by the Police and Firefighters Retirement Relief Board;

c) Whether the Police and Firefighters Retirement Relief Board is independent from, or a part of, the DC Government.

**DOCUMENT REQUEST NO. 39**

All Documents Concerning Accommodation requests by former MPD officers Dominic Ihejirkia, Marcus Smith, Virginia Dineen, and Richard Duranne.

**DOCUMENT REQUEST 40**

All Documents Concerning the matters listed in Exhibit C to Defendants' First Responses and Objections to Plaintiffs' First Set of Interrogatories.

**DOCUMENT REQUEST 41**

Monthly reports from the Police and Fire Clinic to MPD Concerning disability retirement referrals pending before the Retirement Board.

**DOCUMENT REQUEST NO. 42**

All Documents Concerning Job Analyses performed for any MPD Police Officer position during the Class Period.

**DOCUMENT REQUEST NO. 43**

All Documents Concerning Job Analyses performed for all open and vacant jobs within MPD and the DC Government in which MPD Police Officers could have performed.

**DOCUMENT REQUEST NO. 44**

All Documents Concerning the KSAs necessary or desired to perform any MPD Police Officer position, including any Limited-Duty position. This Request includes but is not limited to the KSAs evaluated in any test, interview process, or hiring procedure.

**DOCUMENT REQUEST NO. 45**

All Performance Appraisal Forms for MPD Police Officer positions implemented during the Class Period.

**DOCUMENT REQUEST NO. 46**

All Documents Concerning the validation of any hiring procedure used in connection with the hiring, promotion, or compensation of MPD Police Officer roles, including but not limited to job announcements, job descriptions, civil service exam notices, training materials, and all other Documents that contain the standards or factors for which MPD Police Officer candidates are assessed and evaluated in the selection process.

**DOCUMENT REQUEST NO. 47**

All Job Evaluations conducted at MPD since its inception used to determine the pay rates, pay structures, and/or pay grades of all jobs at MPD.

Dated: December 23, 2021

Respectfully submitted,

/s Eve Hill
Eve Hill (Fed. Bar No. 424896)
Andrew D. Levy (Fed. Bar No. 458998)
**BROWN, GOLDSTEIN & LEVY, LLP**
120 East Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel.: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold,com
adl@browngold.com

/s Ellen Eardley
Ellen Eardley (DC Bar No. 488741)
Cyrus Mehri (DC Bar No. 420970)
Desireé Langley (DC Bar No. 1719961)
**MEHRI & SKALET, PLLC**
1250 Connecticut Ave., NW, Suite 300
Washington, DC 20036
Tel.: (202) 822-5100
Fax: (202) 822-4997

eeardley@findjustice.com
cmehri@findjustice.com
dlangley@findjustice.com

*Counsel for Plaintiffs and Putative Class*