# EXHIBIT D.

# GENERAL ORDER

METROPOLITAN POLICE

DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| Subject<br>**Medical Services** | | | |
| Topic<br>**PER** | Series<br>**100** | Number<br>**11** | |
| Effective Date<br>**April 25, 2006** | | | |
| Replaces:<br>**General Order 1001.1 (Medical Services), Effective Date January 9, 1998** | | | |


| | | | | | | | |
|---|---|---|---|---|---|---|---|
| I. | Background............................. | Page | 1 | V. | Procedural Guidelines.................. | Page | 5 |
| II. | Policy...................................... | Page | 2 | VI. | Provision.................................... | Page | 28 |
| III. | Definitions............................... | Page | 2 | VII. | Cross References......................... | Page | 28 |
| IV. | Regulations............................... | Page | 5 | | | | |


## I. BACKGROUND

On September 30, 2004, the "Omnibus Public Safety Amendment Reform Act of 2004" went into effect. Title VI of the Omnibus Act mandates several changes in how the Department implements its workers compensation program responsibilities, including setting parameters as to when a member is to be presented to the Police and Firefighters Retirement Relief Board for disability retirement.

This order incorporates those mandated changes, and establishes an occupational health care program that will enable the Department to monitor the medical progress of injured and/or ill members; develop individualized "Return-to-Work" programs that provide a transition between acute care and return to work through a highly structured, goal-oriented, individualized treatment program according to the medical needs of the member; return members to duty as quickly as medically possible; provide for wellness and preventive health programs; and process for retirement injured and/or ill members who can no longer perform the full range of police duties, even after meeting maximum medical improvement.

This system is implemented through conducting physical examinations; administering emergency medical and rehabilitative treatment services for Performance of Duty injuries and/or illnesses; monitoring the medical and rehabilitative treatment for Non-Performance of Duty injuries and/or illnesses; administering a health and wellness program; and authorizing a member to be placed on non-chargeable sick leave for Performance of Duty injuries and/or illnesses during the recovery process.

Members who seek guidance and instruction, when confronted with circumstances or concerns that are not specifically addressed by the provisions in this directive, shall direct their questions to the Director, Medical Services Section. (CALEA 22.3.2) (CALEA 26.1.1)

## II. POLICY

The policy of the Metropolitan Police Department is to meet the occupational health needs of its members by ensuring that members who sustain occupational injuries and illnesses receive quality health care, and continue to receive income, consistent with the Omnibus Act, while recovering from a duty-related injury and/or illness. In addition, the Police and Fire Clinic shall monitor members' non-performance of duty injuries and illnesses. The purpose is to determine members' duty status and their ability to participate in the Limited Duty Program.

## III. DEFINITIONS

When used in this directive, the following terms shall have the meanings designated:

1. Behavioral Health Injury/Illness – Diagnosis and treatment of psychological/psychiatric injuries and/or illnesses occurring in the Performance of Duty, and the monitoring of Non-Performance of Duty psychological/psychiatric injuries and/or illness. This is the accepted and commonly used medical term to describe stress-related medical conditions.

2. Chief Physician – The physician responsible for the medical administration of the Police and Fire Clinic.

3. Clinic Case Manager – The nurse, or other health care professional, who is responsible for the coordination of case management activities for members, ensuring the member's compliance with all medical directives, and facilitating the member's earliest possible return to a full-duty status.

4. Critical Incident – An incident where a member suffers a behavioral health injury/illness and the member:

    a. Took direct, authorized police action, and was seriously wounded, or

    b. Was the victim of a crime that could have resulted in the member being seriously wounded or killed, and the crime was related to that member's performance of his/her duties; or

    c. Took direct, authorized police action, and that action directly caused the fatal wounding of another individual.

5. Disability Compensation Pay – The biweekly salary of a sworn member, paid to the member following a Performance of Duty determination, or, if the Department fails to meet the 30-day deadline for certification, until the Department makes a Non-Performance of Duty determination.

6. Director, Medical Services Section – The program manager for the Medical Services Section of the Metropolitan Police Department.

7. Full Range of Police Duties – The essential functions of police work as determined by established policies and procedures of the Metropolitan Police Department.

8. Health Care Provider – Medical staff assigned to, or part of, the network of providers hired by the Police and Fire Clinic. This includes, but is not limited to, surgeons, podiatrists, dentists, clinical psychologists, optometrists, chiropractors, osteopathic practitioners, nurses, physician assistants, physical therapists, laboratory technicians, X-ray technicians, and social workers within the scope of their practice.

9. Limited Duty Status – Temporary status for members who are not able to perform the full range of police duties because of injury/illness or other temporary medical disability, but are certified by the Chief Physician as being capable of effectively performing certain types of work.

10. Limited Duty/Non-Contact Status – A member who has been certified by the Chief Physician as capable of effectively performing certain types of work, and who has been placed in a non-contact status pending the conclusion of a Departmental or other investigation.

11. Maximum Medical Improvement – A condition or state that is well-stabilized, and unlikely to change substantially in the next year with, or without, medical treatment. Over time, there may be some change; however, further recovery or deterioration is not anticipated.

12. Medical Leave – Authorized leave taken by a member when the member is unable to perform his/her duties due to a serious health condition as certified by his/her health care provider. Medical Leave may include sick leave, advanced sick leave, annual leave, compensatory time, and leave without pay. Performance of Duty sick leave does not count as medical leave.

13. Medical Emergency – Medical condition that, in the opinion of the Chief Physician, manifests itself by acute symptoms of sufficient severity (including severe pain), such that the absence of **immediate** medical treatment could reasonably be expected to result in placing the employee's health in serious jeopardy, serious impairment to bodily function, or serious dysfunction of any bodily organ or part.

14. Member – In this directive, “member” shall be defined as sworn law enforcement officers of the MPD, including Senior Police Officers.

15. Non-Performance of Duty Injury/Illness – Injury or illness that does not arise out of, and in the performance of, a member's duty as a Metropolitan Police Officer.

16. Notification to the Clinic - In this directive, this phrase means that the notification must be made to a Clinic liaison officer at the rank of Sergeant or higher.

17. Notification to an Official – In this directive, the phrase means that the notification must be made to an official of higher rank than the member.

18. Performance of Duty (POD) Injury/illness – Injury/illness that arises in the course of a member performing his/her duties as a police officer. A member can sustain a POD injury/illness while on or off duty:

    a. An on-duty POD injury/illness is sustained when a member was legally on duty, as evidenced by time and attendance records, and engaged in work for the Department.

    b. An off-duty POD injury/illness is sustained when a member was required to take police action in the District of Columbia, even though the member was legally off duty, as evidenced by the time and attendance records.

19. Performance of Duty Sick Leave – authorized non-chargeable leave provided for a member while the member is recovering from a POD injury/illness.

20. Serious Health Condition – A physical or mental illness, injury, or impairment that involves inpatient care in a hospital, hospice, or residential health care facility, or continuing treatment or supervision at home by a health care provider or other competent individual.

    Examples of serious health condition include, but are not limited to, heart attacks, heart conditions requiring bypass or valve operations, most cancers, back conditions requiring extensive therapy or surgical procedures, strokes, severe respiratory conditions, spinal injuries, appendicitis, pneumonia, emphysema, severe arthritis, severe nervous disorders, lupus, AIDS, injuries caused by serious accidents off the job, ongoing pregnancy, miscarriages, complications, or illnesses related to pregnancy, prenatal care, childbirth, and recovery from childbirth.

21. Urgent Care – treatment of injuries/illnesses that require the immediate attention of a health care professional, but are not of a nature that the services of a hospital emergency room or hospitalization is needed.

## IV. REGULATIONS

A. Pursuant to the Omnibus Act, the Department shall:

1. Within thirty (30) calendar days from the date the member reports a claim of an injury/illness, make a determination whether the injury/illness is POD or non-POD.

   If the Department fails to make a ruling within thirty (30) days, the claim shall be presumed to be a POD injury/illness, and the member will receive non-chargeable sick leave, and will pay reasonable medical expenses supported by appropriate documentation until he/she receives a formal ruling on his/her claim. Even if the claim is eventually determined to be non-POD, the Department shall not "reach-back" to recover costs incurred as a result of the Department's failure to make a ruling within thirty (30) days.

2. Process for retirement any member who spends 172 **cumulative** workdays in a less than full-duty status **over any 24-month period** as a result of any one POD or non-POD injury/illness, including complications related to the injury/illness. The 172 cumulative workdays:

   a. Are accrued over a 24-month period, and do not have to be accrued consecutively.

   b. Do **not** apply to pregnant females in a limited duty status. (CALEA 22.2.1-c)

B. In consultation with the Clinic, the Chief of Police may extend the time a member can remain on POD sick leave in cases where a member has sustained a serious or life-threatening POD injury/illness that requires more than two years of medical treatment before the member can receive a maximum medical improvement evaluation, and the prognosis is, that upon such maximum medical improvement, the member will be able to return to a full duty status.

## V. PROCEDURAL GUIDELINES

A. On-duty Injuries/Illnesses

1. A member shall immediately report an injury/illness to an official at his/her element when the member:

   a. Incurs the injury/illness while on duty; or

   b. Detects an injury/illness that he/she believes was incurred while on duty.

2. Unless a member is incapacitated, failure to notify an official within twenty-four (24) hours of occurrence may result in a non-POD injury/illness determination.

3. When the Clinic is closed, members who have medical emergencies, or need urgent care medical services for on-duty injuries/illnesses, shall report to the Urgent Care facility at Washington Hospital Center or Providence Hospital to the extent possible, according to the following:

   a. Members whose last names begin with "A through K" shall report to the Urgent Care facility at Washington Hospital Center.

   b. Members whose last names begin with "L through Z" shall report to the Urgent Care facility at Providence Hospital.

4. Except in life-threatening situations, members requiring treatment for on-duty injuries/illness shall be admitted to Providence Hospital or Washington Hospital Center at the discretion of the Clinic when the Clinic is open.

   a. In non-emergency situations, members shall not seek medical treatment for an on-duty injury/illnesses other than at the Clinic, or at the designated Urgent Care facility when the Clinic is closed. A member may be referred to an outside medical facility for consultation and/or treatment at the discretion of a Clinic physician.

   b. A member who is admitted to, or released from, a hospital shall notify an official at his/her element as soon as possible.

   c. In the event a member is incapacitated, and unable to notify the Clinic Liaison Office that he/she has been admitted to, or released from, a hospital, the member's Commanding Official shall assume responsibility for the notification.

5. When a member is admitted to a hospital for on-duty injury/illness, an official from the member's command shall notify an official at the Synchronized Operations Command Center (SOCC) as soon as possible, and provide the information set forth below.

   The information to be provided includes:

   a. The injured member's name and organizational element;

   b. The name and location of the hospital where the injured member received treatment;

   c. The reason why the injured member was admitted to a hospital; and

d. The date the injured/ill member received treatment, or was admitted/released from the hospital.

6. When a member is admitted to a hospital for an on-duty injury/illness, the member's Watch Commander shall designate the official who accompanied the member to the hospital to take possession of the member's service weapon, badge, cap plate, and identification folder for safekeeping.

B. Off-duty Injuries

1. When a member sustains an off-duty injury/illness, the member shall:

a. Notify an official of his/her organizational element, as soon as he/she is capable, and provide an account of the injury.

b. During the first sick call period, on the day the injury/illness is detected, report to the Clinic for a medical evaluation.

c. If the Clinic is closed, members shall report the next business day during the first sick call period.

2. When a member is physically unable to report to the Clinic because of injury/illness, and the injury/illness does not result in a hospital admission, he/she shall report to the Clinic when practicable, and provide to the attending Clinic physician a summary of the events leading up to the injury.

C. Hospitalization

1. Should the need arise to hospitalize an on-duty member pursuant to the provisions of General Order 308.4 (Processing of Persons Who May Suffer from Mental Illness), an official shall revoke the member's police powers, and contact the Director, Medical Services Section, through the SOCC, if necessary, to arrange for a psychological examination.

a. The member shall be taken to the emergency room of the Washington Hospital Center or Providence Hospital.

b. An MPD official shall accompany the member to provide the necessary information to the hospital staff.

2. A member who is admitted to, or released from, a hospital shall notify his/her organizational elements as soon as possible.

a. During hours when the Clinic is open, the member shall notify his/her organizational element, and the Clinic Liaison Office.

b. During hours when the Clinic is closed, the member shall notify the SOCC Watch Commander as soon as possible upon admission to, or release from, a hospital.

c. Notification shall include:

(1) The member's name;

(2) The name and location of the hospital where the member received treatment;

(3) The reason why the member was admitted to the hospital; and

(4) The date the member received treatment or was admitted/released from the hospital.

d. The SOCC Watch Commander shall notify an official from the member's element, and provide the above information.

D. Special Circumstances

1. Any member who comes in direct contact with a person who has a communicable disease shall notify the Clinic no later than the next business day, and be guided by the Clinic's instructions.

a. The member shall complete a PD Form 318 (Communicable Diseases and Tuberculosis Contact Form) as soon as possible.

b. When members have been exposed to a person known to carry the HIV virus, and bodily fluids have been exchanged, members **WILL respond** to the Clinic within one hour of exposure to begin a blood-borne pathogen antibiotic treatment.

c. If the Clinic is closed, members shall respond to the Washington Hospital Center or Providence Hospital Urgent Care Facility as applicable.

2. In instances when the member learns he/she has been exposed to chemical and/or biological agents, and/or other hazardous materials, the member shall complete a PD Form 318 and contact the Clinic for instructions. The Clinic shall notify the Center for Disease Control in accordance with existing medical protocol.

3. When a member directly experiences a critical incident:

a. The member shall request a Clinic appointment the next business day for a post-incident debriefing by a Clinic psychiatrist or psychologist.

b. Commanding Officials shall notify the Director, Medical Services Section, and request the services of a Clinic psychiatrist if the reaction of a member warrants immediate counseling and/or hospitalization after a critical incident. When the Clinic is closed, the request for the "on-call" Clinic psychiatrist shall be placed through the SOCC Watch Commander.

c. Commanding Officials shall notify the Director, Medical Services Section, prior to 0900 hours the next business day, and provide the names of members involved in incidents as described in Section V.D.3.(a-b) of this directive.

4. Supervisory Officials shall complete a PD Form 839 (Supervisor's Report of Accident) when a member sustains an injury/illness, or there is a fatality as the result of a vehicle accident. (CALEA 26.1.1) A copy of the form shall be sent to the Director, Medical Services Section, and to the Institute of Police Science for their training records.

5. Members who are unable to secure **prompt** medical attention from a Clinic physician shall document the facts surrounding the incident in a written memorandum, and submit, through the chain of command, to the Director, Medical Services Section.

E. PD Form 42 (Injury or Illness Report) Completion and Certification

1. A PD Form 42 (Injury or Illness Report) shall be completed for each injury/illness.

2. If the member is on duty when the injury/illness occurs, and the injury/illness is not a medical emergency, the member shall immediately complete **and sign** the PD Form 42, make a copy, submit the original PD Form 42 to the Watch Commander, and report to the Clinic with the copy of the PD Form 42.

3. Upon receipt of the PD Form 42, the certifying official shall:

a. Interview the member, police, and civilian witnesses as necessary, and document on the PD Form 42 information relevant to the claim of injury/illness;

b. Visually observe and document any reported injuries only if appropriate and if the member agrees to a visual observation. A visual observation of an injury by non-medical personnel shall only involve those areas of the body (e.g., hand, arm, ankle, head, etc.) that are normally exposed.

c. Examine the scene where the injury occurred, and document the conditions that may have been a contributing factor to the injury;

d. Document any statements made by the injured member at the time of incident, if these statements can be obtained from witnesses;

e. Inspect any equipment and/or vehicle(s) involved in the incident that led to the injury, and document damage or defects that may have contributed to the injury sustained by the member;

f. Document any evidence that suggests the member's conduct may have contributed to the injury;

g. Document whether the member acted in accordance with the provisions in this directive, as applicable;

h. If the member was treated at a facility other than the Clinic, Providence Hospital, or Washington Hospital Center, document the nature of the emergency that required treatment at another facility, and the authorization that was obtained; and

i. Refrain from recommending how the injury or illness should be classified.

4. The certifying official shall complete the certification **prior to the end of his or her tour of duty** for all claims of on-duty injuries or illnesses.

5. If the member was unable to sign the PD Form 42 because he/she was incapacitated, the certifying official shall ensure that a Supervisory Official on the member's tour of duty signs the form.

6. In all instances when the PD Form 42 was prepared and signed on behalf of the member, the certifying official shall ensure that he/she documents on the PD Form 42 why the member was not able to sign.

7. If necessary, the certifying official shall be held over until the form is complete.

8. Failure of the certifying official to complete the certification may be considered neglect of duty.

9. Commanding Officials shall ensure that:

a. The certifying official conducts a thorough investigation for PD Form 42 claims filed by members in their command;

b. A non-incapacitated member signs the completed PD Form 42;

c. The member's Supervisory Official prepares and signs the PD Form 42 in the event the member is unable to prepare and sign it;

d. The PD Form 42 is certified by an official before the end of the member's tour of duty if the injury/illness occurred while the member was on duty;

e. The PD Form 42 is certified within twenty-four (24) hours if the injury/illness occurred while the member was off duty; and

f. The injured member receives a copy of the completed PD Form 42 as soon as practicable.

F. Performance of Duty Determination

1. The Chief Physician shall make an assessment of whether the medical causes of the injury/illness support the member's claim on the PD Form 42.

2. The Director, Medical Services Section, shall make a POD/Non-POD determination within thirty (30) days of injury/illness claims.

G. Types of Leave

1. Leave as a result of a POD injury or illness

A member with a POD injury/illness is entitled to Performance of Duty sick leave.

2. Leave as a result of a non-POD injury or illness

a. A member with a non-POD injury/illness is entitled to chargeable sick leave to the extent that the member has a positive balance in his or her sick leave account.

(1) If a member has insufficient sick leave, he/she may elect to use annual leave, and/or compensatory leave in lieu of Leave Without Pay (LWOP).

(2) When a member has exhausted his/her accumulated sick leave, the member may request LWOP, or advanced sick leave, provided that the member completes a PD Form 654 (Request for Advanced Leave or Leave Without Pay), and, if appropriate, a Family Medical Leave Act (FMLA) request to be approved by the Assistant Chief, OHS.

(3) The member may also participate in the bargained Catastrophic Leave Program in accordance with SO-88-20 (Catastrophic Illness/Injury Donation Program), as applicable by D.C. regulations, or the collective bargaining agreement.

(4) Lieutenants and above may participate in the District Government Annual Leave Bank Program.

3. Medical Leave

a. Members shall be guided by the following when requesting Medical Leave: (CALEA 22.2.1-c)

(1) Pursuant to the FMLA, a member may apply for medical leave when the member is unable to perform his/her duties because of a serious health condition. All medical leave that is taken because of a serious health condition counts toward the limits required by the FMLA.

(2) The member must respond to the Clinic for an evaluation prior to requesting medical leave.

(3) The member's health care provider must certify that a serious health condition exists.

b. Medical leave may be taken in one block of time, or intermittently over a 24-month period.

4. Blood/Organ Donor Leave

a. Members in good health may make voluntary donations of blood to a recognized blood bank or hospital without having to obtain authorization from a Clinic physician.

b. Members who elect to donate blood may be granted administrative leave in accordance with applicable rules and regulations. If the member is covered by collective bargaining, any provision pertaining to blood donation shall apply.

c. Any member who is rejected as a donor shall immediately return to his/her element and resume his/her assigned duties. In this case, administrative leave shall be authorized for the necessary travel time to and from the blood donation facility, and the time spent while at the facility.

d. Members who are considering donating an organ, (i.e., a kidney to a relative) shall report to the Clinic, and consult with a Clinic physician regarding the possible impact of organ donation on the member's ability to perform the essential functions of his/her job. A record of this consultation shall be maintained at the Clinic.

H. Limited Duty Status

1. If a member is unable to perform the full range of police duties, the Clinic may place the member in a limited duty status, regardless of whether the employee requested the change.

2. Probationary Officers shall not be placed on limited duty status for more than thirty (30) cumulative days without approval from the Assistant Chief, OHS.

   NOTE: The Commanding Officer shall immediately request that the Assistant Chief, OHS, extend the member's probationary period for each day the probationary member is in a non-full duty status.

3. The Chief Physician shall prepare a PD Form 305 (Certification for Limited Duty/Extended Limited Duty Evaluation) each time a member is ordered to assume limited duties.

4. Limited duty status begins when the Chief Physician certifies on the PD Form 305 that a member is medically available for a limited duty assignment.

5. In the cases where injured members are in a non-contact status, and they are certified by the Chief Physician that they are medically able for a limited duty assignment, the Director, Medical Services Section, shall mark the certification as "Limited Duty/Non-Contact Status." In all other cases, the Director, Medical Services Section, shall mark the certification as "Limited Duty."

6. Upon receipt of the PD Form 305, members shall:

   a. Immediately notify the Watch Commander at his/her element of the change in duty status; and

   b. Report to his/her assigned element for his/her tour of duty.

      NOTE: If an official at the member's element is not available, the member shall immediately notify an official at the Synchronized Operations Command Complex (SOCC), who shall document the change in the member's duty status.

   c. In cases where the member's limited duty certification is marked "Limited Duty/Non-Contact Status," the member shall report directly to the element Watch Commander and receive further instructions. A non-contact designation supercedes a limited duty certification for the purpose of placing a member in a duty assignment.

7. Members on limited duty status shall:

   a. Attend all roll calls;

   b. Report to work in Court Attire unless their police powers have been restored, and their service pistol has been returned;

   c. Undertake in-service training as required by the Chief of Police;

   d. Not work voluntary overtime (either for pay or compensatory time);

   e. Not accept or continue outside employment;

   f. Work special details and assignments as appropriate;

   g. Comply with all medical directives, including keeping appointments with clinic providers and specialists;

   h. Refrain from practices or activities that, as instructed by the Clinic, may impede recovery, or the return to full duty; and

   i. Report to the range for weapon re-qualification as applicable.

I. Duty Status of Pregnant Members (CALEA 22.3.2)

1. When a member advises a Clinic physician she is pregnant, she shall be given a “Physician’s Information and Work Status Release” Form (Physician’s Release) to take to her private physician for completion.

   a. Pregnant members shall continue in a full duty assignment during the pregnancy until:

      (1) The member requests a limited duty assignment in consultation with her private physician.

      NOTE: The decision to continue work on full duty status is the sole decision of the pregnant member in consultation with her private physician. This is in accordance with the related component of the policy statement issued by the Office of the Mayor on September 19, 2001.

      (2) The pregnancy is found to interfere with the member’s ability to fully perform her duties.

   b. In cases where the Clinic determines that a member’s pregnancy status is placing herself, her colleagues, and/or the public in jeopardy, the member can be ordered by her

Commanding Official to a “Fitness for Duty” examination where she shall undergo a “Functional Capacity” examination.

c. In accordance with medical standards of care, when the Chief Physician determines that an employee cannot perform the full range of police duties while pregnant, the employee will be placed on limited duty status until her private medical physician completes a certification form provided by the Clinic that indicates the member is able to meet all of the functions as outlined in the certification.

J. Revocation of Police Powers (CALEA 52.1.8)

1. When a Clinic physician determines that a member’s medical or behavioral health condition prevents him/her from carrying his/her service weapon, whether in a full duty or non-full duty status, the member’s police powers shall be revoked.

a. An official of the Medical Services Division shall complete a PD Form 77 (Revocation/Restoration of Police Powers and Notice of Duty and Pay Status) and shall place the member on sick leave or limited duty status, which shall be noted in the “Explain the Status” section of the PD Form 77.

b. The PD Form 77 shall be forwarded to the member’s element An official from the member’s element shall immediately respond to the Clinic upon receiving notification that a member of his/her element has had his/her police powers revoked by an official at the Clinic due to a medical or behavioral health condition. The official shall take possession and safeguard those items of equipment that must be surrendered, to include the member’s service weapon.

2. When a member remains in a sick leave or limited duty status for more than thirty (30) days, the member shall have his/her police powers revoked by his/her element official.

3. Any member wishing to retain his/her service weapon while on Extended Sick Leave or Limited Duty in excess of thirty (30) days may file a request (through his/her chain-of-command) with the Chief of Police outlining the reason for the request, and articulating why he/she should be allowed to retain his/her weapon.

4. In cases where the Chief of Police grants the member’s request to retain his/her service weapon, the member must then qualify at the range before having his/her weapon returned.

---

GO-PER-100.11 (Medical Services)
Revised 3/14/08
Pages 15-16

K. Administrative Procedures/Appeals Process

1. When filing a PD Form 42 claim for a POD injury/illness ruling with the Director, Medical Services Section, members shall be placed on chargeable sick leave until thirty (30) calendar days have elapsed, or until the resolution of their claim, whichever occurs first.

   a. A member may file a written objection to the certifying official's investigation with the Director, Medical Services Section, within ten (10) days of receipt of the certified PD 42.

   b. The objection shall be limited to the certifying official's investigation of the PD 42 claim, and shall raise every issue related to the claim that the member deems material to a determination of whether the injury occurred in the performance of duty.

   c. The Director, Medical Services Section, shall consider the issues raised in the objection when making the initial determination as to whether the injury occurred in the performance of duty.

   d. All chargeable leave shall be restored to the member if the Director, Medical Services Section, rules the initial claim as a POD injury/illness, or if the Assistant Chief, OHS, sustains an appeal to reverse the decision of the Director.

   e. If the Director, Medical Services Section, fails to make a determination on the PD Form 42 within thirty (30) calendar days, the member is automatically placed on POD sick leave until the Director makes a final determination.

      NOTE: In this situation, the Clinic will notify the member's element regarding the member's leave status.

   f. Even if the claim is eventually determined to be non-POD, the Department shall not "reach-back" to recover costs incurred as a result of the Director's failure to make a determination within thirty (30) days.

   g. Time and Attendance Clerks shall not make adjustments to the member's leave balance until receipt of the official copy of the

PD Form 42 from the Director, Medical Services Section, that certifies the injury/illness as POD.

h. Under no circumstances shall a Time and Attendance Clerk make a determination that a member's claim is a POD injury/illness in order to maintain the member in a pay status.

i. In cases where the member has less than thirty (30) days of available sick leave, the member may request an expedited review of his or her claim from the Director, Medical Services Section.

j. If the claim is determined to be non-POD, the member shall remain on chargeable sick leave until his/her return to a full or limited duty status.

2. Members who receive non-POD injury/illness determinations may appeal the decision to the Assistant Chief, OHS, within thirty (30) days from the date the member received the decision.

a. All such requests shall be in writing, and addressed to the Assistant Chief, OHS, and shall contain:

(1) A copy of the non-POD injury/illness determination;

(2) A statement and supporting documentation, to include the names of witnesses who will support a change in the original determination. The response submitted by the member shall raise every defense, fact, or matter in extenuation, exculpation, or mitigation of which the member has knowledge, or reasonably should have knowledge, or which is relevant to the reasons why the decision of the Director, Medical Services Section, should be reversed;

(3) A statement that any supporting documentation contained in the appeal to sustain a POD injury/illness was initially made available to the Director, Medical Services Section; and

(4) A letter authorizing the member's union representative, or legal representative, to appear on behalf of the member, if the member wishes union or legal representation, and does not wish to represent himself/herself.

b. Upon receipt of the request for appeal, the Assistant Chief, OHS, or his/her designee, shall:

(1) Acknowledge receipt of the appeal;

(2) Review the appeal, and return appeals with incomplete documentation to the member;

(3) Review the Notice of non-POD ruling by the Director, Medical Services Section, along with all medical records and other documentation related to the case on file at the Police and Fire Clinic;

(4) Review the member's request for appeal, along with the documentation presented by the member; and

(5) Schedule the matter for hearing by notifying the member of the date, time, and location of the hearing.

c. At the hearing, the Assistant Chief, OHS, or his/her designee, shall:

(1) Receive oral and written testimony to establish facts;

(2) Receive documents and exhibits in support of the Request for Review;

(3) Question and cross-examine witnesses and parties;

(4) Summon experts in related law; and

(5) Seek clarification or additional information from the Director, Medical Services Section, on non-POD injury/illness rulings.

d. Hearings of appeals of non-POD injury/illness rulings shall be on the record, and in accordance with the Administrative Procedures Act.

e. Every decision and order from the Assistant Chief, OHS, shall be in writing, and shall be accompanied by findings of fact and conclusions of law.

(1) The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact.

(2) Findings of fact and conclusions of law shall be supported by, and in accordance with, the reliable, probative, and substantial evidence.

(3) Each decision shall be signed by the Assistant Chief, OHS, and transmitted to the member and the member's representative, as applicable.

3. Rulings of the Assistant Chief, OHS, constitute final Agency action on the non-POD injury/illness determination.

   a. Members wishing to appeal the decision of the Assistant Chief, OHS, may file a Petition for Review with the District of Columbia Superior Court within thirty (30) calendar days from the date of the decision.

   b. Petitions for Review must be filed in the Office of the Clerk of the Court for the District of Columbia Superior Court.

4. With regard to the payment of medical expenses, the Department shall:

   a. Assume financial responsibility for authorized medical expenses where a determination has been made that an injury/illness occurred in the performance of duty.

   b. **Not** assume financial responsibility for medical expenses when the member concedes, or does not claim, that an injury/illness occurred in the performance of duty.

   c. Pay for diagnostic services, initiated at the discretion of a Clinic physician, when the diagnostic or referral service is initiated to satisfy the administrative needs of the Department.

   NOTE: The member is responsible for the costs of treatment of non-POD injury/illnesses. Such treatment shall not be provided through the Clinic. However, the Department continues to require members to report to the Clinic for evaluation and monitoring of non-POD injury/illnesses for administrative purposes. Members are not billed for Clinic visits that are made in order to satisfy this requirement.

5. When a member incurs a POD injury/illness and seeks to recover damages from a third party, and the member has received medical or other care at the expense of the District Government:

   a. Within ten (10) days of a member making a claim against, instituting a proceeding against, or entering into settlement negotiations with a third person as a result of an injury or illness, the member shall submit, by certified mail, with return receipt requested:

      (1) A written notification;

      (2) A copy of the PD Form 42; and

      (3) A PD Form 839 (Supervisor's Report of Accident), as applicable.

b. The packet shall be submitted to the D.C. Office of the Attorney General (Civil Division), and to the Office of the Chief of Police.

c. The member shall provide written notice of the District's lien interest to the third party at the time of making the claim or instituting the proceeding, or entering into settlement negotiations.

d. A member may request that the District Government compromise, settle, release, or waive its claims for care provided to the member by submitting a written request, indicating the reasons for the request, to the D.C. Office of the Attorney General (OAG).

e. Within five (5) days of receiving any proceeds of a recovery or settlement against any third party for an injury sustained or illness contracted, the member shall ascertain from the OAG:

(1) The amount of any lien on behalf of the District of Columbia, and

(2) Pay the amount of any such lien.

f. No member shall disburse any proceeds of a recovery or settlement against a third party for an injury sustained, or illness contracted, without first acting in accordance with the provisions in this directive.

7. Prescriptions issued at the Clinic shall only be filled by an authorized pharmacist selected from a list of pharmacies contracted by the Clinic.

a. The Department will not assume responsibility for the cost of prescriptions written by a physician who is not authorized by the Clinic to fill a prescription.

b. Failure to comply with the above shall result in the member having to assume financial responsibility for filling his/her prescriptions.

L. Mandatory Disability Retirement:

1. Members who spend 172 cumulative workdays in a less than full duty status over any 24-month period as a result of any one POD or non-POD injury/illness, including complications related to the injury/illness (except as provided in Section V.L.3. of this order) shall be referred to the Police and Firefighters Retirement Relief Board for disability retirement.

2. This shall occur regardless of whether the medical prognosis is that a member will be able to perform in a full duty status after reaching maximum medical improvement.

3. The Director, Medical Services Section, in consultation with Clinic physicians, may recommend to the Chief of Police to provide the member with additional POD sick leave until the member achieves maximum medical improvement where:

   a. A member has sustained a serious or life-threatening POD injury/illness that will require more than twenty-four (24) months of medical treatment to achieve maximum medical improvement; and

   b. The prognosis is that the member eventually will be able to perform in a full duty status.

4. The Director, Medical Services Section, shall notify the Chief of Police with the recommendation for extension of POD administrative sick leave before the member is scheduled for referral to the retirement board.

M. Clinic Procedures

1. When reporting to the Clinic, members shall:

   a. Report at their scheduled appointment time, unless delayed on official police business. Members delayed on official police business shall notify the clinic as soon as possible.

   b. Have in their possession their department-issued service weapon, badge, and identification folder, unless their police powers have been previously revoked. Members are not permitted to bring off-duty weapons into the Clinic.

   c. Ensure that they are not accompanied by visitors (including children) not authorized to use Clinic facilities, unless the visitor is providing transportation, or is a family member who is scheduled for consultation with a Clinic physician.

2. When checking in and out for Clinic appointments, members shall:

   a. Take the most expedient route to report to the Clinic when on duty, and leaving their assignment;

   b. Upon arrival, immediately report to the Clinic reception area for check-in;

   c. As applicable, upon completion of the Clinic visit, return to the reception area to receive their next appointment date. If there

are scheduling conflicts, report to the Clinic Liaison Office to resolve administrative issues.

d. When appearing at the Clinic for consultation or treatment, deliver a copy of their Clinic Data Record to their Commanding Officer through the Watch Commander when they have been given a follow-up appointment, or when the Clinic Data Record reflects a change in their duty status.

e. If still on-duty after checking out, notify their supervisors of their return to duty, and report directly to their duty assignment by the most expedient route.

3. The Medical Services Section shall notify the member's Commanding Officer of any change in a member's duty status. Members are also obligated to make the notifications as required in Section V.H.6.(a) of this directive.

N. Roles and Responsibilities

1. Member Responsibilities

a. Members shall provide copies of their medical records from their private physicians upon request by the Director, Medical Services Section, or the Clinic health care provider monitoring the member's injury, illness, or medical condition.

(1) Medical records from private physicians shall include, but are not limited to, lab reports, surgical reports, a diagnosis and prognosis of medical condition, and any other information as deemed necessary by the Director, Medical Services Section, or the Clinic health care provider monitoring the injury, illness, or medical condition. The Medical Certification Report **does not** satisfy this requirement.

(2) All medical records from private physicians must be submitted to the Director, Medical Services Section, within ten (10) business days from the date of the request, or no later than the next scheduled appointment with the Clinic, whichever comes first.

(3) Failure to comply with a request for medical records from a member's private physician may result in disciplinary action.

b. Members on medical or sick leave shall remain at their residence, or any other place they are staying during the extent of their medical or sick leave, from 0800 to 1630 hours, Monday through Friday (excluding holidays).

c. Members who wish to leave their residence, or any other place they are staying, for medical reasons related to their injury/illness (i.e., to pick-up prescriptions, attend medical appointments, etc.), shall contact the designated person at their element before leaving, and provide the reason why they are leaving, the location to which they will be responding, the exact time they departed, and an estimated time of return.

d. Members who, for non-medical reasons, wish to leave their residence, or any other place they are staying during the extent of their performance of duty sick leave shall submit an SF 71 (Application for Leave) through their Commanding Officer to the Assistant Chief, OHS, for approval.

(1) If approved, the member will be placed in a chargeable leave category for the duration of their absence.

(2) The member shall submit the approved SF 71 to their Time and Attendance Clerk.

e. Members receiving POD injury/illness sick leave benefits, or participating in the limited duty program, shall: (CALEA 22.2.1-c)

(1) Keep scheduled appointments with treating Clinic physicians and other network providers, including appointments with rehabilitation specialists and physical therapists; and

(2) Comply with all directives and orders issued by Clinic officials, medical staff, and/or the Director, Medical Services Section.

f. Members in a full-duty or limited duty status who fail to appear for a Clinic appointment will be subject to an administrative investigation, and may be subject to discipline.

g. Those members who fail to appear for a clinic appointment while in a medical or sick leave status shall be investigated and may be charged with being absent without leave (AWOL). Those members in a full or limited duty status who fail to appear for a clinic appointment will be subject to an administrative no-show investigation.

h. Members who fail to comply with directives and/or requests issued by Clinic officials, medical staff, and/or the Director, Medical Services Section, will be subject to appropriate disciplinary action. The appropriate Medical Services Section Official shall obtain IS numbers, and commence an investigation into the member's non-compliance.

i. Members being treated by their private physicians for injuries/illnesses not incurred in the performance of duty, or for other pre-existing medical conditions (e.g., hypertension, coronary heart disease), which are not temporary (e.g., colds, flu), shall:

(1) Report the medical condition to a Clinic physician immediately upon becoming aware of the existence of the medical condition, including whether they are taking prescription medication, or have been prescribed prescription medication;

(2) Provide a report to the Clinic physician from their private physician that gives the diagnosis and prognosis of the medical condition; and

(3) Use their own sick or annual leave for medical or therapy appointments associated with the non-performance of duty injury.

(4) Members who fail to comply with these provisions shall be prohibited from claiming an aggravation of a pre-existing medical condition as the result of a duty-related incident.

j. Members shall not seek medical treatment for POD illnesses other than at the Clinic in non-emergency situations (or the designated Urgent Care facility when the Clinic is closed), without the prior express permission of the Director, Medical Services Division.

2. Commanding Officials shall:

a. Ensure that members on sick leave or limited duty status report to their assigned elements at least once a week to receive notifications, sign for all directives, receive copies of the *Dispatch* and teletypes, and to update duty status.

b. Ensure that the time and attendance records of members on sick leave or limited duty accurately reflect the member's duty status, and any change in the member's duty status.

c. Investigate the circumstances when a member fails to report to the Clinic, or another medical facility, for a scheduled medical appointment, and submit a report to the Assistant Chief, OHS.

d. Notify the appropriate chaplain in the event of a serious injury or illness of a member assigned to his/her command.

e. When a Probationary Officer is placed on medical or sick leave, immediately request that the Assistant Chief, OHS, extend the Officer's probationary period for each day the member is in a less-than-full-duty status. Pursuant to the District Personnel Manual, Section 813.6, under no circumstances shall a member's probationary period be extended for more than an additional eighteen (18) months.

3. The Chief Physician shall:

a. Determine the course of treatment;

b. Determine the contents of all work limitations and limited duty prescriptions (certifications);

c. Determine the medical likelihood of return to a full duty status by an injured/ill member; and

d. Review medical information provided by a member's private physician, as appropriate.

4. The Director, Medical Services Section, shall:

a. Notify the member's Commanding Officer in those instances where a member fails to respond to the Clinic, to a referral medical facility as scheduled, or as directed, or reports late.

b. Ensure that the member's medical injury/illness is documented, including:

(1) History;

(2) Clinical findings;

(3) Diagnoses;

(4) Prognosis;

(5) An estimated date of full recovery;

(6) Members' six-month report by the Chief Physician; and

(7) A recommendation for return to full duty, or for disability retirement.

c. Ensure that a medical review of POD injury/illness sick leave cases is conducted as often as the Clinic determines is necessary.

d. Ensure that a medical review of non-POD injuries/illnesses at least monthly, and when necessary, biweekly.

e. Address all issues related to the implementation of the Department's Occupational Health Care program.

f. Monitor payments to health care providers as appropriate.

g. Establish and implement procedures to ensure confidentiality of all records of injured members in accordance with District and Federal laws.

h. Establish and implement a liaison between the MPD and other government agencies that use the services of the Clinic.

i. Receive and review all certifications by the Clinic medical staff related to a member's inability to meet duty-related commitments.

j. On a weekly basis, provide to the Assistant Chief, OHS, a list of members who are:

(1) Placed on sick leave;

(2) Assigned to limited duty status;

(3) Released by a Clinic physician to return to full duty; and

(4) Recommended for disability retirement and/or retired on disability.

k. Monitor duty status to determine when members should be referred to the retirement board once they reach 172 cumulative workdays.

l. Prepare letters to members notifying them of initial Disability Appointments.

m. Prepare all case materials when recommending the disability retirement of a member.

n. Immediately report the member to the Office of Professional Responsibility for investigation in cases when it is suspected that a member is malingering, feigning illness, and/or intentionally failing to meet his/her Clinic obligations.

5. The Assistant Chief, OHS, shall:

a. Determine when members receive advanced sick leave;

b. Administer the workers compensation program;

c. Serve as Contract Administrator for the Occupational Health Care contract for sworn members;

d. Administer the Family and Medical Leave Program;

e. Oversee the activities of the Police and Fire Clinic;

f. Rule on all appeals of non-POD injury/illness determinations; and

g. Notify members pending disability retirement of their minimum and maximum disability retirement salary.

6. The Watch Commander, SOCC, shall:

a. Notify the Chief of Police, Executive Assistant Chief of Police, Element Commander, the Family Support Team [including a Public Safety Chaplain and a representative of the Metropolitan Police Employee Assistance Program (MPEAP)], and other senior Command Officials, as appropriate, when a member is admitted to a hospital for on-duty injury/illness.

b. Notify the Director, Medical Service Section, and provide the names of members who were hospitalized in hospitals other than Washington Hospital Center or Providence Hospital; and

c. Notify the element official who accompanied the member to the hospital, and provide the name of the Case Manager who will be responding, and the estimated time of arrival of the Case Manager, so this information may be communicated to the appropriate hospital personnel.

7. The Director, SOCC, shall:

a. Maintain the log for recording all Clinic-related notifications made to the SOCC. The log shall contain the following information:

(1) The name of the member being admitted to the hospital, the member's element, and the date and time of admittance;

(2) The name of the member making the notification; and

(3) The reason for the notification to the SOCC, the name of the person(s) that the SOCC needs to notify, and the name of the SOCC person recording the notification.

b. Submit a daily telephone report to the Director, Medical Services Section, providing the names of those members admitted to hospitals other than Washington Hospital Center and Providence Hospital.

## VI. PROVISION

In all cases where the provisions of this order are in conflict with orders previously issued, the provisions of this order shall prevail.

## VII. CROSS REFERENCES

A. General Order 206.2 (Granting of Advanced Annual or Sick Leave and Leave Without Pay)

B. GO-OPS-308.04 (Processing of Persons Who May Suffer from Mental Illness)

C. General Order 1001.2 (Optional Sick Leave)

D. Special Order 88-20 (Catastrophic Illness/Injury Donation Program)

E. Special Order 91-5 (Request for Family and/or Medical Leave)

F. Amendment to Teletype 02-005-04, dated November 23, 2004

G. MPD Pregnancy Protocol dated January 16, 2002

//SIGNED//
Charles H. Ramsey
Chief of Police

CHR:SOA:DAH:DHW:MV:jah