# EXHIBIT P

Brown Goldstein & Levy

Andrew D. Levy
ADL@browngold.com

Also a member of the District of Columbia bar

July 14, 2021

**BY EMAIL**
Micah Bluming, Esquire
Assistant Attorney General, Equity Section
Public Interest Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Micah.Bluming@dc.gov

Re: *Steve Pappas, et al. v. District of Columbia and Robert J. Contee III*
U.S. District Court for the District of Columbia
Civil Action No. 19-2800 (RC)

Dear Micah:

I write regarding Defendants' lack of discovery responses. Defendants' delayed and incomplete responses are prejudicing Plaintiffs' ability to litigate this case in a timely fashion. We are eager to work constructively with Defendants to ensure class discovery can conclude by the Court-ordered deadline, but such timely conclusion may prove impossible unless the pace of discovery quickens.

Plaintiffs sent interrogatories and requests for production ("RFPs") to Defendants on May 20, 2021. Defendants' responses were due on June 19. *See* Fed. R. Civ. P. 33, 34. Subsequently, Plaintiffs agreed to Defendants' request to extend the response date to July 3. When Defendants asked that the response date for their answers to Plaintiffs' interrogatories be extended yet again, Plaintiffs agreed but emphasized that this second extension applied only to interrogatory responses and did not affect the July 3 deadline for document production. On July 2, Defendants sent written objections to Plaintiffs' RFPs but produced no documents. "Unfortunately," you stated, "we do not have a production ready today." You provided only the vaguest of explanations—that attorneys were "still working with our client to gather and review responsive documents"—and unilaterally stated you would "be in touch when our first production is ready."

Two weeks later, we are still waiting. Defendants have neither produced documents nor even provided Plaintiffs with the courtesy of an update as to when such production will occur. Moreover, you have indicated (in Defendants' written responses to Plaintiffs' RFPs) that whenever Defendants produce documents, Defendants will not produce all documents requested by Plaintiffs and, with respect to at least two RFPs, will not produce anything at all.

---

These discovery delays are prejudicing Plaintiffs' ability to advance the litigation in a timely manner. For example, two months ago, after Plaintiffs expressed their intention to facilitate document production by noticing a Rule 30(b)(6) deposition of Defendants' records custodian, Defendants urged Plaintiffs to postpone, because it "would impose an incredible burden" and "the need for the deposition could become moot after the production of documents." As we noted in a June 3 email, Plaintiffs were willing to accommodate Defendants and defer the deposition until after receiving Defendants' discovery responses and document production. To date, however, Defendants have not produced a single document.

Finally, as we have explained, Plaintiffs believe an ESI Protocol governing the production of electronic discovery in this litigation would benefit all parties and help head off potential ESI-related disputes down the road. Plaintiffs submitted a draft ESI Protocol to Defendants on June 16, yet we have received no feedback from Defendants on that document. Please send any proposed edits or comments so that we may move forward and finalize that document.

Plaintiffs are concerned that Defendants have misinterpreted our efforts to work collegially and collaboratively with you on discovery as a license to avoid their legitimate discovery obligations. If we do not receive a substantial document production by Monday, July 19, 2021, we will have no alternative but to seek the Court's assistance. Plaintiffs look forward to a prompt response concerning when Defendants will produce documents in accordance with Plaintiffs' RFPs. Plaintiffs also expect Defendants to submit interrogatory responses by July 15 and look forward to Defendants' feedback on the draft ESI Protocol. As always, we are available to discuss these or any other discovery-related issues.

Sincerely,

Andrew D. Levy

ADL/es
cc: Richard Sobiecki, Esquire
Corey Fitzpatrick, Esquire
Ellen Eardley, Esquire
Desiree Langley, Esquire
Eve Hill, Esquire
Jamie O. Strawbridge, Esquire

Brown Goldstein & Levy

Andrew D. Levy
adl@browngold.com

Eve Hill
ehill@browngold.com

Ellen Eardley
eeardley@findjustice.com

August 3, 2021

Micah Bluming, Esquire
Assistant Attorney General, Equity Section
Public Interest Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Micah.Bluming@dc.gov

Re: *Steve Pappas, et al. v. District of Columbia and Robert J. Contee III*
U.S. District Court for the District of Columbia
Civil Action No. 19-2800 (RC)

Counsel:

We are in receipt of your responses to Plaintiffs' First Set of Interrogatories and are writing to initiate resolution of deficiencies in those responses. Before Defendants supplement their responses, Plaintiffs would like to meet and confer on these issues, including deficiencies identified below in Defendants' responses to Interrogatory Nos. 3, 4, 5, 11, 12, 15, and 16. We request supplementation of your discovery responses and an opportunity to meet and confer as soon as possible. We generally are available in the afternoons on August 5 and August 6. Please let us know what dates and time work for you.

## I. Deficiencies Throughout Defendants' Interrogatory Responses.

### A. Boilerplate Objections.

Defendant's responses to Plaintiffs interrogatories are replete with improper, and legally insufficient, boilerplate objections, including in the "General Objections" section of Defendants' response. Defendants' General Objection No. 3, for instance, states in part:

> Defendants object to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome, not reasonably related to the claims in this case, or otherwise vexatious on various grounds, including that they seek information over a time period that is either undefined or so lengthy as to encompass immaterial, irrelevant, or otherwise inadmissible information.

Such boilerplate objections lack validity, *see, e.g.*, *Kinetic Concepts, Inc. v. ConvaTec Inv.*, 268 F.R.D. 226, 241 (M.D.N.C. 2010) (collecting cases), because "[t]he grounds for objecting to

an interrogatory must be stated with specificity," and failure to provide a particularized basis for each objection results in waiver of the objection, *see* Fed. R. Civ. P. 33(b)(4). General Objections Nos. 1–6 are all invalid boilerplate objections.[1] Defendants also include invalid, boilerplate objections in their responses to Interrogatory Nos. 2, 3, 4, 6, 7, 10, 11, 12, 13, 15, 19, 21, and 22. Defendants have waived these objections.

**B. Information That Plaintiffs Already Possess / Public Information**

Defendants object on the grounds that the Interrogatories seek information that Plaintiffs purportedly already possess, or that is a matter of public record. This is not a valid grounds for an objection. *See United States v. All Assets Held at Bank Julius Baer & Co.*, 276 F.R.D. 396, 399 (D.D.C. 2011) ("The fact that the information sought is equally available to the interrogator, or is a matter of public record, does not render the interrogatories objectionable."). This improper objection is made in the General Objections and also in response to Interrogatory No. 2.

**C. Objections Based on Vagueness / Ambiguity of Certain Terms.**

Defendants repeatedly object that they did not understand the meaning of words or phrases used by Plaintiffs—even though these words and phrases have common meanings, and, in some cases, were used by Defendants in their own discovery requests to Plaintiffs. This evidences the kind of gamesmanship that is not allowed in discovery. Defendants object to Plaintiffs' use of the terms "support" and "tend to support" in Interrogatory No. 2, for example, claiming these terms are "vague, ambiguous and undefined." But Defendants used these same terms—without an accompanying definition—in their own written discovery requests. Defendants' Interrogatory No. 5 ("Identify all facts that *support* your contention that you were retired from your position with MPD on the basis of MPD's disability retirement policy.") (emphasis added); Defendants' Interrogatory No. 10 ("Identify each person having discoverable information that *tends to support* a position that you have taken or intend to take in this action . . . .") (emphasis added). Defendants include baseless objections based on purported vagueness or ambiguities in their General Objections and in their responses to Interrogatories Nos. 2, 3, 4, 5, 15, 18, 19, 20, 21, 22, and 23.

**D. Referrals to Defendants' Document Production.**

Instead of expressly answering each Interrogatory, Defendants repeatedly refer Plaintiffs to unspecified documents in their document production. *See, e.g.*, Defendant's Response to Interrogatory No. 2 (referring Plaintiffs to "[i]ndividuals identified in documents produced by defendants in response to plaintiffs' Request for Production of Documents" rather than listing all such individuals). This is inappropriate. *See Bank Julius Baer & Co.*, 276 F.R.D. at 399

[1] In their General Objections, Defendants also state, "In seeking the disclosure of information sought in the Interrogatories, plaintiffs are understood to waive all privileges, protections or claims relating to the subject of the disclosure." Plaintiffs reject this assertion.

("[I]nterrogatory responses that direct [the requesting party] to [the opposing party's] document production generally . . . are not an adequate alternative to answering interrogatories."). Defendants must supplement their responses in order to fully answer all Interrogatories expressly and without allusions to unspecified documents. In addition to Interrogatory No. 2, this problem occurs in Defendants' responses to Interrogatories Nos. 3 & 10.

**E. Relevant Time Period for the Interrogatories.**

Defendants repeatedly object to Interrogatories because they are not "time-limited." Plaintiffs defined the relevant time limitation in General Instruction No. 6, which states that, "unless otherwise indicated, the scope of these interrogatories shall be from January 1, 2012, until the Present." There is no basis for Defendants' objections. Relatedly, Defendants argue that Interrogatories Nos. 13, 15, and 18 are vague and ambiguous because verbs contained therein are "stated in the present tense." This is the kind of gamesmanship that is not allowed in discovery. As stated in the instructions accompanying the Interrogatories, the relevant time period for all Interrogatories is January 1, 2012 unless another time period is expressly provided.

In responses to Interrogatories Nos. 7, 8, 9, 12, and 14, Defendants also object to the time period of January 1, 2012 until the Present as "significantly longer . . . than is relevant to plaintiffs' claims." Not so. Because all named Plaintiffs were employed by MPD in 2012, and three named Plaintiffs were injured in 2013 or 2014, a 2012 start date is appropriate. Similarly, because the purported Class includes members that are currently serving as MPD officers, Plaintiffs appropriately ask for information up to the present day.[2]

**F. Objections to the Extent Information is Protected by "a Privilege."**

Defendants repeatedly object to Plaintiffs' Interrogatories because they seek information that is protected by "a privilege." Because Defendants do not identify the "privilege" at issue, the objection is impermissibly vague and invalid. *See* Fed. R. Civ. P. 33(b)(4). This occurs in Defendants responses to Interrogatories Nos. 6, 7, 10, 11, 12, 13, 15, and 21.

[2] Confusingly, Defendants repeatedly object but then appear to endorse the same time period advanced by Plaintiffs. In response to Interrogatory Nos. 7, 9 and 12, for instance, Defendants object to "what plaintiffs define as the relevant period," because such period "impose[s] an undue burden on the District because it would require the District to provide a response covering a significantly longer period of time than is relevant to plaintiffs' claims." Defendants then state they "will limit [their] response to the period of time after January 1, 2012." To the extent Defendants' time period differs from Plaintiffs' in these or other Interrogatory responses, Defendants must explain how it differs, as that is not clear from Defendants' responses.

---

## II. <u>Specific Interrogatory Responses.</u>

***Interrogatory No. 2***

Defendants' objection that "support" and "tend to support" are "vague, ambiguous, and undefined" is misplaced. These terms are commonly used and have ordinary meanings that require no definition. Indeed, Defendants used these same terms in written discovery requests to Plaintiffs without defining them. *See* Section I.C, *supra.* For clarity, as the D.D.C. has recognized, "support" means "contributing to the success of," *see Level the Playing Field v. Fed. Election Comm'n*, 232 F. Supp. 3d 130, 139 n.6 (D.D.C. 2017), and Plaintiffs use this definition here.

Next, Defendants object to the Interrogatory "to the extent that it seeks information about individuals whose knowledge of the allegations or defenses may be covered by the attorney-client or attorney work product privileges." Plaintiffs do not seek information protected by the attorney-client privilege or work-product doctrine. But the attorney-client privilege applies only to communications between a client and attorney, *e.g.*, *Neuder v. Battelle Pac. Nw. Nat. Lab'y*, 194 F.R.D. 289, 292 (D.D.C. 2000)—not "knowledge" of factual allegations or facts supporting Defendants' denials or affirmative defenses. Similarly, the work product doctrine is only relevant for thoughts and opinions developed in anticipation of litigation. *United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010). It is not clear to Plaintiffs why the attorney-client privilege or work product doctrine would preclude Defendants from identifying, for instance, District employees (apart from counsel) with knowledge of the allegations at issue here.

Defendants' objection that the Interrogatory seeks information already known or available to Plaintiffs is improper. *See Bank Julius Baer & Co.*, 276 F.R.D. at 400.

Defendants also contend that stating, for each listed individual, the "subject(s) to which their knowledge relates" is "vague and ambiguous and imposes an undue burden on defendants." Not so. This Interrogatory mirrors Fed. R. Civ. P. 26, which requires Defendants to identify each individual likely to have discoverable information "along with the subjects of that information." An Interrogatory that mirrors the Federal Rules is not "vague and ambiguous" and does not impose an "undue burden." Defendants must state all subjects of the listed individuals' knowledge—to the extent Defendants have not done so, they must supplement their responses.

In their response, Defendants also improperly refer Plaintiffs to "[i]ndividuals identified in documents produced by defendants in response to plaintiffs' Request for Production of Documents." This is not a valid response. *See Bank Julius Baer & Co.*, 276 F.R.D. at 399 ("[I]nterrogatory responses that direct [the requesting party] to [the opposing party's] document production generally . . . are not an adequate alternative to answering interrogatories."). Defendants must supplement their response in order to identify all persons with knowledge of certain facts, as requested in the Interrogatory.

Plaintiffs also note that Defendants have yet to provide a verification for its response to Interrogatory No. 2, which Plaintiffs urge Defendants to do promptly.

***Interrogatory No. 3***

Defendants' objection that this Interrogatory is "improperly compound" and "contains multiple subparts" is misplaced. This Court has rejected the "draconian approach of counting every subdivision of an interrogatory as a separate question," *Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 11 (D.D.C. 2004), and instead counts as one an interrogatory with multiple sub-questions if, as here, the questions relate to the same topic. This objection also is impermissibly vague, because Defendants do not explain why the subparts "are properly viewed as separate and distinct interrogatories." *See* Fed. R. Civ. P. 33(b)(4).

Defendants also make a boilerplate objection that the Interrogatory is "unduly burdensome, vague and ambiguous, not proportional, and as seeking information that is not reasonably calculated to lead to the discovery of admissible evidence." That is improper. *See* Fed. R. Civ. P. 33(b)(4). Defendants fail to specify a single vagary or ambiguity and also fail to provide any explanation as to why the Interrogatory is "unduly burdensome." *See, e.g.*, *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000) ("the objecting party must make a specific, detailed showing of how the interrogatory is burdensome").

Defendants' objection that the Interrogatory is "not proportional" to the needs of this litigation also lacks merit. Plaintiffs allege that Defendants violated federal law by implementing a policy or practice of forcing MPD officers with disabilities "who spend 172 cumulative workdays over a two-year period in less than full-duty status into disability retirement, with no possibility of reasonable accommodation . . . ." Second Am. Compl. ¶ 3. This Interrogatory asks Defendants to provide information concerning MPD officers who were forced to retire, including (1) the number of days the officer had accrued in a less than full-duty status before being referred for disability retirement, and (2) whether MPD offered any accommodations to such officers before referring them to the Retirement Board. This information is central to Plaintiffs' claims and thus is not out of proportion with the needs of the litigation. Defendants also decline to provide other requested information, such as the salaries of the retired officers, even though that information is central to any damages calculation and thus also "proportional" to the needs of the litigation.

Rather than providing all requested information, Plaintiffs have provided two exhibits that introduce new uncertainties into the litigation, as follows:

- Exhibit A identifies officers who were both referred to the Retirement Board and "who the [Retirement Board] recommended should be retired because of a disability since 2012," while Exhibit B purports to list officers "who were referred to the [Retirement Board] since 2017." The Exhibit B description appears inaccurate, because Exhibit B does not include officers (listed in Exhibit A) who were referred to the Retirement Board since 2017 and

retired due to a disability. Defendants must clarify if Exhibit B lists only officers who were referred to the Retirement Board since 2017 but for whom no decision has been issued.

- For almost all listed individuals, Exhibit B states the Retirement Board decision is "N/A." Defendants must clarify the meaning of "N/A" and, to the extent it means no Retirement Board decision ever was issued for such listed individuals, Defendants must explain why not and clarify whether such individuals returned to full-duty status and when this occurred.

- Exhibit A appears to contain incomplete information. For instance, Exhibit A does not list Noel Rivera even though Mr. Rivera was retired due to disability in 2013. Defendants must clarify whether Exhibit A lists only those individuals who were both referred to the Retirement Board and retired due to disability since 2012.

Finally, Defendants partly answer this interrogatory by referring to information "in documents relating to the individuals identified on Exhibits A and B that will be produced by the District." That is improper, *see Bank Julius Baer & Co.*, 276 F.R.D. at 399, and Defendants must expressly provide the information in a supplemental response rather than referring to documents.

Defendants must supplement their response in order to respond fully to this Interrogatory. Defendants have failed to answer Interrogatory sub-parts (c), (d), (f), (g), (h), (i), (j), (k), (l), (m), and (n). Further, it is not clear to Plaintiffs why the information contained in Exhibit B starts in 2017, rather than January 1, 2012, as requested by Plaintiffs. Plaintiffs request to meet and confer with Defendants about these and other issues.

***Interrogatory No. 4***

Defendants' boilerplate objection that this Interrogatory is "improperly compound" and "contains multiple subparts" fails due to lack of specificity, *see* Fed. R. Civ. P. 33(b)(4), and because all sub-parts relate to the same subject, *see Banks*, 222 F.R.D. at 11. Defendants' other objections all center on the fact that the Interrogatory asks Defendants to identify the "fields of information" maintained in Defendants' databases, which Defendants argue is "unduly burdensome, vague and ambiguous, not proportional, and as seeking information that is not reasonably calculated to lead to the discovery of admissible evidence." This objection is baseless, because Defendants provide no indication of how many fields are stored in each of the databases Defendants identify and thus fail to explain why the Interrogatory is unduly burdensome.

At the least, Defendants must state whether each listed database contains the specific information categories identified in the Interrogatory (e.g., requests for Accommodations, leaves of absences, Limited Duty Status assignments, etc.). These information categories are central to the claims in the case, and Plaintiffs have a right to learn how Defendants store this critical information in the normal course of business. Defendants' suggestion that Exhibits A & B "identify . . . many of the fields of information stored in MPD human resources databases" is

inadequate, including because it fails to clarify which specific fields of information included in Exhibits A & B are stored in MPD databases and thus does not adequately answer the Interrogatory. Plaintiffs request to meet and confer on this Interrogatory response.

***Interrogatory No. 5***

Defendants' objection that this Interrogatory is "overly broad, unduly burdensome, and [] not calculated to lead to admissible evidence because it pertains to vacancies throughout the entire District government regardless of relevance to the claims in this case" is misplaced. Plaintiffs allege that Defendants should have offered reassignment to vacant job positions elsewhere in the D.C. Government as a reasonable accommodation. In light of that allegation, all job vacancies throughout the D.C. government during the relevant time period are relevant to Plaintiffs' claims; the existence of one vacancy shows that reassignment was possible, and the existence of many vacancies shows that reassignment was reasonable.

Further, the terms "tracks" and "vacant" are not vague and ambiguous. These terms are commonly used and have ordinary meanings that require no definition. Indeed, Defendants use the term "track" in their own responses to Interrogatory Nos. 10 & 11 in a similar context and without any apparent confusion. For clarity, Merriam-Webster defines "vacant" to mean "not occupied by an incumbent, possessor, or officer"; when Plaintiffs inquire about "vacant" positions, they use the term in this sense. When Plaintiffs inquire about systems used to "track" vacant positions, they inquire about systems used to identify vacant positions in the D.C. government.

In their response, Defendants state that, at present, PeopleSoft eRecruit is used to identify vacant positions "at some, although not all, agencies across the District government." Defendants must supplement their response to clarify whether any other systems currently are used to identify vacant positions across the D.C. Government and, for those agencies for whom PeopleSoft eRecruit does not identify job vacancies, how job vacancies are identified at those agencies.

***Interrogatory No. 6***

Defendants' boilerplate objection that this Interrogatory is "improperly compound" and "contains multiple subparts" fails due to lack of specificity, *see* Fed. R. Civ. P. 33(b)(4), and because all sub-parts relate to the same subject, *see Banks*, 222 F.R.D. at 11. Defendants also improperly object "to the extent this Interrogatory seeks information that is protected from disclosure by a privilege or by the work product doctrine." Defendants must specify the "privilege" to which they refer. In any event, Plaintiffs do not seek privileged material or work product, but it is unclear to Plaintiffs why this Interrogatory—which asks basic information about Defendants' policies—would implicate either that privilege or that doctrine.

Defendants also improperly state they "will not respond" to the part of the Interrogatory that "seeks the reasons why a policy was changed from a prior version." Defendants provide no

explanation as to why giving such reasons would be "unduly burdensome." In litigation that centers on Defendants' policies concerning compliance with Title I of the ADA, it is not unduly burdensome to explain why, for instance, Defendants decided that General Order GO-PER-100.14 should supersede Special Order SO-17-05, because both policies concern MPD's compliance with the ADA. And the policies do not "speak for themselves" because they do not explain why changes were made from prior versions. Defendants must supplement their response to this Interrogatory.

Defendants' response to this Interrogatory also appears incomplete. The Interrogatory asks Defendants not only to identify the "current policy or policies Concerning disability discrimination complaints and requests for Accommodations from MPD officers," but also all "prior policies" concerning disability discrimination complaints and requests for Accommodation, dating back to January 1, 2012. Please confirm that, prior to June 30, 2017, the only policies "concerning disability discrimination complaints and requests for accommodations from MPD officers" were (1) General Order GO-PER-201.09, (2) Special Order SO-00-19, and (3) Circular CIR-08-02.

***Interrogatory No. 7***

In response to Interrogatory No. 6, Defendants identified six policies "concerning disability discrimination complaints and requests for accommodations from MPD officers." Interrogatory No. 7 asks Defendants to explain "when and how" these policies "were Communicated to MPD employees and to the Police and Fire Clinic." To the extent Defendants object to the time period defined by Plaintiffs—January 1, 2012 until the Present—the objection is meritless. Because three Plaintiffs were injured in 2013 or 2014 and forced to retire in 2015, "when and how" Defendants communicated their policies concerning discrimination complaints and accommodation requests since 2012 is relevant to Plaintiffs' claims. Moreover, the Class in this litigation is comprised of officers who were employed between December 9, 2014 and the date that class certification is granted, meaning that more recent communications concerning these policies are relevant.

Defendants also improperly object "to the extent this Interrogatory seeks information that is protected from disclosure by a privilege or by the work product doctrine." Defendants must specify the referenced "privilege," for reasons explained Section I.F, *supra*.

Defendants also object to the Interrogatory as unduly burdensome to the extent it requires them "to identify every email that references the communication of the policies." Defendants provide no information concerning the volume of such emails; regardless, Defendants are willing to meet and confer on this particular issue. That said, Defendants' response clearly is insufficient. Defendants provide no information regarding how MPD communicated SO-17-05 and CIR-08-02 to officers via written means, even though, according to Defendants, both orders were published after MPD started using Teletype and email announcements to communicate new orders. Defendants also provide no information concerning how GO-PER-201.09 was communicated to officers other than to suggest the order was "posted for employees to view on the MPD Intranet." Absent a supplemental response, Plaintiffs will assume this was the only way that GO-PER-201.09

---

was communicated to officers. Defendants provide no information concerning whether and how the aforementioned policies were communicated to officers via non-written means. If Defendants do not provide additional information, Plaintiffs will assume no such additional information exists.

***Interrogatory No. 8***

Defendants' response is incomplete because it does not state, for each individual listed, "the department/agency that employed them." Please also clarify which individuals are "no longer employed by Defendants," meaning the District of Columbia, as requested by the Interrogatory.

***Interrogatory No. 9***

Defendants' objection that this Interrogatory imposes an undue burden is meritless. The specific allegations on behalf of the named plaintiffs concern events transpiring from 2013 through 2015, and the Class is defined to include officers employed by Defendants from 2014 to Present. Given that factual background, asking about lawsuits, administrative actions, or other dispute resolution proceedings alleging ADA violations from 2012 to the Present is relevant to the claims.

Defendants' response is incomplete. For the matters listed in Exhibit C, please provide "[t]he disposition of the complaint and the date thereof," as requested in the Interrogatory.

***Interrogatory No. 10***

Defendants' objection that this Interrogatory is "improperly compound" and "contains multiple subparts" is misplaced, because all sub-parts relate to the same general topic, *see Banks*, 222 F.R.D. at 11, and Defendants offer no explanation as to why the "subparts" here "are properly viewed as separate and distinct interrogatories." *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). For reasons explained in Section I.F., *supra*, Defendant's objection concerning information protected by "a privilege" also fails.

Defendants also object to this Interrogatory as "unduly burdensome" because "the District does not maintain records that separately track the number of days officers work in less-than-full-duty status." This explanation is not tenable. EO-18-009 states that MPD "shall process for retirement, pursuant to the 'Omnibus Public Safety Amendment Reform Act of 2004,' those MPD sworn members who spend all or part of 172 cumulative work days in a less-than-full-duty status over any two-year period." Further, it is undisputed that MPD does, in fact, process for retirement those officers who spend 172 cumulative work days in a less-than-full-duty capacity over a 24-month period—as Defendants underscored in Exhibits A & B. If both D.C. law and EO-19-009 already require MPD to track this information, and MPD is, in fact, tracking this information in order to process officers for disability retirement, then it is not "unduly burdensome" to provide that same information in a usable format to Plaintiffs as requested in this Interrogatory. Plaintiffs request to meet and confer with Defendants on this issue.

---

Finally, Defendants suggest that part of their response to this Interrogatory will be found in "documents relating to the individuals identified on Exhibits A and B that will be produced by the District." This is not appropriate. *See Bank Julius Baer & Co.*, 276 F.R.D. at 399.

***Interrogatory No. 11***

Defendants' boilerplate objection that this Interrogatory is "compound" is inappropriate, *see Banks*, 222 F.R.D. at 11, and the objection that the time period is inappropriate fails for reasons already explained. Similarly, the objection that this Interrogatory asks for information protected by "a privilege" fails for reasons discussed in Section I.F, *supra*. To the extent Defendants also object because "it would require significant time and resources to . . . compile the requested information in one document," the objection fails to specify in adequate detail the time and resources that would be required or alternative means of conveying the information are not feasible, and thus the objection is invalid. *See, e.g.*, *Alexander*, 192 F.R.D. at 53 ("the objecting party must make a specific, detailed showing of how the interrogatory is burdensome"). Defendants also improperly refer to a document production in their response, an issue discussed in Section I.D, *supra*. Defendants must answer this Interrogatory. Plaintiffs request to meet and confer with Defendants about their failure to answer this Interrogatory.

***Interrogatory No. 12***

Information concerning all MPD officers (regardless of disability status) that were reassigned to a non-officer position within MPD or were reassigned to another position in the DC Government is directly relevant to this lawsuit, Defendants' objection notwithstanding. The frequency of such reassignments for all officers, and the type of reassignments that have occurred for all officers, is directly relevant to whether reassignment is a reasonable Accommodation for officers with disabilities. Defendants improperly limit their response to "MPD officers who were reassigned or transferred because of a disability." Defendants must supplement their response in order to fully respond to this Interrogatory.

***Interrogatory No. 13***

Defendants' boilerplate objection that this Interrogatory is "compound" is inappropriate. *See Banks*, 222 F.R.D. at 11. The objection based on "a privilege" that is not specified also is inappropriate for reasons explained in Section I.F, *supra*. The objection based on time period and use of the present tense is inappropriate for reasons explained in Section I.E, *supra*. Defendants also object that the Interrogatory does not define the term "responsible for." This is a common phrase that needs no definition. For clarity, the term "responsible for" is defined by Merriam-Webster to mean "liable to be called to account as the primary cause, motive, or agent." Finally, to evaluate and/or monitor the impact of the policy on MPD's federal- and D.C.-law obligations means to evaluate whether the policy as implemented complied with those laws.

---

Defendants must provide the information requested in this Interrogatory. Defendants have provided no information in response to sub-parts (b) and (c), and with respect to (a), have only stated that MPD orders were written by MPD—an apparent redundancy that appears designed to circumvent Defendants' obligations to answer the Interrogatory.

***Interrogatory No. 15***

Defendants' boilerplate objection that this Interrogatory is "compound" is inappropriate. *See Banks*, 222 F.R.D. at 11. The objection based on "a privilege" that is not specified also is inappropriate for reasons explained in Section I.F, *supra*. Defendants also object to this Interrogatory as "vague and ambiguous" because it "does not specify a time period." But Plaintiffs instructed that, "[u]nless otherwise indicated, the scope of these interrogatories shall be from January 1, 2012, until the Present." Because this Interrogatory does not state a different time period, Defendants are required to provide the requested information with respect to each requested policy from January 1, 2012 until the Present.

Defendants also object because the Interrogatory does not define "MPD policies." "Policy" is a common term that requires no definition. And "MPD policies" are simply those policies that apply to MPD and MPD personnel. "Determining" and "facilitating" are also common words. For clarity, to "determine" whether an officer is qualified for a vacant position within DC government means to decide whether the officer is so qualified. According to Merriam-Webster, to "facilitate" reassignment or transfer to such vacant position means to "help bring about" such reassignment or transfer. Finally, Defendants cannot evade this Interrogatory by stating, "to the extent specific policies exist addressing the specific topics," they are listed elsewhere in the responses—Defendants must provide a definitive response to this Interrogatory.

***Interrogatory No. 16***

Defendants' objection to this Interrogatory is misplaced. Central to Plaintiffs' claims is that job vacancies in MPD and the broader DC Government existed at or around the time Plaintiffs were forced to retire and, further, that Defendants were required by law to offer transfer or reassignment to these vacant job positions to Defendants as a reasonable Accommodation. Because the existence of job vacancies is central to Plaintiffs' claims, and because Defendants have custody and control over this information, providing it to Plaintiffs is not unduly burdensome. Plaintiffs reject the non-answer by Defendants and request to meet and confer on this issue.

***Interrogatory No. 19***

Defendants' boilerplate objection that this Interrogatory is "compound" is inappropriate. *See Banks*, 222 F.R.D. at 11. The term "responsibilities" also is not "vague and ambiguous." Indeed, its common usage is underscored by the fact that Defendants use the term twice in their

response to this Interrogatory. For clarity, when Plaintiffs inquire about whether PFC Clinic has any "responsibilities" Concerning approval or disapproval of an Accommodation for officers, for instance, Plaintiffs are asking whether PFC plays any part in approving or disapproving an Accommodation for officers. To the extent Defendants would like to clarify the meaning of the term "responsibilities" as used by both parties here, Plaintiffs are willing to meet and confer.

***Interrogatory No. 21***

Defendants objection based on "a privilege" that is not specified is baseless for reasons explained in Section I.F., *supra*. The objection based on purported ambiguities in the word "how" also is baseless. "How" MPD and PFC Clinic determine whether an officer can return to full-duty status means the process by which such a determination is made.

***Interrogatory No. 22***

Defendants objections are misplaced. For instance, the Interrogatory is not improperly compound because the sub-parts all relate to the same question. *See Banks*, 222 F.R.D. at 11. The reasons provided by Defendants for claiming this Interrogatory is "vague and ambiguous" also are meritless; each of the terms to which Defendants object are common terms that require no definition. For instance, Defendants objects that the Interrogatory does not define the term "sworn officer," even though MPD commonly uses this term to describe MPD officers. *E.g.*, Welcome to the Metropolitan Police Department, https://mpdc.dc.gov/page/welcome-metropolitan-police-department (noting that MPD has "3,900 sworn police officers and nearly 500 full-time equivalent civilian employees). To the extent Defendants require further definitional clarifications and contact Plaintiffs regarding the same, Plaintiffs are willing to meet and confer on this issue.

***Interrogatory No. 23***

Defendants' objections to this Interrogatory lack merit. First, the term "DC Government agency" is not "vague and ambiguous," but rather is a term commonly used by the D.C. government. For clarity, when Plaintiffs refer to a "DC Government agency," they refer to the entities listed in the "Agency Directory" of the District of Columbia government, available at https://dc.gov/directory. Second, "disability-related" or "disability-related Accommodation" are not ambiguous terms, but, for clarity, a "disability-related Accommodation" is an Accommodation granted to an individual with a disability because of that disability. Third, Defendants note the Interrogatory refers to "leave" but "does not specify that this must be disability leave." The term "disability leave" unnecessarily introduces new ambiguities. Defendants should identify agencies that, as an accommodation under the ADA and/or Section 504, allow employees to remain on leave (no matter whether the leave is called sick leave, disability leave, or something else) for more than 172 cumulative workdays over any 24-month period. Fourth, the terms "referring" and "retirement proceedings" are not vague or ambiguous. "Retirement proceedings" means those proceedings pursuant to which a District employee is processed for retirement. An agency "refers" an employee

---

to "retirement proceedings" by requiring that the employee to go through "retirement proceedings" and be processed for retirement, regardless of the outcome of those proceedings.

Finally, Defendants object that the Interrogatory is "unduly burdensome" because it requires them to evaluate each agency for the "two criteria specified, even though the relevance of the requested information is not apparent." That objection is baseless. Central to Plaintiffs' claims is the allegation that reassignment to other vacant positions within the D.C. government was a reasonable accommodation that Defendants failed even to offer to Plaintiffs. To the extent other D.C. Government agencies offer reassignment as an Accommodation, but MPD does not, it underscores that reassignment would be a reasonable Accommodation under the ADA. MPD has offered no explanation as to why it cannot identify those D.C. Government agencies that offer reassignment as an Accommodation to employees with disabilities. Moreover, Plaintiffs allege that MPD refers for disability retirement officers who spend more than 172 cumulative workdays over any 24-month period in less-than-full-duty status, without allowing officers to spend more time recovering from an injury or illness before such referral occurs. To the extent other agencies allow employees longer recovery periods, it strengthens Plaintiffs' claim that such longer recovery periods would be a reasonable Accommodation under the ADA. Both of these "two criteria" are relevant, and Defendants must supplement their responses to fully answer this Interrogatory.

Sincerely,

Ellen Eardley
Mehri & Skalet, PLLC

Andrew D. Levy
Brown Goldstein & Levy, LLP

Brown Goldstein & Levy

James O. Strawbridge
jstrawbridge@browngold.com

August 18, 2021

**BY EMAIL ONLY**
Micah Bluming, Esquire
Richard Sobiecki, Esquire
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Micah.Bluming@dc.gov
Richard.Sobiecki@dc.gov

Re: *Steve Pappas, et al. v. District of Columbia and Robert J. Contee III*
U.S. District Court for the District of Columbia
Civil Action No. 19-2800 (RC)

Dear Micah and Rich:

I write to follow up on items discussed during our meet & confer yesterday (August 17, 2021). Please let us know if you have any questions or if you'd like to discuss further.

**Retirement Board Orders & Decisions**

Defendants have not produced orders and decisions from the Police and Firefighters Retirement and Relief Board ("PFRRB") for all officers listed in Exhibit A to Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories. In particular:

- Defendants have not produced a decision or order for two individuals: Steve Pappas and Nicholas Donato.[1]
- Defendants have produced decisions, but not accompanying orders, for Aurelia Parks, Kristofer Todd, Eduardo Vazquez, Eric A. Adgerson.
- At DC_Pappas00000373, Defendants produced a decision and order for "Letha Green." Please confirm this same officer is referred to as "Letha Adams" in Exhibit A to Defendants' First Responses and Objections to Plaintiffs' First Set of Interrogatories.

[1] At DC_Pappas00000911, Defendants produced an order and decision concerning Mr. Donato's Petition for Reconsideration and Request for a Stay. However, Defendants have not produced the prior order and decision that determined Mr. Donato would be disability retired.

**Objections**

In his August 16, 2021 letter ("August 16 letter"), Mr. Sobiecki stated that Defendants had completed their production in response to several RFPs. Plaintiffs understand that Defendants have not withheld any documents (other than privileged documents) on the basis of their objections to such RFPs. If that is incorrect, please let us know.

**RFP 1**

This RFP asked for "[a]ll policies, procedures, and guidelines Concerning requests for, or grants or denials of, disability-related Accommodations for MPD officers." Although the August 16 letter states that Defendants have completed production, that does not appear to be the case. Plaintiffs' RFPs asked for both current and prior versions of responsive policies, procedures, and guidelines. *See* RFP General Instructions No. 14. It appears that Defendants have not produced responsive policies in place since 2012 that have been rescinded, including:

- CIR-07-05 (People First Respectful Language Modernization Act of 2006), Effective date June 28, 2007; and

- EO-17-020 (Members Rights and Responsibilities Concerning Disability Retirement and Americans with Disabilities Act Accommodations), Effective Date June 30, 2017.

Please produce these and any other outstanding responsive documents.

**RFP 2**

RFP 2 asked, in part, for "[a]ll policies, procedures, and guidelines Concerning [] the placement of MPD officers on Limited Duty Status or on leave (paid or unpaid)." Although the August 16 letter states that Defendants have produced all responsive documents, it appears some responsive documents may have been omitted from production. Plaintiffs urge Defendants to ensure no responsive documents have been omitted, including:

- Policies

    - The document produced by Defendants at DC_Pappas7 states that "[t]he policy regarding limited duty . . . can be obtained from an Official at the Police & Fire Clinic." Please produce this policy if it has not been produced already;

    - GO-PER-206.2 (Granting Advanced Annual or Sick Leave and Leave without Pay), Effective Date August 5, 2019;

---

- GO-PER-206.02 (Granting of Advance Annual or Sick Leave and Leave Without Pay), Effective Date May 7, 1978;
- SO-83-86 (D.C. Standard Form 1199 (Request for Advanced Leave or Leave Without Pay), Effective Date April 27, 1983;
- SO-90-17 (LWOP Notifications), Effective Date November 29, 1990;
- GO-PER-100.12 (Optional Sick Leave Program);
- GO-PER-206.01 (Time and Attendance);
- Special Order 88-20 (Catastrophic Illness/Injury Donation Program);
- Special Order 91-5 (Request for Family and/or Medical Leave);
- Amendment to Teletype 02-005-04 (dated November 23, 2004); and
- MPD Pregnancy Protocol (dated January 16, 2002).

- Forms: It appears MPD uses a number of forms to document duty status when placing members on limited duty or leave. Plaintiffs understand that such forms may not have been considered when Defendants performed their document search and request that Defendants ensure no responsive forms concerning placement on limited duty/leave have been omitted, including:
    - Per DC_Pappas7, "members are required to present written authorization signed by a Clinic Liaison Official in order for them to work in a limited duty capacity." No such authorization form has been produced;
    - PD Form 42 (describes injury/illness and if it is POD/non-POD);
    - PD Form 305 (Certification for Limited Duty / Extended Limited Duty Evaluation); and
    - PD Form 77 (revocation/restoration of police powers and notice of duty and pay status).

---

**RFP 6**

RFP 6 requested "[a]ll Documents Concerning Plaintiffs' POD or non-POD Injuries/Illnesses or disabilities." Although the August 16 letter states that Defendants have completed production, some documents appear to be missing. In particular:

- Files for Named Plaintiffs
    - As explained during the August 17 meet & confer, Defendants have produced PFRRB files for Tawana Lindsay and Nichole Mathies, but not for the other two named plaintiffs (Steve Pappas and Malachi Malik).[2]
- Other Documents
    - Defendants' assertion that production is complete notwithstanding, Plaintiffs understand (based on the August 17 meet and confer) that defense counsel continues to look for responsive documents, including documents that may be in the custody of the MPD ADA Coordinator(s).
    - Plaintiffs reiterate that documents "Concerning" Plaintiffs' Injuries/Illness or disabilities" would include 86-day letters (informing Plaintiffs they have used more than half of the 172-day allotment),[3] letters from MPD's Medical Services Division to officers Plaintiffs notifying them of Initial Disability Appointments;[4] MPD's recommendations to the PFRRB that the Plaintiffs should be processed for disability retirement, and other documents.

Plaintiffs understand these missing documents may be produced soon by Defendants, and that some (or all) may be included in the forthcoming Plaintiffs' personnel files. As an initial step, Plaintiffs intend to review the personnel files soon after they are produced to determine whether devising keywords/custodians for further searches is necessary.

---

[2] With respect to Mr. Malik, Defendants have produced a PFRRB order and decision only. With respect to Mr. Pappas, Defendants have not produced any records.

[3] The use of 86-day letters is outlined in EO-18-009.

[4] Such letters are required under PER-100-11.

**RFP 7**

*Sub-parts a–e*

As discussed at the August 17 meet and confer, and Defendants' August 16 letter notwithstanding, Defendants have not provided to Plaintiffs all of the information requested in sub-parts a through e of this RFP. In particular:

- Job Information
  - Defendants have not produced the job title/position and bureau at the time the officers listed in Exhibits A & B to Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories were hired (sub-part c).
- Salary Information
  - Defendants have not produced information concerning officers' salaries at the time of hire and at the time of retirement (subpart d).[5]
  - Plaintiffs understand that Defendants plan to produce a table showing salaries for MPD officers since 2012 at various GS grades/steps. This may be helpful if Plaintiffs can use this table and other information provided by Defendants in order to determine the starting salaries of the MPD officers listed in Exhibits A & B.

*Sub-parts f, g, & h*

Plaintiffs understand that Defendants are working on producing responsive documents, including documents showing the daily duty status of MPD officers and certain payroll records. Per the August 16 letter, Plaintiffs also understand that Defendants continue to look for "missing information" that is responsive to sub-part f.

*Sub-parts i–l*

Plaintiffs understand that Defendants are conducting electronic document searches in order to produce documents responsive to sub-parts i–l, starting with emails sent/received by

[5] As noted in the August 17 meet and confer, the produced PFRRB decisions state the salaries at the time of retirement for the officers in Exhibit A. If Defendants are willing to stipulate that these salaries at retirement are accurate, Plaintiffs see no need for Defendants to provide further documentation of the salaries at the point of retirement for officers listed in Exhibit A.

---

MPD ADA Coordinators since 2012 that contain the names of officers listed in Exhibits A & B to Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories. Plaintiffs also understand that Defendants will search any ADA Coordinator files that may exist.

As discussed during the meet and confer, once Defendants establish the quantity of emails from ADA Coordinators to officers in Exhibits A & B, Plaintiffs and Defendants will work together to determine whether more specific search terms are needed to narrow the universe of "hits" and facilitate review by Defendants for responsive documents.

**RFP 8**

Plaintiffs understand that Defendants are working to produce complete PFRRB files for Steve Pappas and Malachi Malik, which have not yet been produced.

**RFP 10**

RFP 10 requests "all Documents Concerning whether Accommodations for Plaintiffs would result in an undue burden or fundamental alteration for Defendants." In the August 16 letter, Defendants state that "the District is not currently able to estimate the time it will take to collect, review, and produce these documents." As explained during the August 17 meet and confer, Plaintiffs request these documents in order to understand, and respond to, Defendants' potential defenses. Defendants must produce these documents before the end of class discovery so that Plaintiffs can review them and depose relevant individuals about their contents.

**RFP 11**

RFP 11 requests "All Documents in Plaintiffs' Employee Files, including Retirement Board files, Police & Fire Clinic files, ADA files, or other employment related files. This Request includes Documents Concerning Accommodations for Plaintiffs."

Plaintiffs understand Defendants will produce Retirement Board files for Mr. Pappas and Mr. Malik, which have yet to be produced, and also will produce Plaintiffs' personnel files.

Plaintiffs also understand Defendants are reviewing how MPD ADA Coordinator(s) have kept files/records and whether responsive materials are contained therein or in the emails of such ADA Coordinators. Regarding custodians, as Plaintiffs noted during the meet and confer, current MPD policy also appears to require the ADA Coordinator to submit disability-related findings to the Director of the Human Resource Management Division. *See* PER-100.14 p. 8. Plaintiffs also believe responsive information may be kept by MPD's Medical Services Division.

---

**RFP 13**

RFP 13 requests "All Documents Concerning how MPD or DC Government employees should respond to requests for Accommodations from MPD officers." Although the August 16 letter states that Defendants have completed production of responsive documents, Plaintiffs understand that Defendants continue to look for documents concerning trainings for MPD supervisors concerning how supervisors should respond to requests for accommodations.

Plaintiffs also understand, based on the August 17 meet and confer, that ADA training materials may not be centrally stored, and that such materials may need to be located via searches of ADA Coordinator emails using keywords. If so, Plaintiffs suggest:

- Defendants could search ADA Coordinator emails for any emails (inbox or outbox) containing ("training" or "education" or "tutorial" or "reminder") AND ("Americans with Disabilities Act," "ADA," "Section 504," "accommodation," or "disability").

**RFP 14**

RFP 14 requests "All Documents Concerning the ADA Coordinator(s) responsible for MPD employees, including job descriptions, policies, procedures, and training materials Concerning the role of the ADA Coordinator, and Documents Concerning how MPD officers may Communicate with the ADA Coordinator."

Plaintiffs understand Defendants are working on responding to this RFP, including by looking for any training materials for ADA Coordinators.

**RFP 15**

RFP 15 asks for "All Documents Concerning MPD police officers who sustained an injury, illness, or disability, were placed on leave and/or Limited Duty Status, and subsequently were referred to Disability Retirement due to that injury, illness, or disability."

Plaintiffs understand that Defendants will produce responsive documents by identifying responsive emails sent and received by ADA Coordinators. Plaintiffs stress that Defendants also must produce other documents concerning the officers listed in Exhibits A & B to Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories, including:

- 86-day letters;

- MPD recommendations to the Retirement Board regarding disability retirement;

---

- Letters scheduling an Initial Disability Appointment at the Police & Fire Clinic; and
- Relevant forms, such as PD Form 42s, PD Form 305s, and PD Form 77s.

**RFP 16**

RFP 16 requests "All policies, procedures, and guidelines Concerning disability-related Accommodations offered by DC Government agencies identified in response to Interrogatory No. 23." Plaintiffs understand Defendants are working to understand whether such policies, procedures, and guidelines are stored centrally. If they are not, Plaintiffs understand that Defendants will communicate to Plaintiffs that such documents are not centrally stored and afford Plaintiffs a chance to request policies, procedures, and guidelines from specific agencies.

**RFP 17**

As stated during the August 17 meet and confer, it is vital for Plaintiffs that Defendants produce documents sufficient to show vacant job postings within the DC Government. Plaintiffs understand that, at this time, Defendants are only willing to produce documents "sufficient to show civilian and sworn officer postings at MPD." It is not clear to Plaintiffs whether such MPD postings will predate-September 2017, which is when the District stopped using JobScience to manage job postings and started using the current system. Regardless, Plaintiffs submit that this response is insufficient and respectfully request that Defendants reconsider.

As an initial step, as discussed during the August 17 meet and confer, Plaintiffs ask that Defendants inquire whether job postings prior to September 2017 are maintained anywhere by the District and, if not, Plaintiffs request that Defendants inquire into the feasibility of accessing the information through JobScience.

**RFP 26**

RFP 26 asks for "[a]ll Communications between MPD and the PFC Clinic Concerning MPD police officers who were referred to the Retirement Board for Disability Retirement." Based on the August 17 meet and confer, Plaintiffs understand that Defendants will establish whether a primary point of contact exists for such communications and, if so, examine communications between officers and that point of contact using search terms.

Concerning search terms, Plaintiffs propose that Defendants search for emails that contain both (1) the name of an officer in Exhibits A or B to Defendants' Responses and Objections to Plaintiffs' First Set of Interrogatories, and (2) at least one of the following:

- Retired, retire, retirement
- Disability, disabled, disabilities
- Injured, injuries, injury, illness
- Limited Duty, Sick, Leave
- Accommodation, accommodate, transfer, reassign, restructure

We appreciate the efforts defense counsel has made to attempt to the resolve or reduce the parties' discovery differences to date. If you believe anything in this letter is inaccurate or not as agreed or discussed, please let me know promptly.

Sincerely,

James O. Strawbridge

Brown Goldstein & Levy

Andrew D. Levy
ADL@browngold.com

Also a member of the District of Columbia bar

October 5, 2021

**BY EMAIL**
Micah Bluming, Esquire
Assistant Attorney General, Equity Section
Public Interest Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Micah.Bluming@dc.gov

Re: *Steve Pappas, et al. v. District of Columbia and Robert J. Contee III*
U.S. District Court for the District of Columbia
Civil Action No. 19-2800 (RC)

Dear Micah:

In light of the October 29, 2021 deadline for the District to respond to Plaintiff's initial written discovery requests, Plaintiffs provide this summary of the state-of-play with respect to Plaintiffs' document requests with the hope it will facilitate our joint efforts in coming weeks. Plaintiffs also request a meet and confer as soon as possible to discuss some matters highlighted herein. **Please let us know your availability for such a meeting**.

**INITIAL MATTERS**

***Supplemental Production***: We received the District's fifth production. We understood that this production would include the personnel files for the named plaintiffs. **Please confirm that the following constitutes the entire MPD personnel files for the four named plaintiffs**:

- Steve Pappas: DC_Pappas 88989-89052, 89089-89182
- Tawana Lindsay: DC_Pappas 88813-88888, 88889-88988
- Nichole Mathies: DC_Pappas 88637-88690, 88691-88728, 88729-88812
- Malachi Malik: DC_Pappas 89053-89088, 89183-89276

We also anticipating receiving documents that outlined MPD ADA Coordinator responsibilities. **Please confirm whether these were included in the production**.

***Database Manuals***: The District has identified four databases where responsive information is stored. In order to facilitate the identification and extraction of computerized data that responds to Plaintiffs initial document requests, the District has said it would produce manuals for the PeopleSoft and Quick Base databases to Plaintiffs. Because no manual exists for

the TACIS and PRT databases, the District has said it will provide spreadsheets that identify the data fields in these databases, values for those fields, a layman's explanation of what data the fields contain and how the fields are coded, etc. Production of the manuals and spreadsheets is meant to enable all sides to more clearly understand which data is stored in which database, how that data is stored, how that data is formatted, and how that data could be exported in order to respond to Plaintiffs' initial RFPs by the Oct. 29 deadline.[1] All sides agreed this was a sensible approach during an August 26, 2021 meet and confer.

As of today, the District has not produced spreadsheets pertaining to the TACIS and PRT databases; has not confirmed whether a manual exists for the Quick Base database; and has not produced the PeopleSoft manual. On September 28, 2021, you suggested the District now is unwilling to provide the PeopleSoft manual due to security concerns. **Plaintiffs request to meet and confer on this issue**. Plaintiffs are concerned that a back-and-forth, question-and-answer exercise regarding this database and its contents would be time-consuming and inefficient and would prejudice Plaintiffs by requiring Plaintiffs to devise and ask all relevant questions concerning a database about which Plaintiffs have no information. Regarding security concerns, Plaintiffs have suggested the District could (1) redact information that might enable a malicious actor to gain access to the District's IT systems, (2) use password protections and/or other secure means to produce the electronic file, or (3) provide a paper copy to Plaintiffs. With respect to the last option, you have not articulated any particular concerns besides stating that "significant risks" would be present if the District provided a paper copy.

***ADA Coordinator Inboxes*:** Plaintiffs understand the District is re-evaluating how many emails were sent/received between MPD ADA Coordinators and the officers who were referred to the Retirement Board and disability retired ("Exhibit A officers"). **Please provide an update**. The District also has said it also will load emails between ADA Coordinators and officers who were referred to the Retirement Board, but have not been disability retired ("Exhibit B officers"), so that responsive emails concerning Exhibit B officers also may be produced.

***Missing Documents*:** In its August 26, 2021 letter, the District stated it would (1) produce the decision and order for Nicholas Donato, (2) produce orders for Aurelia Parks, Kristofer Todd, and Eric A. Adgerson. **Please provide an update, as it appears these documents were not included in the District's fifth production.**

---

[1] In a recent meet and confer, the District noted the existence of a database that stores personnel information for each MPD officer, including duty history, although it appears the data may not be easily exportable and instead the District would have to manually print the screen. **Please confirm that this was a reference to the PRT database**.

---

**REQUESTS FOR PRODUCTION**

**DOCUMENT REQUEST NO. 1:** *All policies, procedures, and guidelines Concerning requests for, or grants or denials of, disability-related Accommodations for MPD officers.*

The District has said it "will produce non-privileged, non-confidential documents responsive to Request No. 1 that are identified after a reasonable search." July 2, 2020 RFP Resp.[2] The District has produced some policies applicable to MPD. In an August 16, 2021 letter, the District stated it had "completed its production of documents in response to Request No. 1." In an August 18, 2021 response letter, Plaintiffs disagreed, noting that "Defendants have not produced responsive policies in place since 2012 that have been rescinded." **Please produce these additional policies**.

**DOCUMENT REQUEST NO. 2:** *All policies, procedures, and guidelines Concerning (1) the placement of MPD officers on Limited Duty Status or on leave (paid or unpaid); (2) the return of officers that were on leave to Limited Duty Status or to Full Duty Status; and (3) the return of officers that were on Limited Duty Status to Full Duty Status.*

In its August 16, 2021 letter, the District stated it had completed production of documents. In an August 18, 2021 letter, Plaintiffs disagreed and noted various policies and forms that had not been produced. **Please produce these additional responsive documents**.

**DOCUMENT REQUEST NO. 6:** *All Documents Concerning Plaintiffs' POD or non-POD Injuries/Illnesses or disabilities.*

In its August 16, 2021 letter, the District stated it "has completed its production of documents in response to Request No. 6." In their August 18, 2021 letter, Plaintiffs noted that production was incomplete, including because additional responsive documents are forthcoming. For instance, the District has yet to produce any emails that may exist between the named plaintiffs and ADA Coordinators, or between the named plaintiffs and the Police and Fire Clinic.

---

[2] Please clarify whether the District is withholding documents that are "confidential" but not privileged. Plaintiffs reject any contention such "confidential" documents are not subject to discovery. *See, e.g.*, *Richardson v. Sexual Assault/Spouse Abuse Rsch. Ctr., Inc.*, 270 F.R.D. 223, 227–28 (D. Md. 2010) (collecting cases and explaining that Fed. R. Civ. P. 26(b)(1) "excludes privileged information from the scope of discovery, but does not preclude from discovery information that is confidential, but not privileged.") (internal citations omitted).

---

**DOCUMENT REQUEST NO. 7:** *A Microsoft Excel or comma separated value (CSV) file, generated from data maintained by MPD or DC, with the following information for each MPD officer who was referred to the Retirement Board for Disability Retirement. . . .*

Subpart (c)—This sub-part asked for the "*Bureau, division, branch, unit, district, and/or section, as well as job title/position, at time of hire and time of retirement*" for officers that MPD has referred to the Retirement Board for disability retirement. Plaintiffs notified the District in an August 18, 2021 letter that the District had not provided the job title and job location (bureau, division, etc.) at the time of hire for officers listed in Exhibits A & B. In an updated Exhibit A, which Plaintiffs received on September 13, 2021, the District included the title at time of hire but did not provide the job location (bureau, division, etc.) at time of hire. No updated Exhibit B has been provided. **Please provide the job location at the time of hire for Exhibit A officers, and please provide the job title and location (bureau, division, etc.) for Exhibit B officers at the time of hire as well as their current job title and job location (since they have not been disability retired)**.

Subpart (d)—This sub-part asked for the salary at the time of hire and time of retirement. Exhibit B lacks any salary information whatsoever. **Please update Exhibit B in order to provide the salary information at the time of hire as well as the current salary**.

Subparts (f)–(h)—These sub-parts requested the dates that officers referred to the Retirement Board had limited duty status (subpart f) and/or were on leave (subpart g) due to their disabling injury, and whether such leave was paid or unpaid. Subpart (h) asked for the number of days in a less-than-full-duty status the officer had accrued due to their disabling injury as of the date the officer was referred to the Retirement Board. For most officers in Exhibit A, the District has provided a "Sick/Limited" start date and "Sick/Limited" end date, but has not provided further information. The District has not provided any information on whether the relevant leave taken by MPD officers was paid or unpaid. Plaintiffs will continue to work with the District with respect to this information, which may be extractable from DC databases.

Subparts (i)–(l)—These sub-parts concern accommodations requested by MPD officers and/or offered by the District to MPD officers. This information is not included in Exhibits A & B. Plaintiffs will continue working with the District to obtain this information. The District has explained that requests for accommodation are stored in the Quick Base database, and the District is still looking for the manual for that database. Information responsive to subparts (i)–(l) also may be found in the emails sent and received by ADA Coordinators to officers in Exhibits A & B. Plaintiffs understand the District is still in the process of searching those emails. Plaintiffs understand the District will search any ADA Coordinator files that may exist.

**DOCUMENT REQUEST NO. 9:** *Electronic data, an electronic database, or databases in a useable format such as Microsoft Excel sufficient to identify all MPD officers who took sick, family, personal, military, medical, and/or other leave of absence totaling 172 cumulative workdays or more during any 24-month period from January 1, 2012 until the Present; the dates each officer was on such leave; whether the officer returned to Full Duty Status, Limited Duty Status, resigned, was terminated, or retired after such leave; and the dates of such return to Full Duty Status, Limited Duty Status, resignation, termination, or retirement.*

In its August 16, 2021 letter, the District stated that it would "produce documents that identify the daily duty status of MPD officers, including the number of consecutive days that an officer has been on less than full duty status." Days later, the District produced roughly 11,000 documents outlining duty status of MPD officers in the last several years—and defense counsel advised that providing such reports going back further in time would entail production of tens of thousands of additional documents. As Plaintiffs explained, this approach appears unworkable for both sides. For that reason, the District and Plaintiffs are focusing on the four databases identified by the District as containing potentially responsive information. Plaintiffs understand that information responsive to this document request is stored in, and extractable from, one or more databases used by the District, and will continue to work with the District on this issue in order to obtain this information in the more efficient way for all parties concerned.

**DOCUMENT REQUEST NO. 10:** *All Documents Concerning whether Accommodations for Plaintiffs would result in an undue burden or fundamental alteration for Defendants.*

In its August 16, 2021 letter, the District stated it would produce responsive documents. As stated in Plaintiff's August 18, 2021 letter, Plaintiffs requested these documents "in order to understand, and respond to, Defendants' potential defenses." **Please produce all documents responsive to this RFP before the October 29, 2021 deadline set by the court**.

**DOCUMENT REQUEST NO. 11:** *All Documents in Plaintiffs' Employee Files, including Retirement Board files, Police & Fire Clinic files, ADA files, or other employment-related files. This Request includes Documents Concerning Accommodations for Plaintiffs.*

In its August 16, 2021 letter, the District stated it had "substantially completed production of documents" in response to this request, but would "produce plaintiffs' personnel files within the next two weeks" and also would "produce documents . . . that are identified through electronic document searches." Regarding personnel files, **please confirm that plaintiffs entire personnel files were produced in the District's fifth production (*see* "Initial Matters," *supra*)**. Plaintiffs also understand the District is examining whether responsive documents may be stored elsewhere—including in the emails/files/records of MPD ADA Coordinators and in Quick Base, which is the database where disability-related information

concerning MPD officers is stored. **Please produce all responsive documents before the court-ordered deadline**.

**DOCUMENT REQUEST NO. 13:** *All Documents Concerning how MPD or DC Government employees should respond to requests for Accommodations from MPD officers.*

In its August 16, 2021 letter, the District asserted that it "has completed its production of documents" in response to this RFP. Nonetheless, as stated in Plaintiffs' August 18, 2021 letter, Plaintiffs understand the District continues to search for responsive documents, including documents concerning ADA-compliance trainings (either for ADA Coordinators or supervisors). To the extent ADA training materials are not centrally stored, Plaintiffs proposed various search terms that could be used in electronic document searches in their August 18, 2021 letter. The District's fifth production contained documents that appear to be training materials; **please confirm whether the District has now fully responded to RFP No. 13 or if more training documents are forthcoming**.

**DOCUMENT REQUEST NO. 14:** *All Documents Concerning the ADA Coordinator(s) responsible for MPD employees, including job descriptions, policies, procedures, and training materials Concerning the role of the ADA Coordinator, and Documents Concerning how MPD officers may Communicate with the ADA Coordinator.*

In its August 16, 2021 letter, the District stated it "will produce documents sufficient to show the responsibilities of MPD's ADA Coordinator," and estimated it "will take approximately two weeks to produce these documents." As of the date of this letter, the District has not produced these documents. **Please produce documents responsive to this RFP**.

**DOCUMENT REQUEST NO. 15:** *All Documents Concerning MPD police officers who sustained an injury, illness, or disability, were placed on leave and/or Limited Duty Status, and subsequently were referred to Disability Retirement due to that injury, illness, or disability.*

In its August 16, 2021 letter, the District stated it would produce responsive documents that are identified using keyword searches. In particular, it stated it would "use the first and last names of the officers identified on Exhibits A and B . . . to identify responsive emails sent and received by the ADA Coordinators" at MPD. As Plaintiffs explained in their August 18, 2021 response, "Defendants also must produce other documents concerning the officers listed in Exhibits A & B," including 86-day letters and Police and disability-retirement recommendations submitted to the Retirement Board for the officers listed in Exhibits A & B. **Please provide an update on such documents**.

---

**DOCUMENT REQUEST NO. 16:** *All policies, procedures, and guidelines Concerning disability-related Accommodations offered by DC Government agencies identified in response to Interrogatory No. 23.*

In its August 16, 2021 letter, the District stated it had completed its production of documents in response to this request. Plaintiffs disagree, including because the District has not produced policies, procedures, or guidelines concerning accommodations offered by any part of the D.C. government other than MPD. As noted in their August 18, 2021 letter, Plaintiffs understand Defendants are working to understand whether such policies, procedures, and guidelines are stored centrally. If not, Plaintiffs understand that Defendants will communicate to Plaintiffs that such documents are not centrally stored and afford Plaintiffs a chance to request policies, procedures, and guidelines from specific agencies. **Please provide an update**.

**DOCUMENT REQUEST NO. 17:** *Electronic data, an electronic database, or databases in a useable format such as Microsoft Excel sufficient to identify:*

a. *All DC government job vacancies from January 1, 2012 to the present;*
b. *Titles of such vacant positions;*
c. *Job descriptions of such vacant positions;*
d. *The department/agency wherein the position was located; and*
e. *For each vacant position, the date the position became vacant and the date it was filled.*

On September 13, 2021, the District provided an "Exhibit D" list of District-wide vacancies from January 2012 through December 2014, and from August 2017 through June 2021. These data were generated from PeopleSoft eRecruit. With respect to DC-wide job postings created between January 2015 and August 2017, the District stated such posting were not as readily accessible. However, MPD vacancies were more readily available for the 2015-2017 period, because these job postings were stored separately, and some data with respect to those MPD vacancies were included in Exhibit D. The District further explained that it was working to determine whether "archived information is accessible and will inform plaintiffs once an answer has been obtained." The District also stated it was devising an estimate of "how much time it would take to gather all the information plaintiffs have requested," as only partial information has been supplied thus far.

Plaintiffs reiterate the importance of this RFP and request a meet and confer in order to discuss Exhibit D how to interpret the data contained therein. **Please let us know when you are available for such a meet and confer**. Plaintiffs also reiterate that providing a copy of the PeopleSoft manual to Plaintiffs will facilitate future conversations about how best to comply with this RFP ahead of the October 29 court-ordered deadline.

---

**DOCUMENT REQUEST NO. 24:** *All Documents Concerning the organizational structure, operations, and responsibilities of the PFC Clinic and PFC Associates, LLC.*

In its August 16, 2021 letter, the District stated that, because Plaintiffs have subpoenaed documents from PFC Associates, "it would be more efficient for plaintiffs to first review the documents it receives from PFC Associates before seeking additional documents from the District." Plaintiffs will stay in touch with the District regarding this issue.

**DOCUMENT REQUEST NO. 26:** *All Communications between MPD and the PFC Clinic Concerning MPD police officers who were referred to the Retirement Board for Disability Retirement.*

In its August 16, 2021 letter, the District stated it "will produce documents responsive to Request No. 26 that are identified through electronic document searches." As Plaintiffs stated in their August 18, 2021 letter, Plaintiffs understand that the District will establish whether a primary point of contact exists for such communications and, if so, examine communications between officers and that point of contact using search terms. Plaintiffs have proposed search terms and are willing to further consult on this issue if needed. **Please provide an update**.

**DOCUMENT REQUEST NO. 27:** *Disability insurance policies and summary plan descriptions for disability insurance benefits offered by Defendants to the Plaintiffs or to any other current or former MPD officer from January 1, 2012 to the Present, as well as all workers' compensation benefits policies applicable to MPD officers injured on the job.*

In its August 16, 2021 letter, the District stated it would complete production of documents in response to this RFP within two weeks. As of the date of this letter, Plaintiffs have not received additional documents responsive to this RFP. **Please provide an update**.

Sincerely,

Andrew D. Levy

Andrew D. Levy

ADL/es

Brown Goldstein & Levy

Andrew D. Levy
ADL@browngold.com

Also a member of the District of Columbia bar

December 23, 2021

**BY EMAIL**
Micah Bluming, Esquire
Assistant Attorney General, Equity Section
Public Interest Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Micah.Bluming@dc.gov

Re: *Steve Pappas, et al. v. District of Columbia and Robert J. Contee III*
U.S. District Court for the District of Columbia
Civil Action No. 19-2800 (RC)

Micah:

Plaintiffs write in response to the District's document production dated October 29, 2021, in addition to the District's outstanding interrogatory responses. After reviewing the District's sixth production, as well as its third and fourth supplemental responses to Plaintiffs' first set of interrogatories, Plaintiffs continue to believe the District has not fully responded to Plaintiffs' first sets of discovery requests, which Plaintiffs served on the District in May 2021. Plaintiffs have identified the following deficiencies:

**MISCELLANEOUS**

**ADA Compliance Tracker Screenshots:** In its sixth production, the District produced a number of screenshots of the ADA Compliance Tracker database. The produced documents include links to documents that have not been produced on the following pages: DC_Pappas 00195499, 00195501, 00195503, 00195505, 00195507, 00195509, 00195513, 00195517, 00195519, 00195521, 00195523, 00195527, 00195529, 00195531, 00195525, 00195537, 00195539, 00195541, 00195545, 00195547, 00195549, 00195553, 00195557, and 00195559. Please produce the documents available at these links.

**Missing Documents:** In an August 26, 2021 letter, the District stated it would (1) produce the Retirement Board decision and order for Nicholas Donato, (2) produce orders for Aurelia Parks, Kristofer Todd, and Eric A. Adgerson. **Please produce these documents.** It also appears the complete record from the Retirement Board proceedings has not been produced for the four named Plaintiffs. For example, the District has not produced the transcript for the Retirement Board hearing for Steve Pappas. Please confirm you have no further documents.

---

**SPECIFIC REQUESTS FOR PRODUCTION**

**DOCUMENT REQUEST NO. 15:** *All Documents Concerning MPD police officers who sustained an injury, illness, or disability, were placed on leave and/or Limited Duty Status, and subsequently were referred to Disability Retirement due to that injury, illness, or disability.*

In its August 16, 2021 letter, the District stated it would produce responsive documents that are identified using keyword searches. In particular, it stated it would "use the first and last names of the officers identified on Exhibits A and B . . . to identify responsive emails sent and received by the ADA Coordinators" at MPD. In our meet and confer this month, however, the District confirmed the District has only searched the ADA Coordinators' mailboxes for the first and last names of the four named plaintiffs, which revealed that there were no emails directly between the four named plaintiffs and ADA Coordinators (although both the ADA Coordinators and the named plaintiffs were on some of the same group emails).

At a minimum, the District must produce all emails written by officers on Exhibits A & B and sent to the ADA Coordinators, or written by the ADA Coordinator and sent to officers on Exhibit A & B. **Please confirm when these documents will be produced.**

As Plaintiffs explained in their August 18, 2021 letter, "Defendants also must produce other documents concerning the officers listed in Exhibits A & B," in particular:

- 86-day letters;
- Letters scheduling initial disability evaluations;
- Documents Concerning the outcome of the initial disability evaluations;
- Disability retirement recommendations from the PFC / PFC Associates, LLC; and
- Disability-retirement recommendations submitted by MPD to the Retirement Board.

**DOCUMENT REQUEST NO. 16:** *All policies, procedures, and guidelines Concerning disability-related Accommodations offered by DC Government agencies identified in response to Interrogatory No. 23.*

The District has stated it had completed its production of documents in response to this request. Plaintiffs disagree, including because the District has not produced any policies, procedures, or guidelines concerning accommodations offered by any part of the D.C. government other than MPD. This week, you confirmed that such policies, procedures, and guidelines are not stored centrally at DCHR. Plaintiffs therefore request the responsive policies, procedures, and guidelines from the following DC agencies:

- Department of Corrections
- Office of Disability Rights

---

- Department of Employment Services
- Fire and Emergency Medical Services Department
- Office of Human Rights
- DC Public Schools
- Department of Forensic Science
- Office of Police Complaints
- District of Columbia National Guard
- Department of General Services
- Mayor's Office of Veterans Affairs

**DOCUMENT REQUEST NO. 17:** *Electronic data, an electronic database, or databases in a useable format such as Microsoft Excel sufficient to identify:*

*a. All DC government job vacancies from January 1, 2012 to the present;*
*b. Titles of such vacant positions;*
*c. Job descriptions of such vacant positions;*
*d. The department/agency wherein the position was located; and*
*e. For each vacant position, the date the position became vacant and the date it was filled.*

On September 13, 2021, the District provided an "Exhibit D" list of District-wide vacancies from January 2012 through December 2014, and from August 2017 through June 2021. With respect to DC-wide job postings created between January 2015 and August 2017, the District stated such posting were not as readily accessible. However, MPD vacancies were more readily available for the 2015-2017 period, because these job postings were stored separately, and data with respect to those MPD vacancies were included in Exhibit D.

In a December 9, 2021 email, the District informed Plaintiffs that that additional data is available concerning job postings, and that it intended to supplement Exhibit D accordingly. The District also stated that, aside from the forthcoming additional data, its staff had extracted all information they could for Exhibit D, and that "no other information was available for those job postings to extract en masse in a single export."

Plaintiffs look forward to the forthcoming additional data and reiterate that the District must produce supplemental responsive information that is available—including job descriptions and salary information—even if it is not available to extract "en masse" in a single export. Plaintiffs further reiterate that, to the extent the District possesses or controls any other information or data responsive to this Request, the District must produce it or else explain why it would be overly burdensome to do so.

**DOCUMENT REQUEST NO. 25:** *The District of Columbia Police Officers' and Firefighters' Retirement Plan.*

The District has produced a 2017 summary plan description of the District of Columbia Police Officers and Firefighters' Retirement plan. Please produce the predecessor version(s) ranging back to the beginning of the class period.

**SPECIFIC INTERROGATORY RESPONSES**

**INTERROGATORY NO. 4:** *State each database, computer program, or Information Management System maintained by or for Defendants that contains MPD's human resource or employee information, including but not limited to information Concerning (1) requests for Accommodations, (2) leaves of absences, including medical/sick leave (whether paid or unpaid) taken by MPD officers and the reasons for them, (3) Limited Duty Status assignments for officers and the reasons for placing the officer on Limited Duty Status, (4) officers' return to Full-Duty Status after a leave of absence or Limited Duty Status assignment, (5) short-term disability benefits usage by MPD officers, including reasons for needing short-term disability benefits, (6) Job Restructuring, and (7) Reassignments to other job positions within MPD or DC Government. For each database, program, or system identified, list all fields of information maintained.*

The District has responded that "MPD databases with human resource or employee information are: TACIS, PRT, and PeopleSoft. The District's Office of Disability Rights additionally maintains a database called Quickbase that tracks accommodation requests across various agencies." Plaintiffs recently learned that the PFC Clinic, in conjunction with the MPD Medical Services Director, utilize a fifth computer program or database, Centricity. **Please supplement your responses to Plaintiffs' First Set of Interrogatories by listing all fields of information maintained within the computer program, Centricity. Please also supplement your response with any additional database, computer program, or Information Management System the District has failed to identify.**

**INTERROGATORY NO. 11:** *State all positions to which MPD officers on Limited Duty Status have been assigned. For each position, (1) Identify the officer, (2) state the relevant MPD bureau, branch, unit, district, and/or section, and (3) state the start and end date when the officer was assigned to that position.*

The District provided basic information concerning whether MPD officers who were referred to the PFRRB and who the PFRRB recommended should be retired were assigned limited-duty status in Exhibits A and B. In its August 20, 2021 letter, the District stated that it would be unduly burdensome for it to manually create the documents requested and

---

subsequently produced tens of thousands of "daily duty" and "teletype" reports in productions 5 and 6 that "reflect which officers were transferred to which positions."

After confirming that the daily duty reports are generated via the computer program, Centricity, which Plaintiffs only recently learned about, the District would not need to manually create the documents this Interrogatory requests. Rather, the District can simply generate monthly, semi-annual, or annual reports that contain the requested information. **Please supplement your responses to this Interrogatory by generating the requested data though the computer program, Centricity, or explain why this is not feasible.**

**Please also supplement your responses to this Interrogatory by providing a general description of "all positions to which MPD officers on Limited Duty Status have been assigned during the Class Period."**

Sincerely,

Andrew D. Levy

ADL/JS/es

JAY ANGOFF (DC, MO, NJ)
EZRA BRONSTEIN (DC, NY)
AUTUMN CLARKE (DC)
RICHARD E. CONDIT (DC)
ELLEN EARDLEY (DC. IL)
JOSHUA KARSH (IL)
DESIREE LANGLEY (VA, DC)
CLEVELAND LAWRENCE III (DC, VA)
MICHAEL D. LIEDER (DC)
CYRUS MEHRI (DC, CT)

MEHRI & SKALET PLLC

2000 K STREET NW, SUITE 325 WASHINGTON, DC 20006
TEL 202.822.5100 • FAX 202.822.4997 • WWW.FINDJUSTICE.COM
TWITTER.COM/FINDJUSTICELAW

OF COUNSEL
U.W. CLEMON (AL)
N. JEREMI DURU (DC, MD)
STEVEN A. SKALET (DC, MD)

January 30, 2022

**BY EMAIL**
Richard Sobiecki, Esquire
Assistant Attorney General, Equity Section
Public Interest Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Richard.Sobiecki@dc.gov

Re: *Steve Pappas, et al. v. District of Columbia*, No. 19-2800 (D.D.C)

Dear Counsel:

Plaintiffs ask the District to meet and confer the afternoon of Monday, January 31, 2022, or Tuesday, February 1, 2022, pursuant to Rule 37 of the Federal Rules of Civil Procedure regarding its January 24, 2022, Responses and Objections to Plaintiffs' Second Set of Requests for Production of Documents. Please let us know your availability.

The District refuses to produce documents responsive to 12 of Plaintiffs' 19 requests: 29, 30, 32, 33, 34, 37, 42, 43, 44, 45, 46, 47. The District will only partially respond to request 35 and has refused to produce 35(d), the total sum of salary and overtime pay received for each year [the individuals] served as MPD officers, and 35(g), the salary and overtime pay for each year they served in the new position to which the officer was transferred or reassigned.

We summarize the requests at issue and your objections in the table below.

| Request Number | Summary of Plaintiffs' Request | Summary of District's Objections |
|---|---|---|
| 29 | Retirement/pension plans for employees other than police officers and firefighters | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 30 | DC government salaries for District employees | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |

| | | |
|---|---|---|
| 32 | For class members:<br>Base pay for each year worked;<br>Actual compensation for each year worked (broken down by salary, overtime payments, and other comp.);<br>Final disability annuity;<br>Total sum of disability annuity payments paid each year since retirement. | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative, vague, ambiguous |
| 33 | Labor market survey reports for each class member | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 34 | Physical demand codes for class members | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 35(d) | For officers who were reassigned/transferred, the total sum of salary and overtime pay received for each year they served as officers | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 35(g) | For officers who were reassigned/transferred, the salary and overtime pay for each year they served in the new position to which the officer was transferred or reassigned | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 37 | Income earned after disability retirement by class members | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 42 | Job analyses performed for the MPD Police Officer position | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 43 | Job analyses for all open and vacant jobs within MPD and the DC government that MPD officers could have performed | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |
| 44 | KSAs necessary or desired to perform the officer position, including any limited duty position (such as KSAs evaluated in any test, interview process or hiring procedure) | Overly broad, unduly burdensome, cumulative, vague, ambiguous |
| 45 | Performance appraisal forms for officer position | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |

| | | |
|---|---|---|
| 46 | Validation of any hiring procedures for officers (including job announcements, job descriptions, civil service exam notices, training materials, and other documents that contain the standards or factors for which officer candidates are assessed and evaluated in the selection process) | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case, cumulative, and vague |
| 47 | Job evaluations conducted at MPD to determine pay rates, pay structures, and/or pay grades | Not relevant to class certification, unduly burdensome, not proportional to the needs of the case and cumulative |

Plaintiffs disagree with the District's objections to these requests. We will set forth our disagreement more fully during the parties' conference. Preliminarily, please note that Angela Simpson's Rule 30(b)(6) testimony makes clear that data history about salary is readily available to the District in electronic form and would not be burdensome to produce. As such, if the District intends to stand on its objections to Requests 32, 35(d), and 35(g), Plaintiffs will move to compel this information.

Finally, the District has made numerous assertions in various conferences among counsel over the last few months (and in its Responses and Objections to Plaintiffs' Second Set of Requests for Production of Documents) that damages information is not related to class discovery. Please let us know if the District will stipulate that it will not oppose class certification by arguing that damages issues will defeat certification. If so, then the Plaintiffs may consider modifying the substance or timing of certain discovery requests.

Very truly yours,

/s/

Ellen Eardley

Brown Goldstein & Levy

Andrew D. Levy
adl@browngold.com

Also a member of the District of Columbia bar

March 3, 2022

**BY EMAIL**
Richard Sobiecki, Esquire
Assistant Attorney General, Equity Section
Public Interest Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Richard.Sobiecki@dc.gov

Re: *Steve Pappas, et al. v. District of Columbia and Robert J. Contee III*
U.S. District Court for the District of Columbia
Good-Faith Effort to Confer Prior to Seeking Leave of Court to File Motion to Compel and/or for Sanctions pursuant to Rule 37(b)(2)

Dear Rich:

I write seeking an update on various discovery matters as outlined below. Plaintiffs are concerned that Defendants still have not produced all documents responsive to Plaintiffs' initial Requests for Production ("RFPs")—even though Plaintiffs submitted these document requests nine months ago, in May 2021; Judge Contreras set an Oct. 29, 2021 deadline for responding to these initial document requests; and Plaintiffs repeatedly have urged Defendants fully to comply with their discovery obligations, including in letters dated Oct. 5, 2021 and Dec. 23, 2021, and in meet and confers on August 26, 2021, September 9, 2021, October 8, 2021, December 8, 2021, February 1, 2022, and February 14, 2022.

These delays have greatly prolonged the discovery process. For instance, Plaintiffs still have not received all emails between MPD ADA Coordinators and class members. Plaintiffs cannot evaluate which additional deposition(s) may be needed until after these emails are produced, which is prejudicing our ability to conclude class discovery by the March 31 deadline. Please confirm the date by which all such emails will be produced.

Plaintiffs also repeatedly have requested, for all officers in Exhibits A & B, documents related to disability retirement, such as "86-day" letters, documents related to Initial Disability Evaluations, and PFC referrals/recommendations that these members be disability retired. Defendants have resisted these requests, claiming they are too burdensome. At the recent deposition of 30(b)(6) designee Matthew Miranda, however, we learned that these documents are routinely scanned into the Centricity database and readily accessible to MPD personnel. These documents should therefore have been easy to produce months ago.

Plaintiffs expect that Defendants will produce all documents responsive to Plaintiffs' first Requests for Production by March 8. Otherwise, we intend to seek a remedy in court.

In addition to outstanding document requests from Plaintiffs' first RFPs, Defendants have not produced documents in response to Plaintiffs' second RFPs, propounded in December 2021. Plaintiffs have engaged with your objections and continue to look for solutions, including by narrowing our document requests and through potential stipulations (discussed further below).

Plaintiffs expect that Defendants will either agree to these stipulations or produce responsive documents, by March 8. Otherwise, we intend to seek a remedy in court.

In his February 2022 deposition, Alphonso Lee also referenced various responsive documents that the District has yet to produce. These include:

- the "poster" that informed MPD employees about their ADA rights;
- any policies applicable to MPD and implemented prior to 2017 concerning reassignment as a reasonable accommodation under the ADA;
- any draft ADA policy applicable to MPD that was written in or around 2013; and
- records of all ADA trainings for MPD personnel.

Please produce these documents promptly. If Defendants continue to withhold and/or prolong production of the requested information and documents, Plaintiffs intend to pursue a motion to compel and/or for sanctions.

**A. <u>Outstanding Issues from Plaintiffs' First RFPs.</u>**

*Miscellaneous*

In a January 20, 2022 email, District counsel wrote that a Retirement Board decision for Nicholas Donato would be produced, but that decision was not included in Defendants' latest productions. Please advise whether this document is still forthcoming.

*Emails Between ADA Coordinators and Class Members*

Plaintiffs have received the production from February 18, 2022, which contained some emails between class members and MPD ADA Coordinators. Please complete the production of all emails between class members and ADA Coordinators by March 8, 2022.

*Documents Concerning Disability Retirement of Class Members*

Plaintiffs have requested documents concerning the disability retirement process for individuals listed on Exhibits A & B, including "86-day" letters, letters scheduling Initial Disability Evaluations, PFC referrals/recommendations that these members be disability retired, and disability retirement referrals submitted to the Retirement Board. Please produce these documents by March 8, 2022.

**B. <u>Plaintiffs' Second Requests for Production.</u>**

As set forth in our January 30 letter, the District initially refused to produce *any* documents responsive to 12 out of the Plaintiffs' 19 second RFPs. In response to many of the requests, the District argued that damages information is not related to class discovery. In our January 30 letter, Plaintiffs inquired whether the District would stipulate that it would not oppose class certification by arguing that damages issues defeat certification. Subsequently, during the parties' February 1 and February 3 conferences about the Plaintiffs' second RFPs, the parties discussed the possibility of stipulations pertaining to certain document requests. Below, Plaintiffs propose stipulations for some requests.[1] For each request, if the District would agree to so stipulate for the purposes of class certification, Plaintiffs would not seek a response to the particular request until after the class is certified.

Other requests for production cannot be resolved by stipulation and the District is still dilatory in its response. We discuss those below as well.

**Request No. 29**: (Retirement and/or pension plans for District employees other than police officers and firefighters, including such plans for MPD civilian employees.)

In a February 10 email, Mr. Bluming indicated that Defendants were "working to determine if these are stored in a centralized location." Please confirm whether that is the case. If they are not centrally stored, and if these plans vary depending on the particular DC Government position, Plaintiffs will work to narrow our requests to specific positions and/or propose a stipulation that would obviate the need for this discovery in the near term, while reserving Plaintiffs' rights to request documents after the class is certified.

---

[1] At the end of the February 3, 2022 conference, Plaintiffs understood that the District would proffer stipulations. However, at the February 10, 2022 conference, the District claimed that it always intended for Plaintiffs to draft proposed stipulations. This misunderstanding caused additional delay.

---

In an effort to reduce further delay, Plaintiffs should be willing to rely on stipulations from Defendants to the following:

- The retirement benefits available for District of Columbia jobs other than police officer and firefighter are capable of mathematical calculation based on objective data such as salary, years of service, and the terms of the applicable retirement plan.

- The District of Columbia maintains electronic data necessary to calculate the value of retirement benefits for jobs other than police officer and firefighter.

- The District of Columbia routinely calculates the retirement benefits payable to its employees and former employees using information such as compensation, years of service, and other terms of the applicable retirement plan.

**Request No. 32**: (Compensation data for class members (base pay, actual compensation, final disability annuity, and total sum of disability annuity payments.)

At a recent meet and confer, you suggested Defendants might produce documents concerning base pay but would not produce other requested documents. Please advise as to whether and when you intend to produce documents concerning base pay.

To reduce further delay, we would be willing to rely on stipulations from Defendants to the following:

- For each individual identified in "Updated Ex. A._Def.'s Third Supp. ROG Response.xlsx" and/or "Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx," the District maintains electronic data demonstrating their: (a) Base pay (for each year the individual worked for MPD); (b) Actual compensation (for each year the officer worked for MPD), broken down by salary, overtime payments, and other compensation (if any) received.

  For each individual identified in "Updated Ex. A._Def.'s Third Supp. ROG Response.xlsx" and/or "Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx," the District maintains electronic data demonstrating their final disability annuity as determined by the DC Retirement Board, and the total sum of disability annuity payments paid each year since retirement.

**Request No. 33**: (Labor Market Survey reports for each MPD officer listed in the document titled "Updated Ex. A._Def.'s Third Supp. ROG Response.xlsx" or the document titled "Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx")

---

Although Defendants have indicated they will not produce these documents, Plaintiffs view these as important, and (based on the deposition of Matthew Miranda), it appears they are readily accessible in Centricity. If Defendants remain unwilling to produce in the near term, Plaintiffs intend to seek a remedy in Court.

**Request No. 34**: (For each MPD officer listed in the document titled "Updated Ex. A. Def.'s Third Supp. ROG Response. xlsx" or the document titled "Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx," that officer's Physical Demand Codes.)

At a recent meet and confer, you said you would determine whether these documents could readily be produced. Please provide an update. If Defendants remain unwilling to produce these documents, Plaintiffs intend to seek a remedy in Court.

**Request No. 35**: (documents concerning individuals identified by Defendants in their response to Interrogatory No. 12 as having been reassigned or transferred due to a disability.)

The District has agreed to provide documents sufficient to respond to subsections (a), (b), (c), (e), (f), (h), (i), (j), and (k). Please produce these documents by March 8. The District has refused to produce documents responsive to subsection (d) ("The total sum of salary and overtime pay received for each year they served as MPD officers" and (g) ("The salary and overtime pay for each year they served in the new position to which the officer was transferred or reassigned."). If Defendants remain unwilling, Plaintiffs intend to seek a remedy in Court.

**Request No. 36**: (organizational structure of MPD)

This Request asks for Documents sufficient to show the organizational structure of MPD, and the District has said it would produce them. Please produce by March 8.

**Request No. 37**: ("All Documents Concerning income earned after Disability Retirement by former MPD officers listed in 'Updated Ex. A. Def.'s Third Supp. ROG Response. xlsx,' including Annual Earned Income Reports or other documents concerning annual income submitted by former MPD officers to the D.C. Retirement Board ("DCRB")).

Defendants thus far have refused to produce these documents. Plaintiffs are willing to stipulate that this data will be produced after the class is certified if Defendants stipulate to the following: "For 2014 to the present, for each individual identified in Updated Ex. A._Def.'s Third Supp. ROG Response.xlsx and/or the document titled Updated Ex. B_Def.'s Third Supp. ROG Response.xlsx, the District maintains electronic data sufficient to show the annual income earned by each individual submitted to the DCRB."

**Request No. 38**:

This Request asked for Documents sufficient to show (a) The duties and responsibilities of the Police and Firefighters Retirement and Relief Board, including the matters (if any) over which it makes final determinations versus recommendations to be approved by another part of the DC Government; (b) The extent to which MPD controls or influences the timing of hearings before the Police and Firefighters Retirement Relief Board and/or the contents of decisions and orders issued by the Police and Firefighters Retirement Relief Board; and (c) Whether the Police and Firefighters Retirement Relief Board is independent from, or a part of, the DC Government.

Thus far, the District's production in response to this RFP appears incomplete. Please confirm whether all responsive documents were included in the latest production dated February 18, 2022, and if so, the Bates ranges for those documents.

**Request No. 40**: (All Documents Concerning the matters listed in Exhibit C to Defendants' First Responses and Objections to Plaintiffs' First Set of Interrogatories.)

Plaintiffs have requested, and are entitled to, these documents. If Defendants do not produce them by March 8, Plaintiffs intend to seek a remedy in Court.

**Request No. 41**: (Monthly reports from the Police and Fire Clinic to MPD Concerning disability retirement referrals pending before the Retirement Board.)

To expedite the discovery process and focus on the most important documents, Plaintiffs are withdrawing this discovery request. There is no need to produce these documents.

**Request No 42**: (All Documents Concerning Job Analyses performed for any MPD Police Officer position during the Class Period.)

The District has indicated that it working on this request. Please produce these documents by March 8, or Plaintiffs intend to seek a remedy in Court.

**Request No. 43**: (All Documents Concerning Job Analyses performed for all open and vacant jobs within MPD and the DC Government in which MPD Police Officers could have performed.)

Plaintiffs are working on narrowing this request to the most relevant open and vacant jobs within MPD and the DC Government. As we have explained, in order to narrow this request, please first advise whether Defendants will produce additional job analyses for the position of MPD police officer and provide a date certain for such production.

**Request No. 44**: (All Documents Concerning the KSAs necessary or desired to perform any MPD Police Officer position, including any Limited-Duty position. This Request includes but is not limited to the KSAs evaluated in any test, interview process, or hiring procedure.)

In a recent meet and confer, you stated that you will provide responsive documents. Please produce these documents by March 8.

**Request No. 45**: (All Performance Appraisal Forms for MPD Police Officer positions implemented during the Class Period.)

At a recent meet and confer, you said you will provide responsive documents. Please provide these documents by March 8.

**Request No. 46**: (All Documents Concerning the validation of any hiring procedure used in connection with the hiring, promotion, or compensation of MPD Police Officer roles, including but not limited to job announcements, job descriptions, civil service exam notices, training materials, and all other Documents that contain the standards or factors for which MPD Police Officer candidates are assessed and evaluated in the selection process.)

At a recent meet and confer, you said you would look into this issue. Please produce these documents by March 8.

**Request No. 47**: (All Job Evaluations conducted at MPD since its inception used to determine the pay rates, pay structures, and/or pay grades of all jobs at MPD.)

At a recent meet and confer, you said you determine whether responsive documents exist and whether they can be produced. Please produce these documents by March 8.

**C. <u>Interrogatories</u>**

**Interrogatory No. 4**: (State each database, computer program, or Information Management System maintained by or for Defendants that contains MPD's human resource or employee information, including but not limited to information Concerning (1) requests for Accommodations, (2) leaves of absences, including medical/sick leave (whether paid or unpaid) taken by MPD officers and the reasons for them, (3) Limited Duty Status assignments for officers and the reasons for placing the officer on Limited Duty Status, (4) officers' return to Full-Duty Status after a leave of absence or Limited Duty Status assignment, (5) short-term disability benefits usage by MPD officers, including reasons for needing short-term disability benefits, (6) Job Restructuring, and (7) Reassignments to other job positions within MPD or

---

DC Government. For each database, program, or system identified, list all fields of information maintained.)

In light of recent testimony by Matt Miranda that MPD regularly uses Centricity, please advise as to whether you intend to update your response to this Interrogatory.

Sincerely,

Andrew D. Levy

ADL/JOS/es

cc: Micah Bluming, Esquire (Micah.Bluming@dc.gov)
Amanda Pescovitz, Esquire (Amanda.Pescovitz1@dc.gov)
Desiree Langley, Esquire (DLangley@findjustice.com)
Ellen Eardley, Esquire (EEardley@findjustice.com)
Eve Hill, Esquire (EHill@browngold.com)
James O. Strawbridge, Esquire (JStrawbridge@browngold.com)