**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STEVE PAPPAS,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 19-2800 (RC)** |
| **DISTRICT OF COLUMBIA,** *et al.* | |
| **Defendants.** | |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**INTRODUCTION**

Plaintiffs' claims, as alleged, are not factually complex. Plaintiffs make two primary assertions. First, plaintiffs allege that defendants the District of Columbia and the Metropolitan Police Department (MPD) (collectively, the District) have a policy of forcing disability retirement on MPD officers who are on less than Full Duty status for more than 172 working days over a two-year period. Second, plaintiffs allege that the District's implementation of this policy violates the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Section 504) because the District has a policy of not engaging in an interactive process with officers who are referred to the Police and Firefighters' Retirement and Relief Board (the Retirement Board) for a disability retirement determination.

This case, however, is a putative class action, and the Parties are currently in the midst of limited discovery on issues related to plaintiffs' forthcoming motion for class certification. In pursuing their class claims, plaintiffs have sought voluminous discovery: 47 requests for production; 23 interrogatories with more than 100 sub-parts; four Rule 30(b)(6) depositions spanning 39 broad topics; and 142 Requests for Admission. The District has produced more than

40,000 documents, which were identified in part through a laborious e-mail review. As negotiations over some requests have continued, despite several entreaties from the District, plaintiffs have repeatedly refused to narrow or reasonably modify numerous outstanding demands. Plaintiffs' motion to compel is a continuation of that approach. Plaintiffs' motion concerns only five requests for production amidst a sea of discovery demands, and primarily demands that the District comb through the private, confidential medical records of all officers who have been referred to the Retirement Board over the last 10 years to identify and share with plaintiffs individual copies of standard documents, *e.g.*, the 86 Day notice letter, when the District has already produced plaintiffs' complete files, when the Director of MPD's Medical Services Division has already testified that under MPD's policy and practice certain documents are created when officers are referred to the Retirement Board, and when plaintiffs fail to explain why they need *every* form for *every* officer to move for class certification.

As explained below, plaintiffs' motion should be denied because the discovery requests at issue do not seek documents relevant to class certification. Instead, the requested documents concern the individual facts and circumstances of individual officers when plaintiffs' entire theory of the case is that individual facts and circumstances are irrelevant to the purportedly class-wide issues they have raised. Even if the documents were relevant, the burden associated with collecting and producing them far outweighs the needs of the case. Plaintiffs' motion should be denied.

## BACKGROUND

## I.   <u>Disability Retirement for MPD Officers</u>

This case is about the disability retirement process for MPD officers. Three entities are relevant here: (i) MPD's Medical Services Division (MSD), which liaises with physicians at the Police and Fire Clinic (PFC) and which refers officers to the Retirement Board for a disability determination; (ii) the PFC, which is a private entity that contracts with the District to provide

medical care to officers; and (iii) the Retirement Board, which under District law determines whether officers should be disability retired.

District law provides that:

> [R]egardless of whether the prognosis is that the member will be able to perform the full range of duties after achieving maximum medical improvement, the Director [of MPD's Medical Services Division] shall process for retirement pursuant to § 5-710, those members of the Metropolitan Police Department who spend all or part of 172 cumulative work days in a less-than-full-duty status over any 2-year period as a result of any one performance-of-duty injury or illness, including any complications relating to the injury or illness.

D.C. Code § 5-633(c); *see also id*. § 5-634(c); MPD General Order 100.11 at 20 (GO-PER-100.11) (Defs.' Ex. A).

District law also provides that:

> Whenever the [Retirement Board] receives a recommendation from the Director for a disability retirement of a Metropolitan Police Department or Fire and Emergency Medical Services Department member pursuant to Chapter 6A of this title, the [Retirement Board] shall make a disability assessment, and if the member is unable to perform the full range of duties, shall retire the member as disabled regardless of whether the member is performing useful and efficient services that are less than the full range of duties.

D.C. Code § 5-709(c); *see also id*. § 5-721.

As part of its compliance with its statutory obligations, MPD policies provide for the creation of several documents under certain circumstances for individual officers. When an officer incurs an injury, a PD Form 42 must be completed. Section V.E., GO-PER-100.11; *see, e.g.*, PD Form 42 for Officer Nichole Mathies, Defs.' Ex. B. When an officer is placed on Limited Duty status, "[t]he Chief Physician shall prepare a PD Form 305 (Certification for Limited Duty/Extended Limited Duty Evaluation)." Section V.H., GO-PER-100.11. If a clinic physician determines that an officer's condition prevents him from carrying his service weapon, "[a]n official

of the Medical Services Division shall complete a PD Form 77 (Revocation/Restoration of Police

Powers and Notice of Duty and Pay Status)." Section V.J., GO-PER-100.11. Officers "who are in

a less-than-full-duty status for approximately 86 days, shall be served an '86 Day Letter.'" Section

IV.A., EO-18-009; *see, e.g.*, 86 Day Letter for Officer Steve Pappas, Defs.' Ex. C. Finally, prior

to an officer being on less than full duty status for 120 days, the officer shall "[b]e scheduled by

the Medical Services Division for an Initial Disability Evaluation (IDE)" and "for a Labor Market

Survey (LMS)." Section IV.C., EO-18-009; *see, e.g.*, Initial Disability Evaluation for Ofc.

Tawanna Lindsay, Defs.' Ex. D; Labor Market Survey for Ofc. Steve Pappas, Defs.' Ex. E. While

the underlying facts will differ, the purpose of the PD Form 42, PD Form 305, PD Form 77, 86-

Day Letter, IDE, and LMS in the disability retirement process is the same for each officer.

## II.     <u>Plaintiffs' Second Amended Complaint</u>

In the Second Amended Complaint, plaintiffs allege that "Defendants terminated their

employment on account of their disabilities rather than accommodating them by restructuring job

duties, providing extended leave, or reassigning them to available positions that they could have

performed." Second Am. Compl. ¶ 2 [28]. Specifically, plaintiffs allege that "Defendants violated

the ADA, and Plaintiff Pappas alleges Defendants violated Section 504, by implementing a policy

or practice of forcing employees with disabilities who spend 172 cumulative workdays over a two-

year period in less than full-duty status into disability retirement, with no possibility of reasonable

accommodation by reassignment, job restructuring, or extended leave (the 'Forced Retirement

Policy')." *Id.* ¶ 3.

In support of their claim that class certification is appropriate, plaintiffs allege that (i)

"[c]ommon questions … predominate … such as whether Defendants have a policy or practice

that forces disability retirement and denies accommodations," *id.* ¶ 89; (ii) "Defendants engaged

in a common course of conduct based on their adoption and application of the MPD Forced

4

Retirement policy or practice and the reasonable accommodation policy or practice that gives rise to the legal rights sought to be enforced by Plaintiffs," *id*. ¶ 90; (iii) "all Class (and Subclass) members were comparably injured through Defendants' uniform and discriminatory application of their Forced Retirement Policy and failures to provide reasonable accommodations of reassignment, job restructuring, and extended leave," *id*. ¶ 91; and (iv) "common issues … predominate … because proof of Defendants' common systemic policy of civil rights violations will provide the common proof to establish liability against Defendants," *id*. ¶ 94.

### III.   Plaintiffs' Class Discovery Efforts

#### A.   Discovery Provided by the District

On May 20, 2021, plaintiffs served 28 requests for production and 23 interrogatories on the District. *See* Pls.' First Set of Requests for Production (Ex. A, Pls.' Mot. to Compel Discovery (Motion) [45-2]); Pls.' First Set of Interrogatories, Defs.' Ex. F. On December 23, 2021, plaintiffs served an additional 19 requests for production. *See* Pls.' Second Set of Requests for Production (Ex. B, Motion [45-3]). Plaintiffs' motion to compel concerns only RFP No. 15 (in part), and RFP Nos. 26, 33–35. Motion at 7–8. Relevant here, plaintiffs are not challenging the District's responses to the following requests:

- All policies, procedures, and guidelines Concerning requests for, or grants or denials of, disability-related Accommodations for MPD officers. RFP No. 1;

- All policies, procedures, and guidelines Concerning (1) the placement of MPD officers on Limited Duty Status or on leave (paid or unpaid); (2) the return of officers that were on leave to Limited Duty Status or to Full Duty Status; and (3) the return of officers that were on Limited Duty Status to Full Duty Status. RFP No. 2;

- All policies, procedures, and guidelines Concerning the Restructuring of MPD officers' jobs as an Accommodation. RFP No. 4;

- All policies, procedures, and guidelines Concerning the referral of MPD officers to Disability Retirement. RFP No. 5;

- DC Government salaries for District employees, including MPD civilian employees. RFP No. 30;

- Documents sufficient to show the minimum qualifications, requirements, and/or skills that all MPD police officers must possess to serve as an MPD police officer. RFP No. 31;

- Documents sufficient to show the organizational structure of MPD during the Class Period, such as charts showing the various components of MPD and chains of command. RFP No. 36.

In addition to providing plaintiffs with extensive documentation concerning its policies and practices, the District identified for plaintiffs the officers who have been referred to the Retirement Board since 2012, *see* Exs. A and B to Defs.' First Responses and Objections to Plaintiffs' First Set of Interrogatories, Defs.' Ex. G (redacted for confidentiality), and the District produced documents relevant to those officers, including (i) the relevant Decisions and Orders from the Retirement Board, each of which contains a detailed summary of the officer's injury and explain the Board's decision to disability retire that officer, *see, e.g.*, Decision and Order in the Matter of Steve Pappas, Officer, Defs.' Ex. H (redacted for confidentiality); (ii) documents from the files of MPD's ADA Coordinator concerning those officers; (iii) documents from a District of Columbia Human Resources (DCHR) database, which tracks reasonable accommodation requests, for those officers, *see, e.g.*, Report from ADA Compliance Tracker, Defs.' Ex. I (redacted for confidentiality); and (iv) responsive documents concerning those officers that were identified after a time-intensive review of e-mails sent and received by the ADA Coordinator. Together, those documents provide plaintiffs with a complete understanding of why an officer was referred to the Retirement Board; why the Board determined that disability retirement was appropriate; and what

records the District has concerning any reasonable accommodation requests made by those officers.

The District has also produced documents reflecting every officer who has been on less than full duty status since at least 2015 and the number of days that the officer was on less than full duty status in any two-year period, regardless of whether that officer was ultimately referred to the Retirement Board. *See, e.g.*, Excerpt, Daily Duty Status Report (June 28, 2019), Defs.' Ex. J (redacted for confidentiality).

Not only has the District produced tens of thousands of documents and provided detailed responses to 23 interrogatories and 142 requests for admission, the District also made four witnesses available to plaintiffs under Rule 30(b)(6) in response to the 39 topics identified by plaintiffs. *See* Pls.' Notice of Deposition of Def. Pursuant to Rule 30(b)(6), Defs.' Ex. K. Plaintiffs spent many hours questioning the following individuals about MPD's policies and practices: MPD's Director, Medical Services Division; MPD's Director, Equal Employment Opportunity Office; MPD's Director, Human Resource Management Division; and the DCHR Human Resources Officer.

### B.    <u>Plaintiffs' Motion to Compel</u>

Despite the District's best efforts to accommodate plaintiffs' wide-ranging and seemingly never-ending discovery requests, plaintiffs now move to compel responses with regard to five document requests: RFP Nos. 15, 26, 33–35.

### 1.    **RFP Nos. 15, 33-34**

Three of the document requests at issue—RFP Nos. 15 and 33-34—seek documents that are generated in connection with an officer's referral to the Retirement Board (Retirement Board Requests). For each of the approximately 185 officers who have been referred to the Retirement Board over the last 10 years, plaintiffs are demanding every 86 Day letter, every letter scheduling

an IDE, every PD Form 42, every PD Form 305, every PD Form 77, every Labor Market Survey, and every Physical Demand Code report.[1] *See* Motion at 7. The District has already produced all of the requested documents for plaintiffs.

After further investigating the feasibility of collecting the identified documents for more than 150 current and former officers, on January 20, 2022, the District informed plaintiffs that "[i]t would not be feasible to produce those documents for several reasons. For one, the documents relating to any given individual are not centrally stored, which would require a manual search across multiple locations of an attempt to identify all documents. Further, the volume of documents for any given individual could exceed 3,000 pages." Defs.' Ex. L.

### 2.    RFP No. 26

RFP No. 26 seeks "All Communications between MPD and the PFC Clinic Concerning MPD police officers who were referred to the Retirement Board for Disability Retirement." In its response, the District stated that it "will produce non-privileged, non-confidential documents responsive to Request No. 26 that are identified after a reasonable search." Pls.' Ex. Q at 21.[2]

As was explained to plaintiffs' counsel, and as was confirmed in the testimony of MPD's Medical Services Director, MSD has little to no involvement in the actual process of referring an officer to the Retirement Board, nor does MSD have a role at the hearing before the Retirement Board, *see* Deposition Transcript of Matthew Miranda at 96–99; 106–112; 116–17 (Feb. 16, 2022) (Miranda Dep. Tr.), Defs.' Ex. R. The logistics of an officer's referral to the Retirement Board are

---

[1]    A Physical Demand Code report is a document prepared by a physician at the PFC for the benefit of the Retirement Board. *See, e.g.*, Physical Demand Code report for Officer Steve Pappas, Defs.' Ex. X (redacted for confidentiality). In essence, the Physical Demand Codes assess and rate an officer's ability to do certain physical tasks, such as running, jumping, and lifting.

[2]    In their motion, plaintiffs fail to mention that they have also requested this exact same category of documents from the PFC directly. *See* Pls.' Subpoena to PFC, Attachment A (Defs.' Ex. Y).

8

handled primarily by the PFC. *Id*. Having determined through a reasonable search that communications between MPD's MSD and the PFC concerning officers referred to the Retirement Board were likely non-existent, the District proceeded to focus on whether any communications occurred between MPD's ADA Coordinator and the PFC concerning officers referred to the Retirement Board (the same process that the District was employing to identify documents responsive to RFP No. 15).

Accordingly, on August 16, 2021, the District informed plaintiffs that: "The District will use the first and last names of the officers identified on Exhibits A and B … to identify responsive emails sent and received by the ADA Coordinators … ." Defs.' Ex. M. Importantly, the District also highlighted that "[g]iven the uncertainty involved in the electronic document collection and review process, the District is not currently able to estimate the time it will take to collect, review, and produce these documents." *Id*.

On October 26, 2021, the District informed plaintiffs about the number of documents that the District collected for the named plaintiffs as well as the other officers referred to the Retirement Board. The District explained: "We reviewed all of these and will produce responsive documents by [October 29, 2021]. As you can imagine, it took a significant amount of time to go through everything. We believe this constitutes a reasonable search in response to the RFPs. For the remaining individuals from Exhibits A and B, we're looking at tens of thousands of documents total. Let us know if you would like to discuss targeted follow-up searches for specific individuals." Defs.' Ex. N.

The District repeated its explanation on November 5, 2021: "As previously discussed, if plaintiffs would like to propose specific search terms to be applied against the electronic files of one or more custodians, we remain available to discuss plaintiffs' proposal." Defs.' Ex. O. The

District made clear that its proposal applied to both RFP No. 15 and 26. *Id*. However, for nearly two months the District heard nothing from plaintiffs. Then, late in the night on December 23, 2021, plaintiffs inquired whether additional documents would be produced in response to RFP No. 15—making no reference to RFP No. 26. Defs.' Ex. P.[3] Despite plaintiffs' extended delay, the District immediately began collecting documents relating to the other officers, and the District completed its production of those documents on April 6, 2022.[4]

### 3.    RFP No. 35

RFP No. 35 seeks eleven distinct categories of information *and* it demands that the District compile those categories of information into a spreadsheet for plaintiffs' convenience. Plaintiffs are not challenging the District's response to 9 of the 11 subparts. Plaintiffs take issue with the District's refusal to respond to sub-parts "(d) The total sum of salary and overtime pay received for each year they served as MPD officers," and "(g) The salary and overtime pay for each year they served in the new position to which the officer was transferred or reassigned," (the Salary Requests). Plaintiffs acknowledge, however, that they view RFP No. 35 as part and parcel of RFP No. 32. *See* Motion at 7–8. In RFP No. 32, plaintiffs seek the following information:

a)    Base pay (for each year the individual worked for MPD);

b)    Actual compensation (for each year the officer worked for MPD), broken down by salary, overtime payments, and other compensation (if any) received;

---

[3]    In fact, after the District's November 5, 2021 letter, plaintiffs next raised RFP No. 26 in their motion to compel, more than five months later. Plaintiffs were not silent on other matters during that time. Plaintiffs sent the District letters concerning its requests for production on December 23, 2021, January 30, 2022, and March 3, 2022, and between November 5, 2021 and April 25, 2022, the Parties engaged in frequent meet-and-confers, yet plaintiffs did not raise any issue with regard to RFP No. 26 in those letters or in those meet-and-confers.

[4]    The District substantially completed its production on March 31, 2022, but due to unanticipated delays, the District made a small production of additional documents on April 6, 2022.

c)      Final disability annuity as determined by the DC Retirement Board; and

d)      The total sum of disability annuity payments paid each year since retirement.

The District objected to RFP No. 32 in part as unduly burdensome "because it would require the District to compile salary and payment information for more than 150 officers over a period that could span decades and will likely require a highly individualized analysis." Pls.' Ex. R at 6–8.

During the Parties' meet-and-confers, the District pressed plaintiffs on the relevance of individual, yearly salary information. *See* Defs.' Ex. Q at 4. Plaintiffs failed to identify the relevance of that information and instead pivoted to asking whether the District would make a generally applicable statement regarding the salary information in its possession. *Id*. at 3–4. After receiving plaintiffs' initial proposal, on April 21, 2022, prior to plaintiffs' Motion to Compel, the District provided these revised counterproposals:

- For [officers referred to the Retirement Board], the District maintains data demonstrating their: (a) Base pay (for each year the individual worked for MPD); and (b) Actual compensation (for each year the officer worked for MPD), broken down by salary, overtime payments, and other compensation (if any) received.

- For each MPD officer retired on disability since 2012, the District maintains data demonstrating their disability retirement annuity calculation at retirement as determined under the terms of the Plan by the DC Retirement Board, and the annual disability retirement annuity paid each year since retirement.

Defs.' Ex. S. Plaintiffs responded to the District's April 21 counterproposal on May 5, 2022, and on May 9, 2022, the District sent to plaintiffs its First Supplemental Responses and Objections to Plaintiffs' Second Set of Requests for Production of Documents, Defs.' Ex. T, which state the following with regard to RFP Nos. 32 and 37, respectively:

- For [officers referred to the Retirement Board], the District maintains data demonstrating their: (a) Base pay (for each year the

11

individual worked for MPD); and (b) Actual compensation (for each year the officer worked for MPD), broken down by salary, overtime payments, and other compensation (if any) received. Additionally, for each MPD officer retired on disability since 2012, the District maintains data demonstrating their disability retirement annuity calculation at retirement as determined under the terms of the Plan by the DC Retirement Board, and the annual disability retirement annuity paid each year since retirement.

- For each MPD officer who has been disability retired, the District collects information sufficient to show the retired officer's annual outside earnings income for each year up until the retired officer turns age 50.

But plaintiffs do not explain in their motion why, despite the District's willingness to state that it maintains salary information for MPD officers, it is still necessary for the District to produce yearly salary information for any officer. To the extent plaintiffs' motion is an attempt to inquire of the District whether the above statements apply equally to officers who have been transferred or reassigned, the District would have been more than willing to inform plaintiffs earlier that the District maintains salary information for all MPD officers, including those who have been transferred or reassigned with MPD.

## LEGAL STANDARD

Under Rule 26(b)(1) of Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." However, "[n]o single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017) (internal quotation mark and citation omitted).

12

"While plaintiffs in discrimination cases have been permitted a broad scope of discovery, the relevance standard of Rule 26 is not without bite." *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021). "In discrimination cases, courts remain concerned about 'fishing expeditions, discovery abuse, and inordinate expenses involved in overbroad and far-ranging discovery requests' and have therefore limited discovery to the issues involved in the particular case." *Id.* (citation and quotations omitted). "[T]he party seeking to compel discovery has the burden of proving that a discovery response is inadequate," *Barnes v. District of Columbia*, 289 F.R.D. 1, 6 (D.D.C. 2012), as well as the burden of "explaining how the requested information is relevant." *Oxbow Carbon*, 322 F.R.D. at 5–6. Once relevance has been established, the burden shifts to the party opposing discovery to show why the discovery should not be permitted. *Id.*

## ARGUMENT

### I.   Plaintiffs Have Failed To Show That the District's Response to RFP No. 26 is Inadequate.

As the party moving to compel discovery, plaintiffs bear the burden of establishing that the District's response to RFP No. 26 is inadequate. *Barnes*, 289 F.R.D. at 6. They have not done so. As explained above, after conducting investigation into interactions between MPD and the PFC, it was determined that minimal non-verbal communications occur between MSD and the PFC. *See* Declaration of Matthew Miranda ¶ 4 (May 9, 2022) (Miranda Decl.), Defs.' Ex. U. Plaintiffs cite no evidence to the contrary, despite having deposed both the Director of MSD and the Medical Director of the PFC. The District also searched the e-mail correspondence of MPD's ADA Coordinators for communications between MPD and the PFC, and has already produced any responsive documents that were identified. *See* Defs.' Ex. Q at 3–4. Plaintiffs were aware that the District had taken this approach to responding to RFP No. 26 no later than November 5, 2021, and made no objection until their motion to compel—despite the District's express request that

plaintiffs inform the District if they had any issue with the District's response. *See* Defs.' Ex. O.

Therefore, plaintiffs have not met their burden to compel discovery, *see Barnes*, 289 F.R.D. at 6,

and their motion as to RFP No. 26 should be denied.

## II.   Plaintiffs' Discovery Requests are Not Relevant to Class Certification.

With regard to plaintiffs' Retirement Board Requests and Salary Requests, their attempt to

justify their relevance to class certification is plainly deficient. The District quotes in full plaintiffs'

complete explanation of the relevance of the Retirement Board Requests:

> It is evident that the documents Plaintiffs requested are relevant. All documents concerning putative class members, primarily the 86-day letters, referrals to the Retirement Board, letters scheduling IDEs, LMSs, Physical Demand Codes, and communications between MPD and the PFC Clinic, as outlined in RFP Nos. 15, 26, and 33-34, are relevant to the subject matter of this litigation. Plaintiffs have specified the exact documents concerning all putative class members they wish to review and inspect for the purpose of moving for class certification. These documents are central to Plaintiffs' claims that Defendants operate under a uniform policy or practice that forces disability retirement and denies certain accommodations, and that all Class members were comparably injured through Defendants' uniform and discriminatory application of such a policy or practice.

Motion at 11–12. Plaintiffs' conclusory defense of their requests fails to satisfy their burden

because plaintiffs never connect their claim, *i.e.*, "that Defendants operate under a uniform policy

or practice that forces disability retirement and denies certain accommodations," to the documents

they are seeking. For example, plaintiffs never explain why a Labor Market Survey, which is

focused on the skills and qualifications of the officer to perform other jobs, *see* Defs.' Ex. E, has

any relationship to MPD forcing any officer to retire or MPD denying any officer an

accommodation. Further, even assuming the Labor Market Survey, as a category of documents,

has relevance to plaintiffs' claims, the District has already produced plaintiffs' Labor Market

Surveys, which should provide plaintiffs with ample basis to make whatever argument they wish

to make as to why class certification is appropriate. In the context of their motion to compel,

however, plaintiffs must demonstrate the relevance to class certification of *every* Labor Market Survey for *every* officer. And they have made no attempt to do so. Similarly, plaintiffs demand every PD Form 42, which describes an officer's injury, but for any officer who has been disability retired, plaintiffs already have *more* detailed information on the officer's injury through the Retirement Board's Decision and Order, *see, e.g.*, Defs.' Ex. H. But, again, even assuming the PD Form 42 was relevant as a category of documents, plaintiffs never explain why every PD Form 42 for every officer referred to the Retirement Board is relevant.

Plaintiffs vaguely defend the relevance of the Salary Requests by asserting that the "information is necessary to demonstrate a common methodology for calculating class-wide damages and mitigation." Motion at 12. But plaintiffs again do not connect the dots. Plaintiffs never explain why they need salary information for every officer for every year of employment with MPD. As explained above, to the extent plaintiffs are seeking general information concerning the District's possession of salary information for MPD officers, the District has made many efforts to provide plaintiffs with the information they purportedly need—indeed, the District has not considered the proposition that it maintains salary information for its employees to be a controversial one. Plaintiffs are obviously aware of their own salary information and their own retirement benefits. Therefore, whatever insight plaintiffs need into how MPD officers are compensated for class certification, they already have it. But they have failed to explain why they need detailed, individualized analyses on an officer-by-officer basis. Because plaintiffs have failed to identify why the Retirement Board and Salary Requests are relevant to class certification, their motion to compel should be denied.

### III. Plaintiffs' Discovery Requests Are Unduly Burdensome and Not Proportional to the Needs of the Case.

The District has already explained to plaintiffs why producing the Retirement Board and Salary Requests would be unduly burdensome:  The District would need to review each individual officer's records to search for each document. *See* above at 7–8. For example, the District has no ability to simply push a button that will automatically collect all 86 Day letters for any officer who has ever been referred to the Retirement Board. *See* Miranda Decl. ¶ 6. To collect the 86 Day letters, which are form letters, the District would need to go officer by officer and collect each 86 Day letter one by one. *Id.*; *see also* Declaration of Lela Jones ¶¶ 5–10 (May 9, 2022) (Jones Decl.), Defs.' Ex. W.

Plaintiffs' preemptive attack on the District's undue burden showing relies on a mischaracterization of the record. Plaintiffs first argue that "the documents requested in RFP Nos. 15 and 33-34 are centrally located in the Centricity database," and that the District "can easily search each Class members' name, locate the documents requested from the Centricity database, and produce them to Plaintiffs." Motion at 14–15. Plaintiffs are correct, and the District has never disputed, that it is theoretically possible to collect the requested documents by searching officer by officer, but plaintiffs are incorrect that this could be done "easily." *See* Jones Decl. ¶¶ 5–10.

Further, plaintiffs misstate the testimony of MSD's Medical Director when they describe Centricity as a one-stop shop to quickly collect all documents pertaining to any officer. Centricity is a medical records system. Miranda Dep. Tr. at 168–69, Defs.' Ex. R. MSD's Medical Director testified that some of the requested documents "potentially" would be in Centricity, *id.* at 120–121; 175–77, but he also testified that he had no knowledge of Labor Market Surveys or Physical Demand Code reports, *id.* at 95–97. Regardless, the Medical Director now makes clear that the District has no ability to simply pull all Labor Market Surveys for a specific group of officers, *i.e.*,

those who have been referred to the Retirement Board. *See* Miranda Decl. ¶ 6; *see also* Miranda Dep. Tr. at 151–53. Instead, as the District has previously explained to plaintiffs, each document would need to be identified and collected manually.

Although plaintiffs posit that the District could simply produce an officer's entire Retirement Board file, *see* Motion at 15, that assertion confuses apples for oranges. Centricity is a medical records system maintained and operated by the PFC. Miranda Dep. Tr. at 52–53. An officer's Retirement Board file is maintained by the Retirement Board. For plaintiffs Pappas, Lindsay, Malik, and Mathies, their Retirement Board files, once assembled, were 709, 1326, 1505, and 715 pages, respectively. The District stands by its position that having to compile and produce what are likely similarly-sized files for more than 150 officers would be unduly burdensome because of the time and expense associated with compiling what would likely be hundreds of thousands of pages. *See* Jones Decl. ¶¶ 5–10 (explaining burden associated with producing complete Retirement Board files).

The same is true for the Salary Requests. Plaintiffs miss the point when they assert that the salary data is "centrally stored in a computerized database within Defendants' custody and control." Motion at 15. The District has never disputed that it maintains salary information for officers. The problem with plaintiffs' Salary Requests is that they would still require the District to go officer by officer to prepare the requested information. *See* Declaration of Ashley Whittington ¶ 3 (May 9, 2022), Defs.' Ex. V. Given that plaintiffs have failed to offer any coherent explanation as to why yearly salary information is relevant to their motion for class certification, and that the District has made good faith attempts to obviate plaintiffs' need for officer-specific salary information, the District maintains its position that it would be unduly burdensome for it to collect and produce yearly salary information for every officer referred to the Retirement Board.

**IV.      The Court Should Deny Plaintiffs' Frivolous Request for Sanctions.**

Finally, plaintiffs request that the Court sanction the District based on its responses to RFP Nos. 15, 26, 33-35. Pls.' Motion at 15–16. Plaintiffs' request is baseless. As described in detail above, plaintiffs have not met their burden to prevail on their motion to compel. Regardless, however, an attorney's fee sanction is not warranted whenever "the opposing party's nondisclosure, response, or objection was substantially justified." *Smith v. Ergo Sols.*, LLC, Civil Action No. 14-382, 2018 WL 5810836, at *3 (D.D.C. Nov. 6, 2018) (internal quotation marks omitted) (quoting Fed R. Civ. P. 37(a)(5)(A)(ii)) (emphasis added). "A party's actions are "substantially justified" when "there is a 'genuine dispute' or 'if reasonable people could differ as to the appropriateness of the contested action.'" *Id*. (quoting *Parsi v. Daioleslam*, 778 F.3d 116, 127 (D.C. Cir. 2015)).

The Court should deny plaintiffs' motion to compel, mooting their request for sanctions. But, even if the Court were to grant plaintiffs' motion in part (it should not), the District's responses to RFP Nos. 15, 26, and 33-35 were substantially justified, as explained above.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion to compel discovery.

Dated:  May 9, 2022.                     Respectfully submitted,

                                         KARL A. RACINE
                                         Attorney General for the District of Columbia

                                         CHAD COPELAND
                                         Deputy Attorney General
                                         Civil Litigation Division

                                         */s/ Fernando Amarillas*
                                         FERNANDO AMARILLAS [974858]
                                         Assistant Deputy Attorney General

                                         */s/ Richard P. Sobiecki*
                                         RICHARD P. SOBIECKI [500163]

MICAH BLUMING [1618961]
AMANDA C. PESCOVITZ [1735780]*
Assistant Attorneys General
Equity Section
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
Phone: (202) 724-7272
Fax: (202) 730-1833
micah.bluming@dc.gov

*Counsel for Defendants*

---

\*     Admitted to the Bar under D.C. App. R. 46-A (Emergency Examination Waiver). Practicing under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to D.C. App. R. 46-A(d)(2).